**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD. and HUAWEI DEVICE USA, INC., <br><br> Plaintiffs, <br> Counterclaim Defendants, <br> v. <br><br> T-MOBILE US, INC. and T-MOBILE USA, INC., <br><br> Defendants, <br><br> NOKIA SOLUTIONS AND NETWORKS US LLC and NOKIA SOLUTIONS AND NETWORKS OY, <br><br> Intervenors, <br> Counterclaim Plaintiffs. | Nos. 2:16-cv-52-JRG-RSP <br>      2:16-cv-55-JRG-RSP <br>      2:16-cv-56-JRG-RSP <br>      2:16-cv-57-JRG-RSP <br><br> JURY TRIAL DEMANDED |

**NOKIA SOLUTIONS AND NETWORKS US LLC'S AND
NOKIA SOLUTIONS AND NETWORKS OY'S
RESPONSE TO HUAWEI'S MOTION FOR CLARIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

    I.    NSN US IS THE EXCLUSIVE LICENSEE AND POSSESSES THE RIGHT TO ASSERT THE COUNTERCLAIM PATENTS IN THIS LITIGATION. ................................................................................................ 5

    II.    THE COURT HAS FULL AUTHORITY TO ADD NSN'S COUNTERCLAIMS, AND TO ADD NSN OY AND HUAWEI DEVICE AS PARTIES. ................................................................................................. 6

        A.  The Court Has Authority Under Rules 13 and 19. ........................................ 6

        B.  The Court Has Authority Under Rule 24(b). ................................................. 8

        C.  Huawei's Reliance on the 1935 *Chandler* Supreme Court Decision Is Misplaced. .................................................................................................... 10

CONCLUSION ................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arkansas Project v. Shaw*,
    404 F. App'x 937 (5th Cir. 2010) ................................................................................8

*Chandler & Price Co. v. Brandtjen & Kluge*,
    296 U.S. 53 (1935) ..............................................................................................10, 12

*Donovan v. Oil, Chem., & Atomic Workers Int'l Union & Its Local 4-23*,
    718 F.2d 1341 (5th Cir. 1983) .....................................................................................7

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
    814 F.3d 1343 (Fed. Cir. 2016) ...................................................................................6

*Microsoft Corp. v. GeoTag, Inc.*,
    817 F.3d 1305 (Fed. Cir. 2016) ...................................................................................7

*Newby v. Enron Corp.*,
    443 F.3d 416 (5th Cir. 2006) .......................................................................................8

*Spangler v. United States*,
    415 F.2d 1242 (9th Cir. 1969) ...................................................................................11

*Stewart-Warner Corp. v. Westinghouse Elec. Corp.*,
    325 F.2d 822 (2d Cir. 1963) ..........................................................................10, 11, 12

*WiAV Sol'ns LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) ...................................................................................6

**Other Authorities**

Fed. R. Civ. P. 13 .............................................................................................................7

Fed. R. Civ. P. 19 ........................................................................................................1, 7

Fed. R. Civ. P. 24 ...................................................................................1, 7, 8, 9, 10

# INTRODUCTION

NSN US is the *exclusive licensee* of the counterclaim patents and said so in its counterclaims. As the exclusive licensee, NSN US has an interest in and constitutional standing to bring the counterclaims in its own name, with or without NSN Oy. As such, the entire premise of Huawei's motion is incorrect—NSN US does have an interest in the counterclaims and severing NSN Oy will *not ipso facto* remove those counterclaims. Having properly allowed NSN US to intervene (without opposition from Huawei), the rules allow NSN US to assert counterclaims and to join the patents' assignee NSN Oy. The Court's Order is correct and requires no modification.

Independently, the Court properly exercised its discretion. NSN US is a proper intervenor by right, and Rules 13(b) and 24(b) permit an intervenor to assert counterclaims. Further, Rule 13(h), Rule 19, and Rule 24(b) provides authority to add related corporate entities to such counterclaims. Huawei focuses only on Rule 24(b), entirely ignoring Rule 13 and Rule 19 (again, under the false assumption that NSN US has no interest in the counterclaims). But when NSN US's interest in the counterclaims is considered, each of these rules assure that the Court properly exercised its discretion in the Order. Joining NSN Oy ensures that the patent owner's interests are fully protected and avoids any attempt by Huawei later in this action to create a dispute over whether NSN US has standing to sue without joining NSN Oy. Joining Huawei Device USA ensures that the Huawei affiliate responsible for selling LTE compliant devices in the United States is included in the suit in order to defend its interests. Adding these parties thus simplifies the case, rather than making it more complex as Huawei argues.

The Court's exercise of its discretion to allow intervention and the counterclaims was completely proper because litigating those claims together with Huawei's claims

conserves judicial resources and allows the Court to effectively manage its docket. As explained below, there is substantial overlap between the legal and factual issues involved in Huawei's claims and the NSN entities' counterclaims that make litigating both parties' claims together the most efficient vehicle for resolving the parties' disputes.

## STATEMENT OF FACTS

**NSN US Is the Exclusive Licensee of the Counterclaim Patents.** On May 27, 2016, NSN US and NSN Oy executed an exclusive license whereby NSN Oy granted NSN US a personal, non-transferable and exclusive license, with the rights to sublicense and collect damages for infringement as well as make, use, sell, offer for sale, import, market, and distribute products under the Licensed Patents, which include the counterclaim patents (Kolakowski Decl. ¶¶ 2–3, Ex. A). NSN US *explicitly* says it is the exclusive licensee in the counterclaims: "NSN US is the exclusive licensee of the Patents-In-Suit" (NSN's Counterclaims ¶ 35, Dkt. No. 32-1).

In its Motion for Clarification, Huawei states, "For example, NSN US does not say that it is the exclusive licensee of the counterclaim patents that are owned by NSN Oy with the right to enforce and recover damages" (Huawei's Mot. at 4–5 (emphasis added)). Huawei is wrong.

**NSN US and NSN Oy Requested that the Court Allow Them to Participate and File Counterclaims.** On June 10, 2016, both NSN entities filed a Motion to Intervene seeking to both defend NSN US's equipment and assert counterclaims (NSN's Mot. to Intervene, Dkt. No. 32).[1] Prior to filing the Motion to Intervene, counsel for the NSN entities met and conferred with counsel for Huawei on two issues: (i) whether

---

[1] All citations to Docket Numbers reference the Docket Numbers in 2:16-cv-00052.

2

Huawei opposed intervention by NSN to protect NSN's network equipment that it sells to T-Mobile and (ii) whether Huawei opposed the filing of counterclaims. These discussions did not differentiate between NSN US and NSN Oy, and the distinction between those entities now being relied upon by Huawei had no bearing on Huawei's positions stated in those meet and confer discussions. Huawei indicated that it was not opposed to intervention by NSN, but that it was opposed to the assertion of counterclaims.

In order to properly posture the *counterclaims* for trial, NSN US sought to add two corporate entities to minimize the need to burden the Court with unnecessary briefing later in the litigation on whether the proper parties were participating: (i) NSN Oy, simply to foreclose any belated, erroneous argument by Huawei relating to prudential standing and to protect NSN Oy's interest in the patents; and (ii) Huawei Device USA because, upon information and belief, Huawei Device sells the accused products. The NSN entities stated Huawei's opposition to these counterclaims in the motion (NSN's Mot. to Intervene at 1), and explained the role of the parties in footnote 4 on the first page (*id.* at 1 n.4).

**The Court Properly Granted NSN's Motion, and Huawei Was Timely Served with Hundreds of Pages of Infringement Contentions.** On June 14, 2016, this Court properly exercised its discretion, permitting both NSN entities to join the case and assert counterclaims against Huawei (Order Granting Motion to Intervene, Dkt. No. 34). Based on that Order, on June 16, 2016, the NSN entities timely served Huawei with hundreds of pages of infringement contentions and over six thousand pages of accompanying document production (under P.R. 3-1 and P.R. 3-2, respectively).

**NSN's Counterclaims Are Factually Related to Huawei's Claims.** The patents asserted by the NSN entities accuse Huawei mobile phones and tablets of infringing patents by communicating with network equipment pursuant to cellular standards governing LTE. These standards are promulgated by the Third Generation Partnership Project ("3GPP"). Huawei accuses T-Mobile (and NSN US) network equipment of infringing Huawei's patents by T-Mobile use of equipment that communicates with mobile phones and tablets pursuant to those same standards. Both Huawei and the NSN entities extensively cite these standards in their infringement contentions served on June 16, 2016. Moreover, Huawei's own asserted patents mention user equipment—that is, the mobile phones and tablets that the NSN entities accuse of infringement—*two thousand four hundred seventy-five times*, and many of *Huawei's* asserted patent claims explicitly recite user equipment (*i.e.*, mobile phones and tablets) as an element of the claims.[2] Similarly, the NSN entities' asserted patents reference network equipment—that is, the eNBs, MMEs, and S-GWs, etc. that Huawei accuses of infringement—and involve the interaction between the user equipment and the network (*see, e.g.*, U.S. Pat. No. 8,817,718 fig.1; U.S. Patent No. 8,121,082 fig.1).[3]

---

[2] For example, an asserted claim in Huawei's patents requires that NSN US's equipment "receive, *from a UE*, an access request message" (U.S. Pat. No. 8,638,750 at claim 13 (emphasis added)). In another asserted patent, an asserted claim requires NSN US's equipment to possess "an obtaining unit, configured to receive an attach request message *sent by a User Equipment (UE)*" (U.S. Pat. No. 8,537,779 at claim 11 (emphasis added); *see also* U.S. Pat. No. 8,031,677 at claim 8 ("delete bearer resources *of the user equipment*"); U.S. Pat. No. 9,060,268 at claim 3 ("request *from a user equipment (UE)* when the UE is in an idle mode); U.S. Pat. No. 9,241,261 at claim 1 ("receiving security capabilities *of a user equipment (UE)*" (emphasis added to all)).

[3] For example, with respect to the NSN entities' patents, Claim 1 of U.S. Patent No. 8,249,022 requires "*receiving* a first dynamic resource allocation on a first channel *from a network node*," "*sending to the network node* data according to a resource allocation," and "*receiving* a second dynamic resource allocation on the first channel *from the*

The Court will necessarily have to understand the interactions between the user equipment and the network equipment for *both* Huawei's original claims, and the NSN entities' counterclaims.

## ARGUMENT

### I. NSN US Is The Exclusive Licensee and Possesses the Right to Assert the Counterclaim Patents In This Litigation.

Huawei argues that permitting NSN Oy's intervention and assertion of counterclaims was improper because those counterclaims have no relation to NSN US or the underlying suit. This argument rests on the mistaken premise that NSN US is not an exclusive licensee to the patents asserted in the counterclaims. Huawei is wrong.

The NSN entities' specifically alleged in their Answer in Intervention and Counterclaims that that NSN US is the exclusive licensee to the patents-in-suit (NSN's Counterclaims, ¶ 35, Dkt. No. 32-1).[4] This license gives NSN US the right to enforce and recover damages.[5] *See WiAV Sol'ns LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264–65 (Fed. Cir. 2010) ("[A]n exclusive licensee [] suffers a legally cognizable injury when an

---

*network node.*" Claim 1 of U.S. Patent No. 9,185,688 requires "determining that an acknowledgement *is to be sent* . . . ." Claim 34 of U.S. Patent No. 9,148,877 requires "based on whether a scheduling request *is desired to be transmitted* by the user equipment . . . " Claim 1 of U.S. Patent No. 8,121,082 requires "*sending* the message . . . " Claim 1 of U.S. Patent No. 8,165,035 requires "*receiving* scheduling information" and "*sending* a reply . . ." (emphasis added to all).

4   Although Huawei told the Court it scoured public records for evidence of NSN US's interest in the counterclaims (*see* Huawei's Mot. at 5 n.7), that exact evidence was explicitly stated in the *counterclaims themselves.* (NSN's Counterclaims ¶ 35, Dkt. No. 32-1).

5   A fact that, presumably, would have been borne through the normal course of discovery interrogatories or requests for admission, had Huawei followed the course of a normal party during litigation instead of demanding unnecessary, expensive, and expedited treatment.

5

unauthorized party encroaches upon [its patent] rights and therefore has standing to sue."). NSN Oy was added simply to avoid any chance that Huawei would, likely late in the case for strategic purposes, raise any prudential-standing challenge, and to protect its interest as the owner of the counterclaim patents (NSN's Mot. to Intervene at 1 n.4, Dkt. No. 32).[6] This fact was unambiguous in the motion to intervene: "NSN Oy merely seeks to be added as a counterclaim party given its status as the patent owner . . ." (NSN's Mot. to Intervene at 1 n.4).

The entirety of Huawei's motion refers to NSN *Oy*'s counterclaims with the belief that the counterclaims "in fact, do not belong to NSN US" (Huawei's Mot. at 4, Dkt. No. 35; *id.* at 4 ("They are actually NSN Oy's claims . . ."); *see also id.* at 5, 6 & 10). The fact that NSN US *is* the exclusive licensee undercuts the entire premise of Huawei's argument because eliminating NSN Oy will not eliminate NSN US's counterclaims. Removing NSN Oy would only serve to potentially trigger more unnecessary briefing on standing issues later in the case, because "an exclusive licensee generally must join the patent owner to the suit to satisfy prudential standing constraints." *WiAV Sol'ns*, 631 F.3d at 1265 n.1; *see also Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1349–50 (Fed. Cir. 2016).

## II. The Court Has Full Authority to Add NSN's Counterclaims, and to Add NSN Oy and Huawei Device as Parties.

### A. The Court Has Authority Under Rules 13 and 19.

Once NSN US was added to the case as an intervenor (relief that Huawei did not oppose), Rule 13 of the Federal Rules of Civil Procedure permits NSN US to assert

---

[6] It would be unjust and inefficient to allow Huawei to attempt to create a potential standing issue where none exists by severing NSN Oy from this suit.

counterclaims. Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory."); *see also Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1310 n.5 (Fed. Cir. 2016) ("A permissive counterclaim includes any claim that is not compulsory." (internal quotation marks omitted)).

As explained in the NSN entities' motion to intervene, adding parties to such counterclaims is also permitted:

> Rules 13(h) and 19(a)-(b) allow joinder of an additional party in counterclaims. Fed. R. Civ. P. 13(b) & (h), 19(a)-(b). NSN's counterclaims against Huawei and its US subsidiary fall squarely under the plain text of these rules, and the addition of the counterclaims promotes judicial economy and speedy resolution of the controversy.

(NSN's Mot. to Intervene at 13, Dkt. No. 32.) Tellingly, Huawei in its motion ignores these rules entirely because it cannot deny that, once NSN US was joined as an intervenor, the Court had full authority to allow the counterclaims and to add the related corporate entities NSN Oy and Huawei Device. *Donovan v. Oil, Chem., & Atomic Workers Int'l Union & Its Local 4-23*, 718 F.2d 1341, 1350 (5th Cir. 1983) ("An intervenor of right under Rule 24(a) 'is treated as if he were an original party and has equal standing with the original parties.'" (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1920 at 611 (1972)).[7]

---

[7] Based on the Court's reference to NSN US as the "Movant-Intervenor," instead of NSN US and NSN Oy as "Movant-Intervenors," it appears that the Court properly added NSN US to the case as an intervenor and then utilized Rule 19 to add NSN Oy to the case (Order Granting Motion to Intervene, Dkt. No. 34). In that case, no "clarification" is needed (and Section II.B, *infra*, is moot) as the Court did not view NSN Oy to be an intervenor.

### B. The Court Has Authority Under Rule 24(b).

Huawei focuses on the argument that NSN Oy should not have been permitted to intervene under Rule 24(b) in order to assert counterclaims in which NSN US had no interest. As noted above, this argument hinges on Huawei's erroneous assumption that NSN US was not an exclusive licensee. When NSN US's true interest in the counterclaims is considered, Huawei's argument falls apart because it does not dispute that the Court had discretion to allow NSN US to assert counterclaims under Rule 13. But even if the Court were required to exercise its discretion only under Rule 24(b), the Court's order would still have been proper.

"The decision to allow permissive intervention is entirely within the discretion of the district court," *Arkansas Project v. Shaw*, 404 F. App'x 937, 941 (5th Cir. 2010) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984)), so long as a common question of law or fact is present. *Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006). As explained above and in the NSN entities' original motion to intervene, Huawei's claims and the NSN entities' counterclaims share substantial common issues, which supports the Court's exercise of its discretion. The functionality accused of infringement is closely related because both Huawei's infringement claims and the NSN entities' infringement counterclaims accuse products operating pursuant to the 3GPP LTE cellular standards, and the equipment Huawei accuses interacts with the products the NSN entities' accuses pursuant to those same standards.[8]

---

[8] *See* 3GPP, *Standards Numbering*, http://www.3gpp.org/specifications/specification-numbering (last visited June 23, 2016).

Huawei argues that its claims have "*no* relation" to the counterclaims because Huawei's claims allegedly are directed at only network equipment instead of user equipment such as mobile phones and tablets (Huawei's Mot. at 1, 5 (emphasis added)). This assertion is belied by Huawei's own asserted patents, which reference user equipment (UEs)—that is, the products that the NSN entities accuse of infringement—*over two thousand times* and explicitly recite such equipment in many of the asserted claims. Consequently, this Court will necessarily gain an understanding of both the network and user equipment that will be required to adjudicate all asserted patents.

In addition, there will also be substantial overlap relating to the rules that govern standard essential patents and the parties' respective FRAND obligations. The same obligations govern Huawei and the NSN entities because both companies have declared their asserted patents as essential to the LTE cellular standards.[9] The methodology for evaluating appropriate royalty rates for declared essential patents will necessarily involve overlapping analysis for both Huawei and the NSN entities' claims. This substantial overlap in both the technical merits and damages-related issues more than satisfies Rule 24(b)'s requirement that there be "a common question of law or fact." Fed. R. Civ. P. 24.

The Court's exercise of its discretion was also entirely proper because there is no reason to multiply efforts to resolve such similar issues. From a practical standpoint, there is no reason to delay and duplicate discovery, judicial time, party expenses, time of witnesses, and *engage in the expense of eight separate jury trials*. The Court's decision to allow the NSN entities' counterclaims is thus entirely proper under Rule 24(b).

---

[9] (NSN's Counterclaims ¶ 22, Dkt. No. 32-1.) Huawei made these assertions in their infringement contentions, which the NSN entities would be willing to provide the Court if needed.

### C. Huawei's Reliance on the 1935 *Chandler* Supreme Court Decision Is Misplaced.

Huawei relies heavily on *Chandler & Price Co. v. Brandtjen & Kluge*, 296 U.S. 53 (1935) to argue that the Court lacks authority to allow permissive counterclaims that broaden the scope of the action (Huawei's Mot. at 7). Huawei argues that age does not make *Chandler* bad law (*id.*). Age, by itself, does not make *Chandler* bad law, but the passage of the Federal Rules of Civil Procedure certainly does. *Chandler* was decided under the now-superseded rules of equity. 296 U.S. at 58–59. Those rules did not focus on permissive intervention, and they do not govern the addition of parties under the now-statutory Federal Rules. As the Second Circuit has explained: "[T]he decision in [*Chandler*] was rendered prior to the Supreme Court's enactment in 1938 of the Federal Rules. The Rules, as we have indicated, were designed to permit the speedy and inexpensive litigation of controversies and to maximize the expenditure of judicial resources wherever possible." *Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 827 (2d Cir. 1963); (NSN's Mot. to Intervene at 14, Dkt. No. 32.) The Second Circuit also indicated when discretion to allow an intervenor's counterclaims was—and was not—proper. As NSN's Motion to Intervene quoted in full:

> The whole tenor and framework of the Rules of Civil Procedure preclude application of a standard which strictly limits the intervenor to those defenses and counterclaims which the original defendant could himself have interposed. *Where there exists a sufficiently close relationship* between the claims and defenses of the intervenor and those of the original defendant to permit adjudication of all claims in one forum and in one suit without unnecessary delay—and to avoid as well the delay and waste of judicial resources attendant upon requiring separate trials—*the district court is without discretion to deny the intervenor the opportunity to advance such claims.*

(NSN's Mot. to Intervene at 14 (quoting *Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 827 (2d Cir. 1963) (emphasis added).)

10

Huawei interprets the passage above as suggesting that the district court has discretion to permit counterclaims *only* where there is a "sufficiently close relationship between the claims and defenses of the intervenor and those of the original defendant," and Huawei argues that the Motion to Intervene fails to set forth facts that show a "sufficiently close relationship." But that is not what *Stewart-Warner* stands for.

*Stewart-Warner* explained that the district court would be *without discretion* to *deny* the counterclaims if there is a "sufficiently close relationship." Huawei seems to be arguing that the district court would be *without discretion* to *permit* the counterclaims *unless* there is a sufficiently close relationship. Those two statements are obviously different. As the Second Circuit pointed out in footnote 1, it is the Federal Rules that govern the scope of any counterclaims, and those rules "clearly manifest the spirit of modern federal procedure not unduly to restrict the scope of litigation among parties whenever consistent with a speedy and just determination of the controversy." *Stewart-Warner Corp.*, 325 F.2d at 827 n.1; *see also Spangler v. United States*, 415 F.2d 1242, 1245 (9th Cir. 1969) ("Prior to the adoption of the [Federal Rules of Civil Procedure] in 1937, old equity Rule 37 barred an intervenor from raising issues which were not 'subordinate' to the original parties' pleadings. *No similar provision was carried over into the 1937 rules.*" (emphasis added)).

But in the end, Huawei's misreading is of no consequence. When the issue is framed correctly—*i.e.*, when the Court considers that NSN US is the exclusive licensee to the counterclaim patents—the counterclaims asserted by the NSN entities *do* have a sufficiently close relationship to the claims and defenses of the original defendant as

explained above due to the substantial overlap in facts and law. As in *Stewart-Warner Corp.*,

> Economy of judicial time, expense to the parties, the time of witnesses, and every consideration for the proper and expeditious settlement of disputes impel us to a conclusion which would not limit the parties at the outset to one phase of a controversy which has continued over some years and which almost certainly will be disposed of by the federal courts.

325 F.2d at 826–27. The same is true here. This Court correctly exercised its discretion to allow the counterclaims, and *Chandler* in no way limits the Court's discretion.

## CONCLUSION

NSN US and NSN Oy invite Huawei to meet and confer to resolve any other issues Huawei believes are present before burdening the Court with more motion practice. However, in view of the foregoing, the Court correctly concluded that it can best manage its docket by litigating all these issues on the same timetable (while still reserving the right to rule upon appropriate trial presentation of the original claims and the counterclaims later).

Dated: June 23, 2016

By: */s/ Deron Dacus*  
Deron Dacus  
State Bar No: 00790553  
THE DACUS FIRM, P.C.  
821 ESE Loop 323, Suite 430  
Tyler, TX 75701  
(903) 705-1117  
(903) 581-2543– Facsimile  
Email: ddacus@dacusfirm.com

*Attorney for Intervenors and Counterclaim Plaintiffs Nokia Solutions and Networks US LLC and Nokia Solutions and Networks Oy.*

12

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing document has been served on June 23, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                                */s/ Deron Dacus*
                                                Deron Dacus