THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO. LTD.,**<br><br>    Plaintiff,<br><br>    v.<br><br>**T-MOBILE US, INC. and**<br>**T-MOBILE USA, INC.,**<br><br>    Defendants,<br><br>**NOKIA SOLUTIONS AND NETWORKS US LLC, NOKIA SOLUTIONS AND NETWORKS OY, TELEFONAKTIEBOLAGET LM ERICSSON, and ERICSSON INC.,**<br><br>    Intervenors. | Civil Action No. 2:16-cv-00052-JRG-RSP<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF HUAWEI TECHNOLOGIES CO. LTD.'S
OPPOSITION TO DEFENDANTS'/INTERVENORS' MOTION TO AMEND
INVALIDITY CONTENTION AND CLAIM CONSTRUCTION DISCLOSURES**

In an about-face from invalidity contentions served four months ago, Defendants[1] improperly seek to identify five new claim terms ("Unit Terms") as means-plus-function terms and to add new "indefiniteness" arguments for those terms. First, the Defendants never identified those terms in their original invalidity contentions as means-plus-function terms as required by the local rules.[2] The Defendants charted prior art against these terms without identifying them as

---

[1] Huawei refers to Defendant T-Mobile and Intervenors Nokia and Ericsson collectively as "Defendants."

[2] *See* P.R. 3-3 (c). ("A chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function.").

governed by 35 U.S.C. § 112(6) and without identifying the alleged structure in the prior art. Second, setting aside the failure to timely identify those terms as means-plus-function terms, the Defendants clearly understood those terms as definite when Defendants charted the prior art in the invalidity contentions four months ago. Importantly, nothing substantive has changed that would support Defendants' untimely attempt to add these new indefiniteness arguments for five claim terms. Nothing in the claims, the patent, or the file history has changed. Nor have there been new infringement contentions.

Defendants offer no legitimate reason for not timely disclosing their new invalidity and claim construction contentions. Ericsson's excuse for the amendment—that it only recently was granted leave to intervene—is a manufactured excuse that contradicts its representations to this Court. It is also immaterial because Defendants do not contend that Ericsson's products are relevant to the apparatus claims-at-issue. Defendants' requested amendments unduly prejudice Huawei by forcing it to expend more resources (*e.g.*, briefing and expert witness time and testimony) on an additional five terms. Furthermore, Huawei would be forced to reconsider its prior theories and claim construction positions and evidence that should be solidified by now under the Court's schedule. Accordingly, the Court should deny the Motion and reject the attempt to inject unnecessary issues into the case at this late hour.

I.     BACKGROUND

Plaintiff Huawei Technologies Co. Ltd. filed this lawsuit on January 15, 2016, against Defendants T-Mobile US, Inc. and T-Mobile USA, Inc. (Dkt. No. 1.) Huawei accuses T-Mobile of infringing four patents: U.S. Patent Nos. 8,069,365, 8,719,617, 8,867,339, and 9,235,462. Intervenors Nokia Solutions and Networks US LLC and Nokia Solutions and Networks OY moved to intervene on June 10, 2016. The Court granted Nokia's motion and allowed it to intervene on June 14, 2016. (Dkt. No. 34.) The Court then entered a Docket Control Order on

July 27, 2016, and set the deadline for T-Mobile's and Nokia's invalidity contentions as August 11, 2016. The Court set the deadlines for the parties to exchange proposed claim terms for construction and proposed constructions as October 25, 2016 and November 15, 2016, respectively. (*See* Dkt. No. 78 at 3.)

T-Mobile and Nokia served their invalidity contentions on August 11, 2016. (*See* Dkt. No. 113-2.) They did not identify any contention alleging the Unit Terms are indefinite because they should be governed by § 112(6) and lack supporting structure.[3] (*See id.*) To the contrary, T-Mobile and Nokia charted prior art against the Unit Terms without identifying them as means-plus-function under § 112(6) or alleging they were indefinite. For example, Defendants alleged:

| 9[a] a receiving unit and a sending unit, wherein | 3GPP TR 23.809 v0.3.0 discloses a receiving unit and a sending unit. For example, 3GPP TR 23.809 v0.3.0 discloses a GGSN with a receiving unit and a sending unit as described below. |
|---|---|
| 9[b] the receiving unit is configured to receive an error indication of a data tunnel from an access network device, and | 3GPP TR 23.809 v0.3.0 discloses a receiving unit that is configured to receive an error indication of a data tunnel from an access network device. For example, 3GPP TR 23.809 v0.3.0 discloses a data tunnel between the RNC and GGSN. The GGSN is configured to receive an error indication from the RNC. |

(*See* Invalidity Contentions, Ex. D-01, at 110) (attached as Exhibit B).

One month later, Intervenors Telefonaktiebolaget LM Ericsson and Ericsson Inc. filed an unopposed Motion to Intervene in the case. (Dkt. No. 95.) In the Motion, Ericsson informed the Court that it did "not intend to seek any alteration of the recently-entered Docket Control Order." (*Id.* at 4, 11.) It made this representation with awareness that the deadline for invalidity

---

[3] The original contentions do identify one of the five phrases in dispute as rendering Claim 11 indefinite: "the receiving unit is configured to receive a notification from a core network user plane anchor to recover a downlink data tunnel if a user plane using a One Tunnel technology is error." Presumably this was intended to identify Defendants indefiniteness contention based upon its inclusion of "is error." *See* Dkt. No. 110, Ex. A at 11. The contention did not provide any notice of alleged indefiniteness based upon a contention that the term is subject to § 112(6).

contentions had already passed, and the deadline to exchange proposed claim terms was approximately six weeks away. (*See* Dkt. No. 78 at 3.)

On October 25, 2016, T-Mobile and Nokia served their P.R. 4-1 disclosure and contended that ***no*** terms, phrases, or clauses in the asserted claims required construction. *See* T-Mobile & Nokia 4-1 Disclosures (Oct. 25, 2016) (attached as Ex. C). Consequently, they did not identify any terms as governed by § 112(6) as required by P.R. 4-1. *See id.*

The parties continued with the claim construction process, and on November 15, 2016, they were prepared to exchange proposed constructions on the terms that Huawei had identified in its P.R. 4-1 disclosures. Two hours before that scheduled exchange, T-Mobile and Nokia informed Huawei for the first time that the Unit Terms were supposedly governed by § 112(6). (*See* Dkt. No. 113-4.) Huawei immediately objected that the "late disclosure of new terms for construction – two hours before th[e 4-2] deadline – is not acceptable or proper." Nov. 15, 2016, 3:27PM CST E-mail fr. Du to Silhasek (attached as Ex. D). Because Huawei could not "be expected to propose constructions or identify extrinsic evidence for new terms in [those] next few hours," these terms were not properly identified for proposed construction. *See id.*

## II. GOOD CAUSE DOES NOT EXIST FOR DEFENDANTS TO SUPPLEMENT THEIR INVALIDITY CONTENTIONS OR PROPOSED CONSTRUCTIONS

The Court may modify its Docket Control Order and allow a party to amend its invalidity contentions upon a showing of good cause. FED. R. CIV. P. 16(b)(4); P.R. 3-6(b). This Court has identified four factors that are relevant to whether a party may amend its invalidity contentions: "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Alexsam, Inc. v. IDT*


*Corp.*, No. 2:07-cv-420, 2011 WL 108725, at *1 (E.D. Tex. Jan. 12, 2011) (citing *S & W Enters., LLC v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003)).

Importantly, a party seeking to amend its invalidity contentions has the burden to affirmatively show good cause. For example, in *Lake Cherokee Hard Drive Tech., LLC v. Bass Comp., Inc.*, the Court found that a party seeking to amend its infringement contentions had no justifiable excuse for delay, and that weighed against granting leave. No. 2:10-cv-216, 2012 WL 2565273 (E.D. Tex. July 2, 2012) (Gilstrap, J.). During the hearing that lead to that order, this Court explained the principle: "Probably the reason you haven't heard from the other side as to what prejudice will befall them is because under the local patent rules, you [the moving party] have the burden to affirmatively show good cause. ***And a showing of no prejudice is not an affirmative showing of good cause.***" July 16, 2012 Hearing in *Lake Cherokee*, Dkt. No. 262, at 5:14-19 (attached as Ex. E) (emphasis added). Therefore, the Court may deny leave to amend to a party that does not meet its burden of affirmatively showing good cause. *See id.*

Here, these factors weigh against allowing Defendants to amend the invalidity contentions. Defendants have not established a good faith basis for their unreasonable delay in amending the contentions or proposing the Unit Terms for construction. Furthermore, Huawei would be unduly prejudiced by an amendment at this stage. Therefore, the Court should deny Defendants' motion.

  **A. Good cause does not exist to support Defendants' motion.**

Defendants do not identify good cause to amend the contentions or disclosures. The first factor to consider when determining whether a party may amend its contentions is "the explanation for the party's failure to meet the deadline." *Alexam*, 2011 WL 108725, at *1. For this factor to weigh in a party's favor, the party must show that its delay was reasonable. *See Rmail Ltd. v. Amazon.com, Inc.*, 2:10-cv-258, at *4 (E.D. Tex. Feb. 8, 2013) (Dkt. No. 264)

(attached as Ex. F). Defendants give no reason for their failure to include the Unit Terms in the invalidity contentions. Defendants contend only that they were "diligent" in developing their defenses and that Ericsson only recently was granted leave to intervene in the case. Neither of these reasons excuse Defendants' delay.

First, Defendants were not diligent as shown by two missed deadlines. They failed to identify the Unit Terms as purportedly covered by § 112(6) on two occasions (the invalidity contentions and the 4-1 disclosures), and they offered no reason for why they were unable to identify the terms until two hours before the 4-2 deadline. T-Mobile and Nokia were aware of those deadlines in this case since at least July 27, when the Court issued the Docket Control Order that the parties had negotiated and agreed to. (*See* Dkt. No. 76.) Without a good faith reason for missing the deadline, there is no basis for allowing them to disclose these invalidity theories over four months after the deadline for invalidity contentions.

Second, the Court's leave for Ericsson to intervene in the case does not constitute good cause for at least two reasons. When Ericsson moved to intervene in the case, it told this Court that no changes to the Docket Control Order would be necessary. (*See* Dkt. No. 95 at 4, 11.) Importantly, Ericsson made that representation with full knowledge that the invalidity contentions deadline had already passed a month before.[4] Moreover, Defendants' contention that Ericsson's entry into the case constitutes good cause is manufactured because they do not contend that Ericsson's equipment is even at issue for the relevant claims—'339 Patent, claims 9

---

[4] Huawei will oppose any attempt by Ericsson to serve separate invalidity contentions at this stage of the case. (*See* Dkt. No. 113 at 5 n.1.) It told Huawei and this Court that no change in the deadlines would be required by its intervention. Dkt. No. 95 at 4.

and 11 and dependents.[5] Therefore, Defendants have not established good cause to amend, which weighs heavily against granting their Motion.

### B. Defendants' contentions regarding the Unit Terms are not important enough to warrant untimely amendment.

Defendants also fall short under the second factor in this analysis: is "the importance of what the Court is excluding." *Alexam*, 2011 WL 108725 at *1. Defendants' failure to identify **any** Unit Terms as governed by § 112(6) in **both** their invalidity contentions and the 4-1 disclosures indicates the unimportance of their theory. If Defendants' theory regarding the Unit Terms were so important, they would not have missed the opportunity to point out that they should be subject to 112(6) in both of these deadlines.

The Defendants' invalidity contentions emphasize that the alleged characterization of Unit Terms as means-plus-function is not important because they did not identify "the structure(s), act(s), or material(s) in each item of prior art that performs [a] claimed function" in any of the prior art that it charted. *See* P.R. 3-3 (c). With respect to Claim 9, for example, Defendants contend that the claimed "communication device" is a GGSN. But for the device's "receiving," "sending," and "storage units," the defendants contend that the components are present merely because the GGSN is configured to "receive," "send," or "update," without identifying specific structures in the GGSN:

| 9 [Preamble] A communication device, comprising: | To the extent the preamble is determined to be limiting, 3GPP TR 23.809 v0.3.0 discloses a communication device. For example, 3GPP TR 23.809 v0.3.0 discloses a GGSN. |
|---|---|

---

[5] Huawei cannot attach supporting evidence produced by TMO on this point due to uncertainty about whether the protective order permits it to disclose such information, but will provide the evidence *in camera* if requested.

| | |
|---|---|
| 9[a]<br><br>a receiving unit and a sending unit, wherein | 3GPP TR 23.809 v0.3.0 discloses a receiving unit and a sending unit.<br><br>For example, 3GPP TR 23.809 v0.3.0 discloses a GGSN with a receiving unit and a sending unit as described below. |
| 9[b]<br><br>the receiving unit is configured to receive an error indication of a data tunnel from an access network device, and | 3GPP TR 23.809 v0.3.0 discloses a receiving unit that is configured to receive an error indication of a data tunnel from an access network device.<br><br>For example, 3GPP TR 23.809 v0.3.0 discloses a data tunnel between the RNC and GGSN. The GGSN is configured to receive an error indication from the RNC. |
| 9[c]<br><br>the sending unit is configured to instruct a core network control plane to recover a downlink data tunnel if a user plane corresponding to the error indication uses a One Tunnel technology, and | 3GPP TR 23.809 v0.3.0 discloses a sending unit that is configured to instruct a core network control plane to recover a downlink data tunnel if a user plane corresponding to the error indication uses a One Tunnel technology.<br><br>For example, 3GPP TR 23.809 v0.3.0 discloses a GGSN that notifies a SGSN if direct tunnel is used. The notification to the SGSN triggers re-establishment of the corresponding Radio Access Bearers (RABs). |
| 9[e]<br><br>wherein the device further comprises a storage unit configured to update a corresponding PDP context according to the update PDP context request. | 3GPP TR 23.809 v0.3.0 discloses a device that further comprises a storage unit configured to update a corresponding PDP context according to the update PDP context request.<br><br>For example, 3GPP TR 23.809 v0.3.0 discloses a GGSN that updates a PDP context according to an Update PDP Context Request. |

(*See* Invalidity Contentions, Ex. D-01, at 110, 113, 127) (attached as Exhibit B).

Defendants' insinuation that they "foresee" later claim construction disputes lacks merit. Their academic example musing how "storage unit" can "update a corresponding PDP context" is unconvincing. A person of ordinary skill in the art would understand that a storage unit that stores newer or modified information, for example, is "updat[ing]" that information in its storage. In any event, Defendants have not identified how any *specific* dispute about the scope of the Unit Terms bears on validity or infringement because the focus of applicant's contribution to the art here, as seen in the claims, is on what the components do in the communication device and how they interact—not strictly what they are. When the "physical structure is of little or no importance to the claimed invention, there may be a broader range of equivalent structures than

if the physical characteristics of the structure are critical in performing the claimed function in the context of the claimed invention. Thus, a rigid comparison of physical structures in a vacuum may be inappropriate in a particular case." *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F. 3d 1422, 1436 (Fed. Cir. 2000).

Defendants have not shown that their new contentions for these terms are important to the case, and consequently, this factor weighs against granting Defendants leave to amend.

### C. Huawei would suffer undue prejudice if Defendants are granted leave to amend.

Defendants fail the third factor in this analysis: the "potential prejudice if the Court allows the thing that would be excluded." *Alexam*, 2011 WL 108725, at *1. Huawei would be prejudiced if Defendants were allowed to amend their invalidity contentions and claim construction disclosures at this stage. Aside from the shortened amount of time Huawei will have had to review the new contentions and prepare responses, Huawei would also be prejudiced because Defendants' proposed amendments will include expert testimony to address the Unit Terms. Instead of requiring an expert to address a single term for construction, as was the case after the parties made their 4-1 exchange, the proposed amendments would require Huawei's expert to analyze and address six terms in order to rebut Defendants' proposed expert testimony. The amendments would also divert the parties' efforts from other, more important claim construction disputes. Accordingly, Huawei would be prejudiced by Defendants' sought relief, and this factor weighs against allowing leave to amend.

### III. CONCLUSION

This Court's local patent rules are clear, and Defendants repeatedly failed to comply with them. Defendants have not provided any good cause to excuse their unreasonable delay, and

allowing an amendment at this stage would unduly prejudice Huawei. Therefore, Huawei respectfully requests that the Court deny the Motion for Leave.

Dated: December 27, 2016                     Respectfully submitted,

By: */s/ Thomas H. Reger, II*
Ruffin Cordell
Texas Bar No. 04820550
cordell@fr.com
Linda Kordziel
DC Bar No. 446386
kordziel@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Carl E. Bruce
Texas Bar No. 24036278
bruce@fr.com
David B. Conrad
Texas Bar No. 24049042
conrad@fr.com
Jane Du
Texas Bar No. 24076355
du@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

David Barkan
California Bar No. 160825
barkan@fr.com
**FISH & RICHARDSON P.C**.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

- 11 -

    Kevin Su
Massachusetts Bar No. 663726
su@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

**COUNSEL FOR PLAINTIFF HUAWEI TECHNOLOGIES CO. LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 27, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Thomas H. Reger, II*

Thomas H. Reger, II