# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD.,<br><br>       Plaintiff,<br><br>  v.<br><br>T-MOBILE US, INC. AND T-MOBILE USA, INC.,<br><br>       Defendants,<br><br>NOKIA SOLUTIONS AND NETWORKS US LLC AND NOKIA SOLUTIONS AND NETWORKS OY,<br><br>TELEFONAKTIEBOLAGET LM ERICSSON AND ERICSSON INC.,<br><br>       Intervenors. | Civil Action No. 2:16-cv-00052-JRG-RSP<br><br>Jury Trial Demanded |

**DEFENDANTS T-MOBILE US, INC. AND T-MOBILE USA, INC.'S
SUR-REPLY IN OPPOSITION TO HUAWEI'S MOTION TO DISMISS T-MOBILE'S
<u>COUNTERCLAIMS I, II, AND III UNDER FED. R. CIV. P. 12(b)(6) AND 12(b)(1)</u>**

**I. INTRODUCTION**

T-Mobile's counterclaims state valid contract and unfair competition claims. Huawei again resorts in its reply brief to raising arguments that rely on an improperly cramped reading of the allegations or misapply the relevant law. When the full scope of T-Mobile's allegations is considered under the appropriate legal standards, Huawei's motion should be denied.

**II. ARGUMENT**

    **A. T-Mobile's Breach Of Contract Counterclaim Is Properly Asserted In This Case.**

T-Mobile's breach of contract claim is a compulsory counterclaim under the Fifth Circuit's standard because there is a clear logical relationship between the contract claim and Huawei's infringement claims, there is an overlap of factual issues between the claims, and res judicata would likely bar T-Mobile from pursuing this contract claim in another action. Accordingly, Rule 13(a) required T-Mobile to state any counterclaim when it made a pleading here. Huawei's reply ignores these determinative facts and law.

*First*, Huawei argues that T-Mobile engaged in "intentional delay" in filing its counterclaim. Br. at 1. But there was nothing improper in T-Mobile challenging Huawei's deficient infringement allegations consistent with the due date for amended pleadings in the Docket Control Order. Dkt. 78. Nor, as Huawei appears to suggest, could this have been done to gain some sort of tactical advantage regarding contract claims, as T-Mobile could not have known that Huawei would later file a deficient portfolio-wide declaratory judgment claim.

*Second*, T-Mobile has not tried to create a "false distinction" between Huawei's portfolio claim in the 715 case and T-Mobile's patent-focused claim here; to the contrary, there are very real differences in what the parties pled. Br. at 1. Huawei's 715 complaint requests that the Court approve of Huawei's portfolio offer to T-Mobile or set a FRAND rate for the portfolio. Dkt. 1, 16-cv-715, ¶¶ 86, 88. By contrast, T-Mobile's breach of contract counterclaim focuses

on the FRAND commitments Huawei made specifically for each of the asserted patents, and states that it "does not address whether or not Huawei has offered FRAND terms to T-Mobile on a portfolio-wide basis." Dkt. 106 ¶¶ 96-97. Huawei's reliance on *Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 351 F. Supp. 2d 1188 (D. Kan. 2005), is thus misplaced because there the court was addressing whether it should hear a "mirror-image" counterclaim or transfer it to California. Here, not only are these not "mirror image" claims, but Huawei has already put at issue *in this case* whether T-Mobile was a "willing licensee" to the asserted patents, and T-Mobile must be able to defend that claim by reference to the parties' conduct, including with respect to the specific factual issues related to the asserted patents. Thus, the differences between the claims as well as judicial efficiency favor resolving all of the parties' claims addressing the asserted patents in one case.

### B. T-Mobile's State Law Claims Are Not Barred Or Preempted.

#### 1. T-Mobile's Counterclaims Are Not Time Barred.

T-Mobile's Second and Third Counterclaims for state unfair competition are not time barred because Huawei's conduct constitutes a continuing tort. Huawei's response is premised on plucking a sentence from T-Mobile's *contract* counterclaim—that Huawei's failure to disclose its allegedly essential patents is "**an independent breach of its contractual obligations** to ETSI, and to T-Mobile," Dkt. 106 at 94 (emphasis added)—to argue that T-Mobile has conceded that its separate unfair competition law claims are time barred.[1] Huawei's late

---

[1] Huawei did not argue in its opening brief that T-Mobile's breach of contract claim is time barred to the extent it relies on a theory of late disclosure. Rather, Huawei's opening brief only contends that "T-Mobile's Second and Third Counterclaims in this patent infringement action are state law *tort* claims. . . . But these counterclaims are barred under the respective statute of limitations." Dkt. 121 at 9 (emphasis added). To the extent Huawei now argues in reply that this theory is time barred for T-Mobile's contract claims, it has waived it. *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 WL 278968, at *2 n.1 (E.D. Tex. Jan. 22, 2016) ("Arguments raised for the first time in a reply brief are generally waived.") (quoting *Jones v.*

disclosure in violation of the contractual requirements of the ETSI IPR Policy provides an independent basis for T-Mobile's separate breach of contract claim,[2] but that does not mean Huawei's conduct is not a continuing tort for purposes of T-Mobile's unfair competition claims.

Huawei is also incorrect that T-Mobile was required to specifically plead that Huawei has engaged in a "continuing tort." Br. at 3. Under federal law, "a plaintiff is not required to allege that [its] claims were filed within the applicable statute of limitations." *Frame v. City of Arlington*, 657 F.3d 215, 239-40 (5th Cir. 2011); *see also Tarpley v. Texaco, Inc.*, No. CA 3-96-CV-3209-R, 1998 WL 133122, at *2 (N.D. Tex. Mar. 16, 1998) (denying argument that plaintiff failed to specifically allege "continuing tort doctrine" because "it is enough that Plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based"). Here, T-Mobile pled facts sufficient to put Huawei on notice of T-Mobile's theory, including that ETSI and its members rely on the disclosure requirement to avoid the risks of hold-up and that Huawei avoided that constraint by staying silent in the face of its disclosure obligation for each asserted patent only to later claim that its patents are essential and seek to leverage the hold-up power of the standard. *See* Dkt. 128 at 11-12.

There is also no "direct conflict," Br. at 3, between the allegations that (1) Huawei failed to disclose during standardization that it holds patents it claims are essential as required by ETSI's IPR Policy and (2) later, after the time for proper disclosure had passed, Huawei disclosed the existence of its patents and committed to license them on FRAND terms but is now breaching those commitments. These allegations of a continued course of opportunistic conduct

---

*Cain*, 600 F.3d 527, 541 (5th Cir. 2010)).

[2] *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846, 2012 WL 1672493, at *13 (N.D. Cal. May 14, 2012) (denying motion to dismiss contract claim that alleged "[a]s an independent theory of liability . . . that Samsung breached its agreement with ETSI to timely disclose its IPR to the standard setting organization").

in violation of ETSI's IPR Policy are entirely plausible—Huawei's silence in the face of its disclosure obligations allowed it to avoid scrutiny of intellectual property rights at the time of standardization that it later claimed to be essential in order to leverage the lock-in effect of standardization in violation of its untimely FRAND commitments. Indeed, contrary to Huawei's argument, this pattern fits the rationale applied by the court in *Microsoft Mobile Inc. v. Interdigital, Inc.*, No. 15-723, 2016 WL 1464545, at *4 (D. Del. Apr. 13, 2016), to find a continuing violation. Just as in *Microsoft*, T-Mobile has pled an ongoing course of conduct that started with failure to abide by the disclosure obligations of the SSO and culminated with attempts to leverage improperly the hold-up power of the standard.

### 2. T-Mobile's Counterclaims Are Not Barred Or Preempted by Federal Law.

Huawei's reply continues to rely on an overly cramped reading of what T-Mobile has actually pled. T-Mobile's "principal complaint" is not that Huawei sued T-Mobile and seeks an injunction. Br. at 4. First, T-Mobile alleges that Huawei failed to timely disclose its patents to ETSI. Dkt. 106 ¶¶ 34, 101, 106. Second, T-Mobile alleges that Huawei violated its subsequent FRAND commitments by "refus[ing] to license individually its claimed essential patents," an "all-or nothing" tactic that Huawei previously recognized is prohibited by the FRAND commitment. *Id.* ¶¶ 32, 56, 73, 91, 101, 106. Third, T-Mobile alleges that Huawei is improperly using the hold-up power inherent in amassing a portfolio of claimed-essential patents to extract royalties for patents to which T-Mobile already has rights through its vendors. *Id.* ¶¶ 56, 82-83, 91, 101, 106. ***None*** of these allegations turns on conduct protected by *Noerr-Pennington*.

To be sure, T-Mobile also alleges that Huawei "abusively sought injunctions through serial litigations (in this case and three others filed on the same day) against T-Mobile to ***further its anticompetitive scheme***," before ever offering a FRAND license. *Id.* ¶ 91 (emphasis added).

But this litigation misconduct was only in aid of conduct that began before the litigation, and thus does not form the "keystone" of T-Mobile's claims. Further, a court in this District has recognized that "not first offering the defendants a RAND license and/or failing to honor the alleged encumbrances on its patents" before bringing suit is not conduct protected by *Noerr-Pennington*. *Mondis Technology Ltd. v. LG Elecs. Inc.*, No. 2:07-cv-565, 2009 WL 901480, at *4 (E.D. Tex. Mar. 31, 2009). Because Huawei's litigation misconduct is not central to T-Mobile's allegations here, *Noerr-Pennington* does not come into play.

But even if *Noerr-Pennington* did apply, T-Mobile sufficiently pled bad faith by Huawei for its claims to proceed. There is no requirement that the "magic words" "bad faith" must appear in T-Mobile's counterclaims so long as T-Mobile provided sufficient notice of its theory. *See*, *e.g.*, *The Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, No. 15-CV-4336, 2015 WL 9489926, at *2 (N.D. Ill. Dec. 30, 2015) ("[A] complaint does not fail to state a claim merely because it fails to plead certain 'magic words.'"); *Huntington Operating Corp v. Sybonney Express, Inc.*, No. H-08-0781, 2009 U.S. Dist. LEXIS 67575, at *8 (S.D. Tex. Aug. 3, 2009) (federal pleading rules do not require "magic words"). T-Mobile's counterclaims establish that its allegations "arise from Huawei's ***baseless allegation of infringement*** . . . in ***violation of its binding contractual obligations***," that Huawei "***singled out T-Mobile in a campaign of unlawful licensing and litigation conduct***," that Huawei's infringement suits were retaliation for T-Mobile's actions against Huawei's theft, and that Huawei refused to provide FRAND terms and attempted to increase its leverage against T-Mobile through the threat of injunction. Dkt. 106 ¶¶ 1-3 (emphases added). Contrary to Huawei's arguments, these allegations put Huawei on notice that T-Mobile is alleging bad faith.

***First***, T-Mobile has not "simply den[ied] infringement and validity of the asserted

patents." Br. at 5. Instead, as discussed above, T-Mobile alleges Huawei's systematic abuse of the standard-setting process through late disclosure of its patents, refusal to individually license the asserted patents, and improper attempts to extract royalties for patents to which T-Mobile already has rights through its vendors. *See* Dkt. 106 ¶¶ 32, 34, 56, 73, 82-83, 91, 101, 106. Further, a number of circuit courts have recognized that alleging a "series of legal proceedings . . . filed . . . with or without regard to merit and for the purpose of . . . harm[ing] a market rival and restrain[ing] trade" is sufficient to avoid preemption under *Noerr-Pennington*. *See, e.g.*, *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015). Here, T-Mobile alleges that Huawei used abusive litigation conduct "to *further its anticompetitive scheme*," including "*filing four separate infringement actions* against T-Mobile . . . in an improper attempt to gain negotiating leverage over T-Mobile," and that this conduct resulted in significant "harm to competition." Dkt. 106 ¶¶ 56, 90-92 (emphases added).

*Second*, T-Mobile alleges that Huawei is engaged in patent "hold up," including through wrongly seeking injunctive relief against T-Mobile and refusing to individually license or provide terms for the asserted patents. *See, e.g., id.* ¶¶ 3, 56, 69, 73, 91. That Huawei has alternatively requested an ongoing royalty rate, Br. at 6, does not diminish the threat of an injunction or mean that it has not engaged in hold up. T-Mobile alleges that Huawei previously recognized that a SEP holder should not use "the threat of an injunction . . . to extract higher royalties and/or other concessions from a locked-in implementer of a standard." Dkt. 106 ¶ 31. Further, T-Mobile alleges that Huawei has and continues to refuse to provide terms for the asserted patents in order to use the threat of litigation as leverage to extract portfolio-wide royalties (including on patents for which a license is not required). *Id.* ¶¶ 56, 69, 91, 97. These actions clearly constitute bad faith "hold up." Nor can Huawei escape that conclusion by arguing

that T-Mobile's allegations are implausible because Huawei alleges *in its own complaint* that T-Mobile has been an "unwilling licensee." Br. at 6.

### C. T-Mobile Has Stated A Claim For Unfair Competition Under Texas Common Law.

Huawei's reply ignores the clear and repeated holdings that a claim for unfair competition under Texas law can be brought upon a showing that "the accused actually committed a recognized tort *or illegal act*." *Mondis*, 2009 WL 901480, at *2 (emphasis added). For example, in *Taylor Publishing Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000)—a case relied on by Huawei as well as in *Mondis*—the court recognized that a plaintiff could alternatively establish an unfair competition claim by showing conduct that "was *illegal or* otherwise tortious." *See also Schoellkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App. 1989) ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair competition.'").[3] Only by ignoring this clear precedent that "illegal" conduct can form a predicate for an unfair competition claim can Huawei incorrectly suggest the *Mondis* decision is not "persuasive."

Huawei's efforts to distinguish *Mondis* also fall short. Contrary to Huawei's contention, the holding in *Mondis* did not turn on the specifics of the IPR policy at issue, Br. at 7-8, but rather "[t]he fact that the FTC has issued complaints against (and obtained consent orders from) companies pursuant to the FTC Act for failing to honor encumbrances on their patents," which the court concluded "indicates that the defendants' claim that Mondis' actions are an illegal violation of the FTC Act is, at a minimum, plausible." *Mondis*, 2009 WL 901480 at *3. Notably, nowhere did the *Mondis* court analyze how the VESA IPR policy at issue there

---

[3] Although *Taylor* notes in one sentence that the illegal act "must at least be an independent tort," it relied on this quoted sentence from *Schoellkopf* in support of that proposition, which makes clear that *either* a tort or "other illegal conduct" is sufficient.

compared with the IPR policies of the SSOs at issue in the FTC investigations on which the defendants relied. In short, by pleading that Huawei's conduct is of the same type that the FTC has found illegal under the FTC Act, T-Mobile has, like in *Mondis*, stated a claim for unfair competition under Texas law.[4]

### D. T-Mobile Has Stated A Claim For A Violation Of The WCPA.

T-Mobile alleges that Huawei engaged in at least three types of unfair methods of competition that the FTC recognizes "violate Section 5 of the Federal Trade Commission Act." Dkt. 106 ¶¶ 84, 106. Huawei argues that these allegations do not establish a violation of the WCPA because T-Mobile's Third Counterclaim "makes no mention of Section 5." Br. at 8. This argument misapprehends the issue. The WCPA instructs courts to seek guidance "[a]mong . . . federal court interpretations of federal statues dealing with matters similar to those involved in the [WCPA]," such as Section 5 of the FTC Act. *Blake v. Fed. Way Cycle Ctr.*, 698 P.2d 578, 583 (Wash. Ct. App. 1985). By alleging conduct that violates Section 5 of the FTC Act, T-Mobile alleged conduct that also violates the WCPA.

Huawei also mischaracterizes or ignores T-Mobile's three major allegations, any one of which is sufficient under the WCPA. *First,* T-Mobile alleges that Huawei failed to timely disclose its patents to ETSI prior to the freezing of the standard. Dkt. 106 ¶¶ 37, 40, 44, 47. This is similar to the conduct in *Dell*, where Dell waited for VESA to approve and implement a standard before disclosing its patents to VESA. *See Matter of Dell Computer Corp.*, 121 F.T.C. 616, 617-18 (1996). Huawei argues that its failure to timely disclose its patents to ETSI is not a violation of Section 5 under *Dell* because T-Mobile has not alleged that Huawei "expressly and falsely certified" that it had no conflicting intellectual property rights. Br. at 9. This understates

---

[4] In fact, the FTC's Google/Motorola Mobility complaint addresses FRAND commitments made to ETSI that Google/Motorola Mobility breached by improperly seeking injunctions. Dkt. 128-6 at 2, 3.

the harm recognized in *Dell*: by deceiving the SSO regarding the existence of its patent rights, Dell "unreasonably restrained competition" in part because "[w]illingness to participate in industry standard-setting efforts ha[d] been chilled." *Matter of Dell Computer Corp.*, 121 F.T.C. at 618. Here, Huawei's behavior results in the same anticompetitive harm: allowing SSO members to delay disclosing their patents undermines the credibility of the system and chills willingness to participate.

*Second,* T-Mobile alleges that Huawei's efforts to enjoin T-Mobile before making an offer to license is conduct that violates Section 5 of the FTC Act. Dkt. 106 ¶¶ 67-71, 86-87, 106. Huawei attempts to minimize these allegations as "unsupported" and dismisses them under a cramped conception of "patent hold up." Br. at 9. But T-Mobile provided detailed allegations that Huawei demanded T-Mobile take a license but refused to provide a FRAND offer before bringing suit. *Id.* ¶¶ 61-66. T-Mobile then explained how this wrongful conduct is harmful to consumers and counter to Huawei's obligations and constitutes hold up. *Id.* ¶¶ 67-71. T-Mobile specifically alleged that it is improper to seek an injunction in order to extract higher royalties (a form of hold up), as **Huawei itself** has recognized. *Id.* ¶ 31. *See also Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1046 (9th Cir. 2015) (describing testimony "that Motorola's actions were intended to induce hold-up, i.e., to pressure Microsoft into accepting a higher RAND rate than was objectively merited"); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) ("Patent hold-up exists when the holder of a SEP demands excessive royalties after companies are locked into using a standard.").

*Third,* T-Mobile alleges that Huawei's failure to abide by its FRAND commitments is conduct that violates Section 5 of the FTC Act. *Id.* ¶¶ 72-75, 88-89, 106. Such a failure harms competition, increases royalties, drives up prices, and undermines the efficacy of SSOs. *Id.*

¶¶ 88-89. Tellingly, Huawei ignores these allegations in its Reply. Br. at 9. Huawei's argument that because T-Mobile pled that Huawei made FRAND commitments, T-Mobile cannot also allege later hold up in violation of those commitments defies common sense and the clear allegations of T-Mobile's counterclaims. *E.g.*, Dkt. 106 ¶ 91 ("Huawei is attempting to leverage the hold-up power . . . that it promised to relinquish through its FRAND commitments . . . .").

*Finally,* T-Mobile has adequately pled the element of public interest impact. Huawei attempts to characterize T-Mobile's allegations as a private dispute, but T-Mobile has not alleged "a breach of a private contract affecting no one but the parties to the contract" under *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 538 (Wash. 1986). Instead, T-Mobile alleges a series of continuing SSO abuses and violations that have resulted in harms to consumers and to competition. See Dkt. 106 ¶¶ 33-47, 61-75, 85-89, 106-107. As in *Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 211 (Wash. 1987), there is no "neat distinction between [the] consumer and private dispute[]" because it is a private dispute that impacts the public generally. But even under the *Hangman* factors, Huawei has shown a public interest impact, *see Hangman Ridge*, 719 P.2d at 538: Were the acts committed in the course of Huawei's business? *Yes*, Huawei is an ETSI member and licenses its patent portfolio as part of its business. See Dkt. 106 ¶ 27. Did Huawei advertise to the public in general? *Yes*, Huawei's FRAND commitments are public. *Id.* ¶¶ 27-32. Did Huawei actively solicit T-Mobile? *Yes*, Huawei reached out directly to T-Mobile regarding a license. *Id.* 61. Did Huawei and T-Mobile have equal bargaining power? *No*, Huawei exercises holdup power through its claimed SEPs. *Id.* ¶¶ 48-56. Having shown a public interest impact, T-Mobile has adequately pled a claim under the WCPA.

### III. CONCLUSION

For the foregoing reasons, T-Mobile respectfully requests that the Court deny Huawei's Motion.

February 9, 2017

*/s/ Mark D. Selwyn*
*(by E. Glenn Thames, Jr., with permission)*
Michael E. Jones
Texas Bar No. 10929400
mikejones@potterminton.com
E. Glenn Thames, Jr.
Texas Bar No. 00785097
glennthames@potterminton.com
**POTTER MINTON**
**A PROFESSIONAL CORPORATION**
110 North College Avenue, Suite 500
Tyler, TX 75702
Tel. 903-597-8311
Fax 903-593-0846

Mark D. Selwyn
(California Bar No. 244180)
WILMER CUTLER PICKERING HALE
AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
(650) 858-6000

Joseph J. Mueller
(Massachusetts Bar No. 647567)
Cynthia Vreeland
(Texas Bar No. 20625150
Massachusetts Bar No. 635143)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Defendants T-Mobile US, Inc. and T-Mobile USA, Inc.*

- 11 -

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via electronic mail on February 9, 2017 to all counsel of record for Plaintiff who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.