1               IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF TEXAS

3                      MARSHALL DIVISION

4   HUAWEI TECHNOLOGIES CO. LTD )(

5                               )(  CIVIL DOCKET NO.

6                               )(  2:16-CV-00052-JRG-RSP

7   vs.                         )(  MARSHALL, TEXAS

8                               )(

9   T-MOBILE US, INC.,  ET AL   )(  MARCH 2, 2017

10

11

12

13                      MARKMAN HEARING

14              BEFORE THE HONORABLE ROY S. PAYNE

15               UNITED STATES MAGISTRATE JUDGE

16

17  APPEARANCES:

18
    FOR THE PLAINTIFF:  (See sign-in sheets docketed in
19                        minutes of this hearing.)

20

21  FOR THE DEFENDANT:  (See sign-in sheets docketed in
                          minutes of this hearing.)
22

23  COURT REPORTER:  Ms. Tammy L. Goolsby, CSR

24  Proceedings taken by Machine Stenotype; transcript was produced
    by a Computer
25

1                          I N D E X

2

3     Date:  March 2, 2016

4                                                    PAGE

5     Appearances                                      1

6     Hearing                                          3

7     Court Reporter's Certificate                    50

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      P R O C E E D I N G S

2            COURT SECURITY OFFICER:  All rise.

3            THE COURT:  Good afternoon.  Please be seated.

4            For the record, we're here for the Claim Construction

5    Hearing in Huawei versus T-Mobile, et al, which is Case

6    No. 2:16-52 on our docket.

7            Would counsel state their appearances for the record?

8            MR. THOMPSON:  Good afternoon, Your Honor.  Blake

9    Thompson, Ruffin Cordell, Richard Sterba, and David Barkan for

10   Huawei.  We're also joined by some Huawei representatives David

11   Roe, Alex, Linmei, Ben, and Wade, and we're ready to proceed,

12   Your Honor.

13           THE COURT:  All right.  Thank you, Mr. Thompson.

14           MR. JONES:  Your Honor, for T-Mobile Mike Jones

15   together with Ms. Cynthia Vreeland, Ms. Kathryn Zalewski,

16   Mr. Mark Selwyn, and Mr. Joe Mueller.  Thank you.

17           THE COURT:  All right.  Thank you, Mr. Jones.

18           MR. NEWTON:  Your Honor, Michael Newton for Nokia

19   Solution and Networks, and with me is Nokia representative

20   Ms. Elaine Drager.

21           THE COURT:  All right.  Thank you, Mr. Newton.

22           MR. PHILBIN:  Good afternoon, Your Honor.  Phillip

23   Philbin of Haynes & Boone on behalf of the Ericsson entities,

24   and with me this afternoon is Mr. Jamie McDole.

25           THE COURT:  Thank you, Mr. Philbin.

 1          MR. PHILBIN:  Thank you.

 2          THE COURT:  I will also note for the record that a

 3  little while ago we provided to counsel for all parties a set

 4  of preliminary constructions.

 5          The intent of providing those preliminary

 6  constructions is not to dissuade any party from taking whatever

 7  position they feel is appropriate on these disputed terms, but,

 8  rather, to let the parties know where the Court is after the

 9  initial review of the briefs and the record and to allow you to

10  focus your arguments and your attention where you think the

11  Court may have most gone astray.

12          I do reserve the right to and not uncommonly do alter

13  these constructions based on the arguments received at the

14  hearing, so I hope that you'll take them in that spirit.

15          I would like to have the arguments presented on a

16  term-by-term basis, but I'm happy to group the terms or order

17  the terms in any way that counsel feel is most efficient.

18          So with that, I will turn it over first to counsel

19  for Plaintiff.

20          MR. BARKAN:  Good afternoon, Your Honor.

21          THE COURT:  Good afternoon, Mr. Barkan.

22          MR. BARKAN:  I'll be brief on these terms.  With

23  respect to both the '365 and also the '617 patent, we agree

24  with the Court's tentative.

25          We had originally proposed identical construction for

 1  both patents, but we are now of the view that the Court's

 2  tentative correctly differentiates between the two patents and

 3  that the construction in '365 is correct and that ordinary

 4  meaning is correct for the '617, so I'll just make some brief

 5  remarks for the '615 patent.

 6            THE COURT:  All right.

 7            MR. BARKAN:  With respect to the '365 patent, as

 8  reflected in the Court's tentative, we think the claims here

 9  are specific.  There is language in each of the claims that

10  necessary data is data which is required.  That word required

11  appears in the claims every time necessary data is used and

12  gives flavor and meaning to the use of necessary data.

13            The specific information identified in the Court's

14  tentative, the CIP URL of the P-CSCF and the contact address of

15  the user device, those are the only embodiment that is

16  described in the patent.

17            There are various different flavors of how the

18  messages are passed that contain that information, but there is

19  no embodiment of any other data that is sent back and forth

20  that would be necessary data.

21            In that vein, for the Court's benefit I did want to

22  direct the Court to a case from the federal circuit from last

23  year, which is think is significant here.  It's Trustees of

24  Columbia University 811 F3rd 1359.

25            And the significance of this case is that we

1    sometimes see cases that quote the dicta from the Thorner case

2    where the Federal Circuit appeared to have set a rule that

3    terms are given a specific meaning only if there's a clear

4    definition or an expressed disavow, and sometimes the Thorner

5    case is read to be very rigid.

6            And in the Columbia University case last year, the

7    Federal Circuit made clear that that is too narrow a notion and

8    that the case law doesn't require explicit re-definition or

9    disavow, and so there is a very helpful discussion at 1363 to

10   1364 in which the Court collects cases showing that Thorner

11   should not be read as narrowly as requiring those two options

12   for any kind of specific definition of a term.

13           And with that, I will conclude my remarks unless the

14   Court has any questions for Plaintiff.

15           THE COURT:  Not at this point, Mr. Barkan.  Thank

16   you.

17           MR. BARKAN:  Thank you, Your Honor.

18           MS. VREELAND:  Your Honor, the Defendants and

19   Intervenors agree with the Court's constructions for the '617

20   patent.

21           We would like to briefly address the Court's

22   construction for '365 patent, and all three terms incorporate

23   this concept of necessary data, and so I'd like to briefly

24   address them together.

25           And just by way of background, as Your Honor knows

 1  from having read the briefs, the '365 and '617 patents share a

 2  specification that focuses on recovering after the failure of a

 3  component in an IMS system.

 4         And the core components discussed in the patent are

 5  what we in shorthand refers to as the P, the I, and the S, the

 6  proxy, the interrogating, and the serving call session control

 7  function, and the core component providing most of the

 8  functionality here is the S.

 9         And the claims of both patents focus on methods to

10  enable recovery if one of these S fails, and reflected in the

11  claim is the straightforward idea that when a user registers --

12  when the phone registers for one of these IMS systems, the S

13  that is assigned to that user will save what the patent calls

14  necessary data or backup data in the home subscriber service.

15         And then if that S subsequently fails and the system

16  assigns a new S to a particular user, that new S can then

17  retrieve this backup data and use it to restore service.

18         And the terms of both patents, the necessary data

19  terms in the '365 patent and the restoration data terms in the

20  '617 patent all focus on this backup data.

21         And in the '365 claim, the patent that we'd like to

22  focus on in our argument, the claims use the word necessary

23  data to refer to this backup data, and you can see in the claim

24  essentially the same idea that we saw in those pictures.

25         In the first element, the initial S assigned to a

 1  user backs up that necessary data.  In the second limitation,

 2  the I component assigns a new S after that first S fails, and

 3  then in the last -- in the last element we have the newly

 4  assigned S going and getting that necessary data to restore

 5  service.

 6            And I think a critical starting point here, an

 7  important starting point, and I think it reflects one of our --

 8  the biggest issues we wanted to raise with Your Honor is the

 9  term in the '365 patent is called necessary data.  The term in

10  the '617 patent is called restoration data.

11            And an important starting point is whether these are

12  referring to the same things or different things, and I -- and

13  Your Honor, of course, gave them different constructions.  I

14  would like to as a starting point -- and it's not in my slides,

15  Your Honor, but I can hand up Huawei's brief, and I wanted to

16  point Your Honor in particular to page 14 of their opening

17  brief, if I may.

18            THE COURT:  I have the brief, so it's --

19            MS. VREELAND:  It's page 14 of Huawei's opening

20  brief, the first full paragraph.

21            THE COURT:  All right.

22            MS. VREELAND:  So in their brief, Huawei first

23  addresses the '365 patent necessary data.  They then address

24  the '617 patent restoration data, and they acknowledge that

25  during briefing both parties believed that both terms should be

1   construed the same.

2          Specifically they say that the '617 patent is a

3   continuation of the '365 patent.  It's directed to the same

4   inventive concept.  The claims of the '617 patent, however, do

5   not refer to the user data necessary for restorations as

6   necessary data.  Instead the claims use the terms restoration

7   data or restoring data.

8          The parties appear to agree that these restoration

9   data terms refer to the same concept claimed in the '365 patent

10  as necessary data, and they, therefore, should have the same

11  constructions.  Indeed Defendants have also proposed the same

12  construction for the '617 and '365.

13         And, Your Honor, from the Defendant's perspective, we

14  continue to believe, as both parties represented during

15  briefing, that the necessary data terms and the restoration

16  data terms in the '617 should have the same construction, and

17  we would urge Your Honor to apply the same construction in the

18  '365 patent that Your Honor did in the '617 patent.

19         THE COURT:  If the parties agreed on a construction,

20  I very likely would, but you agree on a framework perhaps, but

21  you disagree on what the construction should be, and so that

22  doesn't do me a lot of good.

23         But I understand your point that the parties had the

24  beginning of an agreement, but I'm back in the absence of an

25  agreement I have to try and figure out what the best

 1    Construction of the terms is.

 2              And I do understand that they share the same

 3    specification, but it's different claim language, and I think

 4    the circuit pretty clearly directs me through Phillips to start

 5    with the claim language.

 6              MS. VREELAND:  And I'd like to, in just a few more

 7    minutes, persuade you that the '617 construction should also be

 8    applied to the '365 patent, Your Honor.

 9              And just as a practical matter, I think a real world

10    fact perhaps explains why the words are a little bit different,

11    and that is that between the '365 patent and the filing of the

12    '617 patent, the standards started talking about using the word

13    restoration data, and I think that perhaps might be one reason

14    why the terminology changed.

15              But I think a critical fact here is that although one

16    patent uses the term necessary data and the other restoration

17    data, we're talking about the very same embodiments.  You know,

18    there's not -- you know, there's not any difference in the

19    patent between the relevant backup data.

20              THE COURT:  I mean, one thing that I'm dealing with

21    in looking at these is that restoration data appears to be a

22    broader term.  The fact that a dependent claim was added looks

23    to be a further attempt to broaden that term, and so I am

24    dealing with those factors as well.

25              MS. VREELAND:  Your Honor, the -- you know, the

1   first -- I guess I had set up the issue, and I wanted to turn

2   to Your Honor's question about the plain meaning of the word

3   because I do think that that's an important starting point,

4   and, of course, the issue here is should the specific

5   embodiments be read in.

6            We would urge -- and Huawei had proposed that the

7   embodiments be read in for both patents.  We had urged a plain

8   meaning construction for both patents, and I do think an

9   important point for '365 patent is the plain meaning of the

10  term.

11           You know, we believe that necessary data has as broad

12  a plain meaning as the -- as the restoration data in the '617

13  patent, and there's certainly nothing in the word necessary

14  data that would imply a CIP URL of the P or the other very --

15  the contact address that Huawei -- Huawei is attempting to read

16  into the '365 claims.

17           We think necessary data has -- you know, is as

18  capable of being understood by a jury as restoration data and

19  that there's no basis for departing from that plain meaning.

20           THE COURT:  Of course, the term that we're construing

21  is not just necessary data.

22           MS. VREELAND:  Yes, Your Honor.  You're right.  It's

23  necessary data which is required when a user service processing

24  is restored.  Yeah, that's correct.  The phrase is a larger

25  one.

1          THE COURT:  And required I think has to be taken into

2    account also.

3          MS. VREELAND:  Certainly, Your Honor, and I think

4    what the -- you know, the -- for sure for the '365 patent, if

5    the -- if the inventors thought that their invention was

6    specific to the CIP URL of the P and the contact user

7    information that they're asking to be read into both claims, I

8    mean, if they thought that was their invention in the '365

9    patent, then they could have specified that in the claims as

10   they did in the '617 dependent claims, but they didn't.  They

11   chose a broader term.  They chose the term necessary data, and

12   they did that, so, you know, they intentionally did not limit

13   these claims to the embodiments.

14         And I think an important point here, too, Your Honor,

15   is not only necessary data which is required when a user

16   service processing is restored, I mean, that's a pretty simple

17   idea.  You -- the data is the data that's necessary to restore

18   service.  It's a -- it's a -- even at longer term is easily

19   understood.

20         So there's no basis for reading in the embodiments

21   and, in fact, Your Honor, the embodiments that they are trying

22   to read in are only some of the embodiments.

23         I mean, I would start with the point that the

24   specification does broadly refer to necessary data, you know,

25   whatever you need to restore service.  That is what is referred

1   to when the core concept of the invention is described.  It's

2   what's referred to in the summary of the invention.

3           There's no reference to a CIP URL of a P or a contact

4   address in the summary of the invention, and to the extent that

5   the specific -- the specific CIP URL of a P and a contact

6   address are referred to at all, they're referred to only in

7   some of the embodiments.

8           It's referred to in figure five, and it's referred to

9   in figure seven.  There's no reference to that in figure six,

10  so there are embodiments in this patent where the necessary

11  data would not include the CIP URL of the P or the contact

12  address of the user.

13          And if I can just briefly explain the significance of

14  these different embodiments?

15          THE COURT:  All right.

16          MS. VREELAND:  There's some examples in the patent,

17  you know, there will be a called party and a calling party, and

18  each of those parties will have assigned to them their own S,

19  and when the S of the called party fails, the calling party,

20  you know, necessary data -- and this is the situation in figure

21  seven.

22          When the -- when the S of the -- of the called party

23  fails, well, then among the things that in the examples are

24  used to restore service is this CIP URL of the P and the

25  contract address of the user.  But in the opposite situation

1    when the calling party has an S that fails, that same

2    information isn't required because the calling parties' I is

3    going to know those things.

4            So I know that's a lot of complicated technology

5    and -- and the P's and the I's and the S's are a lot of -- a

6    lot of technical terms, but suffice it to say that there are

7    some embodiments in the claim that's like five and seven that

8    specifically refer to the things that -- that Huawei is asking

9    Your Honor to read into the claims.

10           There are other embodiments and examples like six

11   that don't refer at all to the P of the CIP URL or the contact

12   address of the user device because in these examples -- in the

13   calling party example you wouldn't -- that information wouldn't

14   be necessary.

15           So they're asking you to read in a few -- read in

16   some necessary data for some of the examples that wouldn't be

17   necessary for others of the examples, so for that reason we

18   believe it makes more sense.

19           THE COURT:  Are those the examples that are claimed

20   in claim one?

21           MS. VREELAND:  The claim, Your Honor, is general.

22   The claim would cover either situation.

23           THE COURT:  And do those other embodiments that

24   you've referred to say that these elements are not present or

25   are you just saying they're not described, they're not called

 1   out in that embodiment?

 2           MS. VREELAND:  They're not called out in the

 3   embodiment.  The -- the figure six embodiment refers to

 4   acquiring the restoring data, and it doesn't -- you know, it --

 5   which, you know, frankly is similar to the language in the

 6   '617, and there's no reference to the P or the -- the P CIP URL

 7   or the contract address of the user device.

 8           And as a matter of -- you know, I'm certainly not an

 9   expert in the field, but I understand from folks that

10   understand this technology better than me that in this

11   situation when the mobile device is the calling party, the

12   figure six example you -- the -- it wouldn't be necessary to

13   have the -- the CIP URL of the P or the contact address of the

14   user device in order to restore service.

15           THE COURT:  You know, the -- other than the fact that

16   there is a reference to embodiment in this part of the detailed

17   description that you put the first part of up on the screen,

18   the core concept of the present invention, it's fairly

19   definitional language.

20           MS. VREELAND:  Well, I think what they are describing

21   is for these examples -- for the examples -- for the example in

22   figure seven, for example, what you would need if the -- if the

23   called parties S fails, you would need -- if you were going to

24   set things up like the examples in the patent, you know, in the

25   examples in the patent, the -- the -- P CIP URL and the contact

1    address would be what you would need to reserve service in

2    those examples.

3           But the key thing here is, Your Honor, the -- the

4    applicants didn't limit their claims to the examples in the

5    patent, so, you know, the fact that in the examples in the

6    patent that there might be what you need in the figure seven

7    situation to restore service doesn't mean that the claim --

8    that that particular aspect of a particular embodiment should

9    be read into the claim.

10          THE COURT:  I mean, that's really what we're talking

11   about, though, isn't it, whether or not that is what they were

12   claiming, whether or not that's what necessary data means.

13          MS. VREELAND:  Right.  And I would point Your Honor

14   to the '617 patent.  I mean, if they -- you know, in the '617

15   patent they have the broad claim to restoration data and they

16   have a dependent claim to the CIP URL of the P and the contact

17   address of the user device.

18          I mean, they knew how to claim that when they met.

19   They didn't claim it with the claims that refer to restoration

20   data, and they didn't claim it with the claims that refer to

21   necessary data.

22          THE COURT:  Well, necessary data is the term that is

23   used in the specification where this definitional language

24   appears.  Restoration data is not.

25          MS. VREELAND:  Well, that would be true for the

1   figure seven example.  I mean, if you have the failure of a

2   called parties' S, the thing -- what would be necessary to

3   restore data might be the CIP URL of the P and the contact

4   address.

5              But in other examples of the patent, figure six, you

6   wouldn't need that to restore -- to restore service, and it's

7   not even mentioned in connection with figure six.

8              THE COURT:  All right.

9              MS. VREELAND:  And I would also -- Your Honor,

10  Huawei, they -- the primary reason that they asked the Court to

11  read in the embodiment is they say that the patent would be

12  invalid otherwise, that not reading in the embodiment would

13  negate the inventive contribution.

14             But that's not a reason, Your Honor, to read in the

15  embodiment.  They chose broad claim language, and there is no

16  disclaimer either in the specification or the file history

17  where prior art was distinguished based on whether or not they

18  stored the CIP URL of the P or the contact address of the user

19  device.

20             And for that reason, we think that the case that they

21  cited to Your Honor Parallel Networks is easily

22  distinguishable.  That was a case where the Court read in --

23  read in disclaimer language.  There was a prosecution history

24  disclaimer there.

25             There's no prosecution history disclaimer here, and

1    we would say the much more relevant authority would be the

2    Hill-Rom case where the Federal Circuit confirmed that if the

3    claim language is clear that the Court should not rewrite it to

4    preserve validity.

5              THE COURT:  Okay.

6              MS. VREELAND:  And, you know, we do not -- we do not

7    contest the Court's construction in the '617 claim.  We believe

8    that the Court's construction of restoration data should be

9    applied to both patents.

10             And I would point out that the -- Your Honor had

11   rightly focused on for the '365 patent about the longer claim

12   term that talked about necessary data required when processing

13   is restored, and there's that same notion here.

14             The restoration data is used for restoring the

15   service that failed, so in both patents there's this notion of

16   going and getting the data that you need to restore service,

17   and, again, in some examples, like example seven, that might

18   include the CIP URL of the P and the contact user address.  But

19   in other examples, like example six, it would not.

20             THE COURT:  All right.

21             MS. VREELAND:  So for that reason we would ask that

22   the Court apply the construction for -- that the Court has

23   issued for restoration data to both patents consistent with the

24   parties' positions at least in briefing that the restoration

25   data in the '617 patent had the claim meaning as the necessary

1   data in the '365 patent.

2            THE COURT:  All right.  Thank you, Ms. Vreeland.

3            MR. BARKAN:  May I respond briefly, Your Honor?

4            THE COURT:  Yes.

5            MR. BARKAN:  As the Court has noted, there is a

6   difference between the '617 use of restoration, a term that

7   does not appear in the specification, from the necessary data

8   language of '365, which does.

9            In with respect to the '365, I want to comment on the

10  figure six example that counsel raised.  In the figure six

11  example, there are numerous references to backup data, and when

12  we look at the primary definitional statement, which appears at

13  column seven, starting at approximately line 28, that's the

14  section that defines specifically the CIP URL and the contact

15  address.

16           And it says that this is an extended definition

17  that's added to the SAR message that is AVP user backup data,

18  and so the reference to figure six, the backup data is to this

19  AVP user backup data, and we can see that in the narrative part

20  of the specification at column 11 in the paragraph that begins

21  at line 36 where it talks about certain registration flow and

22  it refers to AVP user backup data.

23           And so when we match those up, we see that when the

24  figures use the phrase backup data, that's a shorthand for the

25  AVP user backup data, which is expressly defined in the

 1  specification as the CIP URL of the P-CSCF and the contact

 2  address of the user device.

 3          And so we think that these examples simply further

 4  confirm that in the '365 necessary data has been explicitly

 5  defined to include those two items as in the Court's tentative.

 6          I have no further comments if the Court has no other

 7  questions.

 8          THE COURT:  All right.  Thank you.

 9          MS. VREELAND:  And I can respond if Your Honor would

10  like or I can sit down and let the next term be.

11          THE COURT:  I am happy to have your response.  I know

12  this term is important.

13          MS. VREELAND:  And I think the response, Your Honor,

14  would just be to direct you to the -- to figure six, which I

15  don't think I have on a slide, but in figure six you can see

16  that the failure occurs when the I assigns a new S.

17          There's a box sort of in the middle of the figure,

18  and that I, as the text explains in explaining figure six, and

19  we talk about the contact address of the UE and the CIP URL,

20  which is essentially the address of the P, we're talking about

21  things that that I will have at the time that this S fails.

22          So if -- if -- so the -- there's no need -- if you're

23  going to restore in this figure six situation, there's no need

24  for -- and this is again the -- the situation where the calling

25  party's S fails, that I doesn't need that information because

1   it already has that information, so we disagree with Huawei's

2   position on figure six.  Thank you.

3            THE COURT:  All right.  Thank you, Ms. Vreeland.

4            All right.  We're ready for the next term.

5            MR. STERBA:  May it please the Court, Your Honor,

6   Richard Sterba for Huawei.

7            We're going to turn now to the '339 patent, having

8   addressed all of the terms at issue for the '365 and '617

9   patents.  The bottom line, Your Honor, is Huawei agrees with

10  the Court's tentative or preliminary claim constructions.

11           We think you've in some instances gone with our

12  proposed constructions and some instances you have not

13  precisely gone with our proposed constructions, but the Court's

14  proposed constructions have captured what we believe was the

15  distinction that we were trying to make between our proposed

16  construction and the Defendant's and Intervenors' proposed

17  constructions.

18           So with that, Your Honor, unless the Court has any

19  questions, I would yield the podium.

20           THE COURT:  All right.  Thank you, Mr. Sterba.

21           MR. NEWTON:  Your Honor, Michael Newton for the

22  Defendants and Intervenors, and we actually do have some

23  PowerPoint slides to hand out.

24           THE COURT:  All right.

25           MR. NEWTON:  May I approach, Your Honor?

1            THE COURT:  Yes, sir.

2            MR. NEWTON:  So, Your Honor, with regard to the '339

3    patent, with regard to the notification terms, we're in

4    agreement that your construction is correct, and so apparently

5    we had a disagreement that was fake and you came up with a

6    better -- a better word than we came up with, either notifying

7    or instruct or request we think is the right way to go.

8            So with that, I'd like to focus on the term is error;

9    and if you'll follow me to slide 36 in our presentation.  So on

10   slide 36, Your Honor, I put up claim 11 where the phrase is

11   error is included.  And as you can see, we think the phrase to

12   focus on is this phrase if a user plane using a One Tunnel

13   technology is error.

14           And Defendants and Intervenors claim that this term

15   is indefinite, and it's because there's plainly an error in the

16   phrase, and the question that the Court has to consider is

17   there reasonable debate as to what the proper construction or

18   correction should be.

19           And Huawei proposed a construction that says this

20   should just mean if a user plane using a One Tunnel technology

21   is invalid rather than is error.  We believe there's at least

22   two reasonable constructions, and I want to present those, if I

23   may.

24           THE COURT:  All right.

25           MR. NEWTON:  So turning to slide 17, the debate at

1    issue is, is the correction subject to a reasonable debate, and

2    if you go to slide 38, we note that Huawei had an opportunity

3    to make this straightforward correction if, indeed, it was

4    straightforward when they filed a certificate of correction

5    just a year before they filed suit.

6            And they did correct straightforward things like they

7    turned the letter B into the word by, so they filed a

8    correction not long before they filed suit, but they didn't try

9    to correct this is error phrase to just is invalid when they

10   had the opportunity there.

11           So turning then to slide 39, if we look in the

12   specification and try to understand what's going on here and

13   what the other possible reasonable interpretation is, it's

14   important to understand the context of the way these claims

15   work.

16           So what happens is the -- the access network device

17   realizes there's a problems, and it sends an error indication

18   to the anchor device, the gateway, and when it receives that

19   error indication, it doesn't know or it has to make a

20   determination is that error indication for a tunnel that's

21   using One Tunnel technology or Two Tunnel technology.

22           If it's not using One Tunnel technology, it doesn't

23   want to send a message to the control plane, and the control

24   plane, you don't want it to configure to receive a message in

25   that context.

1           So it's very important that not only do you determine

2    that there is an error, but you look at this error indication

3    and say, are we using a One Tunnel technology.  Only in that

4    case do you send a control message or a message that's then

5    received by the control plane, and then the control plane will

6    fix the tunnel.

7           So when you see this phrase if a user plane using a

8    One Tunnel technology is error, it's important to understand

9    what's going on in that type of language.

10          And, again, if you'll look just at the spec that

11   we've cited there in the abstract and then figure two, they

12   describe this determination of when you look at the error

13   indication, you have to ask the question is the user plane for

14   that error indication using One Tunnel technology or not.

15          So, Your Honor, if you'll proceed with me to the next

16   slide then, focusing on the claims, all the other independent

17   claims, one, three, nine and 14, use a similar phrase.  They

18   use this phrase if a user plane corresponding to the error

19   indication uses a One Tunnel technology.

20          So, again, it's recognizing that I look at the error

21   and I decide if the user plane corresponding to that error is

22   One Tunnel technology or not, and so that was in every other

23   independent claim.

24          And so we would say if you look and now ask what was

25   the proper correction for the claim that has the error in it,

1   we would say another reasonable interpretation is to rewrite

2   claim 11 so that it looks like the other claims.

3           And, in fact, instead of saying if a user plane using

4   a One Tunnel technology is invalid, instead replace that with

5   if a user plane corresponding to an error indication uses a One

6   Tunnel technology.  Then you may ask is there a difference

7   between those interpretations?  I think their arguably could

8   be.

9           So you're not asking whether the tunnel's invalid.

10  You're asking whether the error indication corresponds to One

11  Tunnel technology or not.  And, again, if it doesn't, there's

12  no reason to send a message to the control plane and there's no

13  reason to configure a control plane to receive a message unless

14  the error indication corresponds to One Tunnel technology.

15          So we would say there's an alternative proposal here

16  that's reasonable as well.  It's -- and in view of that we

17  would say that you have two possible reasonable constructions,

18  so the Court shouldn't make this correction.  Only the patent

19  office should if they decide that this isn't subject to

20  reasonable debate.

21          THE COURT:  The claim 11 language that you're drawing

22  on.

23          MR. NEWTON:  Uh-huh.

24          THE COURT:  Claim 11 is drafted from the perspective

25  of the core network control plane, the SGSN, isn't it?

1           MR. NEWTON:  Yes, it is.

2           THE COURT:  And isn't claim nine -- I'm sorry.  No.

3   Claim nine is the one that had the -- the error indication

4   language that you're drawing from?

5           MR. NEWTON:  Well, claim one, three, 14 and nine,

6   they all have that.

7           THE COURT:  And are any of them from that same

8   perspective of the SGSN as opposed to the GGSN?

9           MR. NEWTON:  They're not solely from one device or

10  the other.  Some of them mix different things, so none of the

11  other independent claims are solely the control plane or SGSN.

12          THE COURT:  So in the ones that are from the

13  perspective of the GGSN, the error indication, if we were going

14  to construe it that way, would be being sent from the device to

15  the same device?

16          MR. NEWTON:  No.  So what you have is you have --

17  just looking at the figure, you have your access network device

18  or RNC in the 3G network.

19          THE COURT:  Uh-huh.

20          MR. NEWTON:  It sends an error indication to the GGSN

21  or the gateway, the anchor.  The anchor then makes the

22  determination I was talking about, does that error indication

23  correspond to One Tunnel technology or not.

24          If it does, then I'm going to send a message to the

25  control plane and say, hey, you need to fix things because

HUAWEI TECHNOLOGIES CO. LTD. vs T-MOBILE USA, INC., ET AL
MARKMAN HEARING,  on 03/02/2016                                          27

1  we're in a One Tunnel situation.  This isn't going to get

2  corrected quickly if I don't let you know.  But if the error

3  indication corresponded to Two Tunnel, there's no reason to

4  send it.

5          And I think what you're getting at, Your Honor, is,

6  okay, this claim 11 is focused on the control plane, but that

7  if language is I'm going to configure this thing to receive a

8  notification if certain things happen.  That certain thing

9  happening relates to what's happening at other devices.

10          I only want to be configured to receive this

11  notification if the GGSN or the anchor said I'm in a One Tunnel

12  technology context.  If I'm not in One Tunnel technology, I

13  don't want to configure it to receive an error message.

14          THE COURT:  That was the weakness that I saw in your

15  analogy with the claim 11 -- the claim nine term is that when I

16  mapped it out, it did not make sense to apply that in the claim

17  11 context.

18          MR. NEWTON:  And what I say to this, Your Honor,

19  that -- that if phrase is saying I'm only -- I'm going to

20  configure my system to receive this notification only if

21  certain things happen some place else, and the question is what

22  is that something else that's happening?  Is it simply that

23  I've got an invalid tunnel or is it that I've looked at an

24  error indication and determined that I have -- I'm using One

25  Tunnel technology?

1            THE COURT:  All right.  Well, I understand the issue

2  is your proposal, your second construction a plausible reading

3  of the claim, and that's -- I understand that's what I've got

4  to examine, and if it is, then I understand your issue.

5            MR. NEWTON:  Understood.  Thank you, Your Honor.

6            THE COURT:  Thank you.

7            MR. NEWTON:  So I guess the next set of terms are the

8  unit terms.  Should I go ahead?  I don't want to --

9            THE COURT:  I would like to hear the Plaintiff's

10  response on that.

11            MR. STERBA:  If I could just briefly respond, Your

12  Honor.

13            Your Honor correctly draws the distinction between

14  the various independent claims in Huawei's '339 patent; and,

15  yes, the issue is that the Defendants and the Intervenors are

16  seeking to put forward this second plausible construction, as

17  they put it, by importing a limitation into the claims.

18            And it's I think with reference just to the

19  Defendant's own slide 41, we can see that their proposed

20  reasonable correction is to import this error indication

21  language into this claim 11.

22            But claim 11 is referring to the state of the -- of

23  the user plane or the down -- what is the downlink data path as

24  being invalid, and the simple correction of the word error to

25  the word invalid really captures what the gist of the -- of the

 1   invention is and preserves the meaning of the claim correcting

 2   this facial error.

 3            THE COURT:  Why wouldn't this have been corrected

 4   earlier by the patentee?

 5            MR. STERBA:  So that's -- that's certainly a fair

 6   question, Your Honor.

 7            The construction -- the certificate of correction

 8   that the patentee filed about a year before, less than a year

 9   before filing the complaint, caught two errors and corrected

10   those two errors.  One was a missing letter.  The other was a

11   missing word, so these are errors of a typographical nature.

12            And this error is an error of a grammatical nature,

13   one that was, quite frankly, not as readily apparent despite

14   the fact it is a clear error on the face of the patent we see

15   now.  It was not the typographical error corrected by the

16   certificate of correction.

17            THE COURT:  Walk me through your rebuttal to the

18   Defendant's argument that the reference could be to the error

19   indication.

20            MR. STERBA:  The claim -- so the -- if I could, Your

21   Honor, the claim itself is directed to -- or I should say the

22   invention itself is directed to a situation of an invalid

23   downlink data tunnel.

24            THE COURT:  Uh-huh.

25            MR. STERBA:  And the invention is focused on -- or

1   the gist of the invention is focused on how to recover this

2   downlink data tunnel once it's determined to be invalid.

3            The invention is not focused on merely detecting that

4   the data tunnel, the downlink data tunnel is invalid.  It

5   really is focused on the recovery process.

6            So what this claim is focused on is the error state

7   of this -- you know, of this element.  The error indication is

8   not -- you know, is not included in this aspect of the claim.

9            THE COURT:  All right.  Thank you, Mr. Sterba.

10           MR. STERBA:  Thank you.

11           THE COURT:  Let's see.  Mr. Newton, you can proceed

12   to the next claim -- next term.

13           MR. NEWTON:  May I respond just briefly to what was

14   just said?  So I would think if we're talking about scope of

15   the claim, one is a broader scope and another one is more

16   narrow.  I think both of them can be reasonable.  Just because

17   mine may arguably be more narrow, that doesn't make it

18   unreasonable.

19           THE COURT:  You would agree that interpreting error

20   as referring to invalid is a reasonable construction?

21           MR. NEWTON:  Yes, Your Honor, I would.

22           THE COURT:  Okay.  Go ahead.

23           MR. NEWTON:  So, Your Honor, moving to the so-called

24   unit terms -- and I feel a little bit like you allowed us to

25   amend to add these, and I get this feeling having seen your

```
 1  tentative that the Judge giveth and then the Judge taketh away,

 2  but let me see what I can do to bring things back and at least

 3  present our perspective on this.

 4         So I'm on slide 46 in our presentation, and we

 5  obviously read regularly your decisions on Docket Navigator and

 6  where else, so we're well aware that --

 7         THE COURT:  I feel sorry for you.

 8         MR. NEWTON:  Well, and we understand that you have a

 9  certain view of unit terms and -- and what the jurisprudence

10  should be, but I think this is an interesting situation for the

11  following reason, and it's something that we never had a chance

12  to write about in our briefs because of the way the briefs were

13  done.

14         So we did the first expert declaration in our

15  responsive claim construction brief, and we did not see

16  Huawei's expert declaration until their reply, so the Court

17  doesn't have before it kind of our response, so I'd like to, if

18  you would indulge me for a minute while I talk a little bit

19  about why even under your tentative construction, which is that

20  the terms are not 112(6), that we still think the claims are

21  indefinite.

22         And I'm going to go a little bit into a history

23  lesson here, and the history lesson begins in 1946 with the

24  Halliburton versus Walker, U.S. Supreme Court case, and this is

25  Before the 1952 Act was introduced.
```

1          So in 1946, the Court said we're going to deem a

2   claim invalid if it has a limitation which basically claims by

3   what something does rather than what it is, so at a high level

4   said functional claiming is not appropriate.

5          And so in 1952, Judge Markey and the U.S. Congress

6   went about the business of fixing what happened in Halliburton,

7   and when you read Halliburton a little more closely, you

8   realize why did they end up at that kind of a reasoning?  Why

9   is it that functional claiming is not good?

10         Well, one of the reasons for having a patent system

11  is to encourage innovation, and if you allow someone to patent

12  something and claim functionally what they do and get every

13  structure that possibly implements that functionality, then you

14  basically obstruct innovation because there's no way to design

15  around or to do something that gets that same function, but in

16  a different way that's not covered by the claim.

17         So in 1952, we get this carve out, this safe harbor

18  of 112(6), and it says we're going to allow you to claim

19  functionally because there may be some things that no one has

20  ever described before.  Now, the quid pro quo, the exchange for

21  that safe harbor, is you have to tell me what the structure is.

22         So if I design something that's removing barnacles

23  from the bottom of a boat and I give you a scraper mechanism,

24  I'm going to allow you to claim, you know, a mechanism for

25  removing barnacles from the bottom of a boat, but if you're --

```
 1   show me a scraper, don't come in and then say you want a paint

 2   brush with a chemical on it.  You don't get all of that.

 3            So the safe harbor here is limited to the structures

 4   you put in the patent and structural equivalence.  And so here

 5   at least under your tentative, Huawei has not taken advantage

 6   of this safe harbor.

 7            So another follow-on case once the 112(6) law was

 8   enacted and the Federal Circuit started to look at it more

 9   closely, they said it's not good enough to say a person skilled

10   in the art would know of a structure.  You don't get every

11   structure in that mechanism, and it's not good enough to simply

12   refer to structures that perform the recited function that are

13   known to a person skilled in the art.  You have to actually

14   disclose a specific structure.

15            So in the reply, as I pointed out, we received a

16   declaration of Dr. Nettleton, and Dr. Nettleton told us what

17   the structures were in the patent that implemented the

18   receiving, the sending, and the storage unit, and he said a

19   POSITA, so a person of ordinary skill in the art, would know

20   that these things could be implemented basically as hardware,

21   software, basically anything.

22            So he, in essence, is trying to cover every structure

23   that performs the function.  And interesting what he didn't do

24   is say, oh, a person skilled in the art knows of a definite

25   structure that implements that.
```

1        So we would claim if they don't want to take

2   advantage of the safe harbor of 112(6), then the claims are

3   still indefinite because they use terms where they're trying to

4   claim every receiving, sending, and storage unit mechanism that

5   does the functionality recited in claims nine, 11 and 12.

6        So I don't know if you have any questions on that,

7   Your Honor.  I was going to go back now and focus a little bit

8   on the analysis of the 112(6) analysis looking at what they've

9   said in their reply.

10        THE COURT:  You know, I think the first question

11   under 112(6) is whether or not the claim term implies

12   structure; right?

13        MR. NEWTON:  A sufficiently definite structure,

14   correct.

15        THE COURT:  Uh-huh.  And so that's a decision that's

16   made in the context of the specification.

17        MR. NEWTON:  That's correct.

18        THE COURT:  And --

19        MR. NEWTON:  Well, that -- no, I think the first step

20   is what a person knows, so let's say I say receiver, and I'm

21   talking about a cell phone.  I say receiver and a transmitter.

22        I think a lot of experts would say, oh, yeah, I know

23   what the receiver is.  It takes whatever modulation you're --

24   you know, you're using.  You demodulate, and I gave you a data

25   stream.

1          So in that context, I think the question is when I

2    say receiving unit or sending unit, do I know of a definite

3    structure that implements that in step one of the means plus

4    function analysis.

5          THE COURT:  I think it's is it a structural term or

6    is it a functional term, and if it's a term that implies

7    structure within that -- the context of that specification,

8    then you don't get into 112(6).  It's not functional claiming.

9          MR. NEWTON:  But I have to know that it is a

10   structure; correct?  I mean, that's what I say.

11         THE COURT:  Right.

12         MR. NEWTON:  So I think what you've done here --

13         THE COURT:  You don't have to know what structure it

14   is, but you have to know it's a structure.

15         MR. NEWTON:  But it's an existing structure.  Are we

16   in agreement on that?  I mean, my view is that it's got to be a

17   definite structure.  It's got to be one that people know of,

18   that I could go and say, oh, I know what the structure is for

19   that.

20         THE COURT:  Well, either one people know of or one

21   that's described in the specification.  I don't think there's

22   anything that would prevent it from being a novel structure.

23         MR. NEWTON:  I agree if they teach you how to do it.

24   I mean, if you're -- so if I say receiver -- well, I'm

25   thinking -- think about amplifier.  When amplifiers first came

1    around, no one knew what that was, and pretty soon you saw what

2    an amplifier was and it started to take on a life of its own.

3            I'm trying to think of other terms that are like

4    that, when they were first introduced, you didn't know what it

5    was, and little by little people start to understand what it

6    is.

7            I think here when you say receiving unit, does that

8    strike up a particular structure in somebody's mind?  I think

9    that is the first question on the means plus function analysis.

10           THE COURT:  And obviously it's not just receiving

11   unit.  It's receiving unit as used within the context of that

12   claim and the way that claim is amplified by what's set out in

13   the specification.

14           And, I mean, there's a presumption that it's not

15   112(6).  You have to overcome that, and I have -- you know, the

16   approach I've taken here is to provide a construction of it

17   that I think is supported by the specification and that shows

18   that it is a structural and not a functional claim.

19           MR. NEWTON:  And people skilled in the art know what

20   that structure is, a particular structure?  I guess I'm trying

21   to understand Your Honor.

22           Maybe I can move it along this way.  If you look with

23   me with slide 53, so in the patent, they say that these

24   receiving, sending, and storage units exist within a GGSN, and

25   I guess the question we're struggling with is within a GGSN,

1    what comprises the receiving unit?  Is that, in fact, the

2    structure or are you just saying it's the thing that does the

3    function that's described there?

4              Same with sending unit.  Is sending unit simply the

5    thing that does those functions or do people know what the

6    sending unit is within the GGSN?  The same with the storage

7    unit.  And if you look back at some of the declarations, we at

8    one point asked is the storage unit just a memory, and the

9    other side said, no, it's not.

10             And I think when you look at these devices, you know,

11   your first gut might be in a context of a after server like

12   this.  You say receiving unit, oh, that must be the network

13   access card that receives the packets, strips off all the

14   headers.  And the same for the sending unit, the network access

15   card that does that on the other end.

16             And I think what they would say is, oh, no, this

17   could be anywhere.  It could be in the processing unit within

18   the CPU, so where we're struggling is the receiving unit

19   software on the processor, is it hardware in a network access

20   card, is it software in a network access card?  Where does this

21   reside within that -- within the GGSN?

22             THE COURT:  All right.  I understand your issue.

23             MR. NEWTON:  And we would just say one other thing,

24   Your Honor.

25             When you look at what Dr. Nettleton said and you look

1  at what the expert said in the Williamson case, we think these

2  declarations are very similar, and in essence what they try to

3  say, it's any structure, software, hardware, a mix of the two,

4  that implements the functionality with no recitation of a

5  definite structure that performs that functionality, so we do

6  believe it's in the realm of functional claim.

7           THE COURT:  All right.  Thank you, Mr. Newton.

8           MR. CORDELL:  May it please the Court, Your Honor,

9  Ruffin Cordell.  May I be heard on the unit terms?

10          THE COURT:  Yes, sir.

11          MR. CORDELL:  Okay.  So, first of all, we agree a

12 hundred percent with the Court in both your preliminarily

13 construction and in the analysis the Court just discussed with

14 Mr. Newton.

15          We begin with the proposition that these are not

16 means for or step for claims, so the presumption lies against

17 construction in 112(6) terms.  That's absolutely undisputed.

18          What we have here is a couple of advantages that --

19 Mr. Newton took us through a number of cases.  The one that we

20 believe is perhaps the most apt is this Court's decision from a

21 couple of years ago in the E2E Processing, the Cabela's case.

22          And if I could have slide 35 from our set, we

23 actually have a couple of excerpts from that case, and they

24 are -- the Court will recall that the term that was being

25 construed was component.  And like in this case, it was coupled

 1   with several prefixes, selectro component, adapto component,

 2   and integration component.

 3            But in the E2E case, Your Honor found that that

 4   prefix lent structural significance to each of those terms and

 5   then went on to the specification to find how those -- each of

 6   those terms interacted with each other and with the remaining

 7   structures of the patent to construe them as, in fact, being

 8   structural and not means plus function.

 9            Here we have the added advantage that the

10   interactions between the sending and receiving and storage

11   units are right in the claims.  They're in claims nine and 11,

12   so we don't even have to go to the specification, so this is --

13   this is actually a case that is further from means plus

14   function treatment than was the E2E case.

15            Mr. Newton addressed Dr. Nettleton's declaration, but

16   focused only on the beginning paragraphs, the introductory

17   paragraphs, and didn't focus on what I believe is the meat of

18   his declaration.

19            If I could have slide 35, here we see where

20   Dr. Nettleton actually goes into these claim terms and says

21   point blank a POSITA would need to know only the inputs and

22   outfits of the various units, along with their corresponding

23   functions to implement the units because they are readily

24   understood components of well-known elements within a packet

25   core network performing well under known functions.

1           He says that a sending unit and a receiving unit and

2    a storage unit are, in fact, well-known structures within a

3    packet network.  That -- that evidence is essentially

4    undisputed.  We have -- we had a declaration from Mr. Lanning,

5    the Defendant's expert, who said, you know, I can't really tell

6    and I don't really know, and, yet, Mr. Lanning himself was able

7    to immediately map claim nine to a GGSN and claim 11 to an

8    SGSN.  He was able to immediately know exactly where in the

9    network these elements lie.

10          But there's also an abstraction issue here, so what

11   we're talking about here is not a patent on a receiving unit.

12   This isn't something that is talking about taking data off of a

13   high speed line and sampling it and putting it in the buffer

14   and then sending it on.

15          Those details are not the invention that we're

16   talking about here, and so it's not surprising that the patent

17   talks about them in network terms.  This is a network patent,

18   and so it treats them in network terms.

19          And if I can have slide 36, we see that Dr.

20   Nettleton, in fact, himself recognizes this and says that these

21   are -- these are -- first of all, he says these are

22   indispensable to the function of these entities, so everybody

23   uses them.

24          But it made explicitly showing them in figures three

25   through five unnecessary.  Indeed, they are not typically shown

1  | in a call flow diagram in any 3GPP standard, and he says I'm

2  | unaware of any POSITA under my supervision or tutelage being

3  | confused by their absence.

4  |          So we talk a lot about these standards in these

5  | cases, and the 3GPP standard is sort of the one we all point

6  | to, and what Dr. Nettleton is telling us here is that this is

7  | the -- this is the level of abstraction that people use for

8  | these kinds of ideas for these kinds of systems.

9  |          So we believe that the Court's construction is

10 | exactly correct.  We think the interaction between these units

11 | to the extent that they're not structural on their face proves,

12 | in fact, that they are structural and that no 112(6) treatment

13 | is appropriate here.

14 |          THE COURT:  All right.  Thank you.

15 |          MR. NEWTON:  Your Honor, just briefly, if I may, if

16 | we can go back to our slide presentation.  So on slide 55, we

17 | were quoting from a paragraph later than what was put up

18 | earlier.  We're in paragraph 37 where the expert is saying that

19 | the structures that can implement this functionality are -- you

20 | know, could be software, could be hardware, and he gives a

21 | bunch of alternatives of things that could be used.

22 |          Now, when we moved to amend in this case, we started

23 | having a discussion, and when we moved to amend the infringing

24 | contentions -- or the invalidity contentions and our claim

25 | construction contentions, it was clear that we were starting to

1    have a claim construction dispute.

2             And the dispute is probably is:  If you ask us to

3    name the receiving unit and we're going to say it's a network

4    access card and we say the sending unit is a network access

5    card on the other side and it turns out that the functionality

6    here is in a central processing unit, we're going to have a

7    dispute.

8             And what they're trying to do is they're trying to

9    say if it's in the network access card, that counts.  If it's

10   software in the processing unit, that counts as well.  If it's

11   hardware somewhere between the two, that counts as well.  That

12   is not good enough, and that's why it's different than E2E and

13   different than your PanOptis decision and different than

14   Chrimar and all the other decisions that deal with these unit

15   issues.

16            They're trying to take too much.  They want to say

17   it's every structure known to somebody skilled in the art that

18   can implement this functionality, and there's not a specific

19   receiving unit that they've been able to identify that does it.

20            They want it whether it's in the network access card,

21   whether it's in the CPU, or whether it's specifically designed

22   hardware to accelerate this kind of processing, and in that

23   sense, we think they've gone too far.

24            So if they don't take 112(6), they don't get into

25   that safe harbor, they haven't described any specific

1    structure.  They're trying to claim every structure that does

2    the functions for those units.

3              THE COURT:  You know, I -- I think that there is a

4    lot to the argument that Mr. Cordell has made about the level

5    of abstraction because where these terms become most

6    problematic is when they are not such ordinary things as

7    receiving, sending, and storing, and where they are part of the

8    inventive concept of the patent that's claimed, and I don't see

9    these claims as involving that.

10             MR. NEWTON:  Well, if I may, Your Honor, I have a

11   slide on that.  I do believe that these terms do involve the

12   inventive aspect.

13             So if you look, for example, in claim nine, which

14   I've put up on slide 54, I think it is, you can see the

15   communication device there only comprises the receiving unit,

16   the sending unit, and the storage unit and the functions they

17   perform.

18             So this isn't a scenario where I've described a cell

19   phone and I say, hey, it's got a receiver, it's got a

20   transmitter, and the magic is in the middle.  The magic here

21   has to be within one of those three units or a combination of

22   the three and so the functions they perform, their new

23   functions.

24             And so you're doing something different.  You haven't

25   taken the old GGSN and say just use those structures to do

1    these functions.  You've added something new, and the question

2    is where did you add the something new and how did you do it.

3              THE COURT:  It's the manner in which they're

4    configured, is it not?

5              MR. NEWTON:  I think it's the functions they do.

6    Because if it's just the way they're configured, the GGSN, I

7    think they would say it had a receiving unit, it had a sending

8    unit, it had a storage unit.

9              For sure it had the ability to store data.  It had

10   the ability to receive information, and it had the ability to

11   send information, so it's these functions that are being done,

12   and you're asking, well, how are they done and where are they

13   done.

14             Is it in software that's in the CPU?  Is it software

15   that's in the network access card?  Is it new hardware you've

16   added somewhere else?  Is it, you know, different hardware than

17   what was already in the GGSN?

18             THE COURT:  But how is the receiving, sending, and

19   storing function the inventive aspect that's being claimed

20   here?

21             MR. NEWTON:  Because they have configured those units

22   in a new way supposedly, whichever one of those things is new,

23   to receive an error indication and do a particular thing, to

24   instruct a core network control plane to do a particular thing.

25             So you've re-configured these devices in some way to

1    do this, but the question would be what exactly is it that you

2    reconfigured?  And to my point, is it the microprocessor, the

3    CPU?  Are you going to waste processing time to do it there?

4    Are you going to do it in the front end in these network access

5    cards that are designed in a lot of senses?  And you're going

6    to have a case on this in a couple of months.

7         You know, are you writing directly from the network

8    access card to memory and never bothering the CPU and then

9    reading out of that memory and going through the card or are

10   you doing something in the processor, new software, or are you

11   just adding all new hardware?

12        So I would say this, Your Honor, and if you look at

13   the claims, it looks to me like they took their method claim

14   and said I need to create an apparatus claim.  Hey, let's just

15   take the receiving function and call that a receiving unit.

16   Let's take the sending function and call that a sending unit,

17   and let's take the storage function of storing a new PDP

18   context and call that a storage unit.

19        So I think this case is a bit different than a lot of

20   the other unit cases that you have.  These really aren't new

21   elements.  I mean, they're not old elements.  They're made up

22   elements, if you will, to functionally claim.

23             THE COURT:  All right.

24             MR. CORDELL:  Brief response, Your Honor?

25             THE COURT:  All right.  That's fine, Mr. Cordell.

1    Thank you, Mr. Newton.

2            MR. CORDELL:  In fact, this is a combination claim,

3    and each of these elements are configured in a particular way,

4    and that's part of what we'll have to prove to prove

5    infringement, and we have to find all of them.

6            Mr. Newton's fundamental complaint is not about claim

7    construction.  It's that he thinks the claim is broad, and the

8    answer to that is they need to come forward with prior art if

9    they believe that the claim is, in fact, broad.

10           We've heard several times that, wait, there are a lot

11   of different ways that you could implement, you know, this

12   technology; but, you know, there's no dispute, at least today,

13   that the term receiver is well-known, but there are millions of

14   different ways to configure a receiver.

15           There are digital receivers.  There are analog

16   receivers.  There are some that are made with tubes.  There are

17   some that are made with chips.  There are some that are done in

18   software.  There's some that are done in hardware.

19           That's not the issue.  The issue is whether one of

20   ordinary skill would understand these to be structural

21   components, and the record is that, in fact, they would, and so

22   with that, I think it confirms that the Court's analysis is

23   correct.  Thank you.

24           THE COURT:  All right.

25           MR. NEWTON:  Briefly, Your Honor.  This will be the

1   last time.

2           THE COURT:  I'll give you the last word, Mr. Newton.

3           MR. NEWTON:  Mr. Cordell said receiving unit

4   well-known, sending unit well-known.  I sense what they're

5   going to end up doing is saying, oh, all this is really in a

6   processing unit.  That's not even discussed in this claim.

7           So they're going to say, oh, those functions, they're

8   are done in the processing unit, not in the receiving unit, not

9   in the sending unit, or the storage unit.  It's going to be

10  done in a processing unit.

11          And that's what we're trying to avoid.  You can't

12  just draw these lines willie-nillie however you want.  If

13  you're doing that, you're trying to get every possible way to

14  do this, and in that sense, these structures aren't known.

15  They're not like a receiver in a phone.  They're not like a

16  transmitter in a phone.

17          THE COURT:  I mean, there's nothing that would

18  prevent this claim from reading on a device that had multiple

19  receivers, multiple transmitters, multiple storage units,

20  memories, as long as there were such components that were

21  configured in this matter; right?

22          MR. NEWTON:  If I knew what those were.

23          THE COURT:  I mean, you're complaining to me that

24  they may be able to point to different components that perform

25  that function.

1       MR. NEWTON: What I'm complaining about is they are

2   trying to claim every possible way to do it by putting

3   functional limitations in, you know, configure to do and saying

4   that it receives and then tell me how they're configured and

5   then trying to claim every possible way to do it.

6       So whether you did that in software, new hardware,

7   whether you ran the software in a microprocessor or on a

8   network access card, you don't know exactly where the lines are

9   drawn, and they're trying to get every possible way, and I

10  think that's functional claiming rather than structural

11  claiming.

12      THE COURT: All right. I understand the argument.

13  Thank you.

14      MR. NEWTON: Thank you.

15      THE COURT: Are there any other arguments that the

16  parties have to present at this time?

17      MR. CORDELL: I think that's it, Your Honor. Thank

18  you.

19      THE COURT: All right. Ms. Vreeland?

20      MS. VREELAND: No others. Thank you, Your Honor.

21      THE COURT: All right. Thank you for the arguments.

22  They have been helpful, and I will endeavor to get a ruling out

23  as soon as possible, so thank you and we're recessed.

24      COURT SECURITY OFFICER: All rise.

25

1    (Hearing concluded.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2              I HEREBY CERTIFY that the foregoing is a true and

3    correct transcript from the stenographic notes of the

4    proceedings in the above-entitled matter to the best of my

5    ability.

6

7    _____        Date: 3/6/17
     Tammy L. Goolsby, CSR
8    Deputy Official Court Reporter
     State of Texas No.:  3101
9    Expiration Date:  12/31/18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**1**

**11**  19:20 22:10 25:2,21,24
27:6,15,17 28:21,22 34:5
39:11 40:7

**112(6)**  31:20 32:18 33:7 34:2,
8,11 35:8 36:15 38:17 41:12
42:24

**12**  34:5

**1359**  5:24

**1363**  6:9

**1364**  6:10

**14**  8:16,19 24:17 26:5

**17**  22:25

**1946**  31:23 32:1

**1952**  31:25 32:5,17

**2**

**28**  19:13

**2:16-52**  3:6

**3**

**339**  21:7 22:2 28:14

**35**  38:22 39:19

**36**  19:21 22:9,10 40:19

**365**  4:23 5:3,7 6:22 7:1,19,21
8:9,23 9:3,9,12,18 10:8,11
11:9,16 12:4,8 18:11 19:1,8,9
20:4 21:8

**37**  41:18

**38**  23:2

**39**  23:11

**3G**  26:18

**3GPP**  41:1,5

**4**

**41**  28:19

**46**  31:4

**5**

**53**  36:23

**54**  43:14

**55**  41:16

**6**

**615**  5:5

**617**  4:23 5:4 6:19 7:1,20 8:10,
24 9:2,4,12,16,18 10:7,12
11:12 12:10 15:6 16:14 18:7,
25 19:6 21:8

**8**

**811**  5:24

**A**

**ability**  44:9,10

**absence**  9:24 41:3

**absolutely**  38:17

**abstract**  24:11

**abstraction**  40:10 41:7 43:5

**accelerate**  42:22

**access**  23:16 26:17 37:13,14,
19,20 42:4,9,20 44:15 45:4,8
48:8

**account**  12:2

**acknowledge**  8:24

**acquiring**  15:4

**Act**  31:25

**adapto**  39:1

**add**  30:25 44:2

**added**  10:22 19:17 39:9 44:1,
16

**adding**  45:11

**address**  5:14 6:21,24 8:23
11:15 13:4,6,12,25 14:12
15:7,13 16:1,17 17:4,18 18:18
19:15 20:2,19,20

**addressed**  21:8 39:15

**addresses**  8:23

**advantage**  33:5 34:2 39:9

**advantages**  38:18

**afternoon**  3:3,8,22,24 4:20,
21

**agree**  4:23 6:19 9:8,20 30:19
35:23 38:11

**agreed**  9:19

**agreement**  9:24,25 22:4
35:16

**agrees**  21:9

**ahead**  28:8 30:22

**Alex**  3:11

**allowed**  30:24

**alter**  4:12

**alternative**  25:15

**alternatives**  41:21

**amend**  30:25 41:22,23

**amplified**  36:12

**amplifier**  35:25 36:2

**amplifiers**  35:25

**analog**  46:15

**analogy**  27:15

**analysis**  34:8 35:4 36:9
38:13 46:22

**anchor**  23:18 26:21 27:11

**apparatus**  45:14

**apparent**  29:13

**apparently**  22:4

**appearances**  3:7

**appeared**  6:2

**appears**  5:11 10:21 16:24
19:12

**applicants**  16:4

**applied**  10:8 18:9

**apply**  9:17 18:22 27:16

**approach**  21:25 36:16

HUAWEI TECHNOLOGIES CO. LTD. vs T-MOBILE USA, INC., ET AL
MARKMAN HEARING,   on 03/02/2016                    52Index: approximately..claims

approximately 19:13

apt 38:20

arguably 25:7 30:17

argument 7:22 29:18 43:4
   48:12

arguments 4:10,13,15 48:15,
   21

art 17:17 33:10,13,19,24
   36:19 42:17 46:8

aspect 16:8 30:8 43:12 44:19

assigned 7:13,25 8:4 13:18

assigns 7:16 8:2 20:16

astray 4:11

attempt 10:23

attempting 11:15

attention 4:10

authority 18:1

avoid 47:11

AVP 19:17,19,22,25

aware 31:6

---

**B**

---

back 5:19 9:24 31:2 34:7 37:7
   41:16

background 6:25

backs 8:1

backup 7:14,17,20,23 10:19
   19:11,17,18,19,22,24,25

Barkan 3:9 4:20,21,22 5:7
   6:15,17 19:3,5

barnacles 32:22,25

based 4:13 17:17

basically 32:2,14 33:20,21

basis 4:16 11:19 12:20

begin 38:15

beginning 9:24 39:16

begins 19:20 31:23

behalf 3:23

believed 8:25

Ben 3:11

benefit 5:21

biggest 8:8

bit 10:10 30:24 31:18,22 34:7
   45:19

Blake 3:8

blank 39:21

boat 32:23,25

Boone 3:23

bothering 45:8

bottom 21:9 32:23,25

box 20:17

briefing 8:25 9:15 18:24

briefly 6:21,23 13:13 19:3
   28:11 30:13 41:15 46:25

briefs 4:9 7:1 31:12

bring 31:2

broad 11:11 16:15 17:15
   46:7,9

broaden 10:23

broader 10:22 12:11 30:15

broadly 12:24

brush 33:2

buffer 40:13

bunch 41:21

business 32:6

---

**C**

---

Cabela's 38:21

call 7:6 41:1 45:15,16,18

called 8:9,10 13:17,19,22
   14:25 15:2,23 17:2

calling 13:17,19 14:1,2,13
   15:11 20:24

calls 7:13

capable 11:18

captured 21:14

captures 28:25

card 37:13,15,20 42:4,5,9,20
   44:15 45:8,9 48:8

cards 45:5

carve 32:17

case 3:5 5:22,25 6:1,5,6,8
   17:20,22 18:2 24:4 31:24 33:7
   38:1,21,23,25 39:3,13,14
   41:22 45:6,19

cases 6:1,10 38:19 41:5
   45:20

caught 29:9

cell 34:21 43:18

central 42:6

certificate 23:4 29:7,16

chance 31:11

changed 10:14

chemical 33:2

chips 46:17

chose 12:11 17:15

Chrimar 42:14

CIP 5:14 11:14 12:6 13:3,5,11,
   24 14:11 15:6,13,25 16:16
   17:3,18 18:18 19:14 20:1,19

circuit 5:22 6:2,7 10:4 18:2
   33:8

cited 17:21 24:11

claim 3:4 7:11,21,23 10:3,5,
   22 14:7,20,21,22 16:7,9,15,
   16,18,19,20 17:15 18:3,7,11,
   25 21:10 22:10,14 24:23,25
   25:2,21,24 26:2,3,5 27:6,15,
   16 28:3,21,22 29:1,20,21
   30:6,8,12,15 31:15 32:2,12,
   16,18,24 34:1,4,11 36:12,18
   38:6 39:20 40:7 41:24 42:1
   43:1,13 45:13,14,22 46:2,6,7,
   9 47:6,18 48:2,5

claimed 9:9 14:19 43:8 44:19

claiming 16:12 32:4,9 35:8
   48:10,11

claims 5:8,9,11 7:9,22 9:4,6
   11:16 12:7,9,10,13 14:9 16:4,
   19,20 23:14 24:16,17 25:2
   26:11 28:14,17 31:20 32:2
   34:2,5 38:16 39:11 43:9 45:13

HUAWEI TECHNOLOGIES CO. LTD. vs T-MOBILE USA, INC., ET AL
MARKMAN HEARING,  on 03/02/2016                           53Index: clear..defined

**clear**  6:3,7 18:3 29:14 41:25

**closely**  32:7 33:9

**collects**  6:10

**Columbia**  5:24 6:6

**column**  19:13,20

**combination**  43:21 46:2

**comment**  19:9

**comments**  20:6

**communication**  43:15

**complaining**  47:23 48:1

**complaint**  29:9 46:6

**complicated**  14:4

**component**  7:3,7 8:2 38:25
  39:1,2

**components**  7:4 39:24
  46:21 47:20,24

**comprises**  37:1 43:15

**concept**  6:23 9:4,9 13:1
  15:18 43:8

**conclude**  6:13

**configure**  23:24 25:13 27:7,
  13,20 46:14 48:3

**configured**  27:10 44:4,6,21
  46:3 47:21 48:4

**confirm**  20:4

**confirmed**  18:2

**confirms**  46:22

**confused**  41:3

**Congress**  32:5

**connection**  17:7

**consistent**  18:23

**construction**  3:4 4:25 5:3
  6:22 9:12,16,17,19,21 10:1,7
  11:8 18:7,8,22 21:16 22:4,17,
  19 28:2,16 29:7 30:20 31:15,
  19 36:16 38:13,17 41:9,25
  42:1 46:7

**constructions**  4:4,6,13 6:19
  8:13 9:11 21:10,12,13,14,17
  22:22 25:17

**construe**  26:14 39:7

**construed**  9:1 38:25

**construing**  11:20

**contact**  5:14 11:15 12:6 13:3,
  5,11 14:11 15:13,25 16:16
  17:3,18 18:18 19:14 20:1,19

**contentions**  41:24,25

**contest**  18:7

**context**  23:14,25 27:12,17
  34:16 35:1,7 36:11 37:11
  45:18

**continuation**  9:3

**continue**  9:14

**contract**  13:25 15:7

**contribution**  17:13

**control**  7:6 23:23 24:4,5
  25:12,13,25 26:11,25 27:6
  44:24

**Cordell**  3:9 38:8,9,11 43:4
  45:24,25 46:2 47:3 48:17

**core**  7:4,7 13:1 15:18 25:25
  39:25 44:24

**correct**  5:3,4 11:24 22:4 23:6,
  9 34:14,17 35:10 41:10 46:23

**corrected**  27:2 29:3,9,15

**correcting**  29:1

**correction**  22:18 23:1,3,4,8
  24:25 25:18 28:20,24 29:7,16

**correctly**  5:2 28:13

**correspond**  26:23

**corresponded**  27:3

**corresponds**  25:10,14

**counsel**  3:7 4:3,17,18 19:10

**counts**  42:9,10,11

**couple**  38:18,21,23 45:6

**coupled**  38:25

**Court**  3:2,3,13,17,21,25 4:2,8,
  11,21 5:6,22 6:10,14,15 8:18,
  21 9:19 10:20 11:20 12:1
  13:15 14:19,23 15:15 16:10,
  22 17:8,10,22 18:3,5,20,22
  19:2,4,5 20:6,8,11 21:3,5,18,
  20,24 22:1,16,24 25:18,21,24
  26:2,7,12,19 27:14 28:1,6,9

29:3,17,24 30:9,11,19,22
31:7,16,24 32:1 34:10,15,18
35:5,11,13,20 36:10 37:22
38:7,8,10,12,13,24 41:14 43:3
44:3,18 45:23,25 46:24 47:2,
17,23 48:12,15,19,21,24

**Court's**  4:24 5:1,8,13,21
  6:19,21 18:7,8 20:5 21:10,13
  38:20 41:9 46:22

**cover**  14:22 33:22

**covered**  32:16

**CPU**  37:18 42:21 44:14 45:3,8

**create**  45:14

**critical**  8:6 10:15

**Cynthia**  3:15

---

**D**

**data**  5:10,11,12,19,20 6:23
  7:14,17,18,19,20,23 8:1,4,9,
  10,23,24 9:5,6,7,9,10,15,16
  10:13,16,17,19,21 11:1,11,12,
  14,17,18,21,23 12:11,15,17,
  24 13:11,20 14:16 15:4 16:12,
  15,20,21,22,24 17:3 18:8,12,
  14,16,23,25 19:1,7,11,17,18,
  19,22,24,25 20:4 28:23 29:23
  30:2,4 34:24 40:12 44:9

**David**  3:9,10

**deal**  42:14

**dealing**  10:20,24

**debate**  22:17,25 23:1 25:20

**decide**  24:21 25:19

**decision**  34:15 38:20 42:13

**decisions**  31:5 42:14

**declaration**  31:14,16 33:16
  39:15,18 40:4

**declarations**  37:7 38:2

**deem**  32:1

**Defendant's**  9:13 21:16
  28:19 29:18 40:5

**Defendants**  6:18 9:11 21:22
  22:14 28:15

**defined**  19:25 20:5

HUAWEI TECHNOLOGIES CO. LTD. vs T-MOBILE USA, INC., ET AL
MARKMAN HEARING,   on 03/02/2016                                  54Index: defines..fact

defines 19:14

definite 33:24 34:13 35:2,17 38:5

definition 6:4,12 19:16

definitional 15:19 16:23 19:12

demodulate 34:24

departing 11:19

dependent 10:22 12:10 16:16

describe 24:12

describing 15:20

description 15:17

design 32:14,22

designed 42:21 45:5

detailed 15:16

details 40:15

detecting 30:3

determination 23:20 24:12 26:22

determine 24:1

determined 27:24 30:2

device 5:15 14:12 15:7,11,14 16:17 17:19 20:2 23:16,18 26:9,14,15,17 43:15 47:18

devices 27:9 37:10 44:25

diagram 41:1

dicta 6:1

difference 10:18 19:6 25:6

differentiates 5:2

digital 46:15

direct 5:22 20:14

directed 9:3 29:21,22

directly 45:7

directs 10:4

disagree 9:21 21:1

disagreement 22:5

disavow 6:4,9

disclaimer 17:16,23,24,25

disclose 33:14

discussed 7:4 38:13 47:6

discussion 6:9 41:23

dispute 42:1,2,7 46:12

disputed 4:7

dissuade 4:6

distinction 21:15 28:13

distinguishable 17:22

distinguished 17:17

docket 3:6 31:5

downlink 28:23 29:23 30:2,4

drafted 25:24

Drager 3:20

draw 47:12

drawing 25:21 26:4

drawn 48:9

draws 28:13

E

E2e 38:21 39:3,14 42:12

earlier 29:4 41:18

easily 12:18 17:21

efficient 4:17

Elaine 3:20

element 7:25 8:3 30:7

elements 14:24 39:24 40:9 45:21,22 46:3

embodiment 5:15,19 15:1,3, 16 16:8 17:11,12,15

embodiments 10:17 11:5,7 12:13,20,21,22 13:7,10,14 14:7,10,23

enable 7:10

enacted 33:8

encourage 32:11

end 32:8 37:15 45:4 47:5

endeavor 48:22

entities 3:23 40:22

equivalence 33:4

Ericsson 3:23

error 22:8,11,13,15,21 23:9, 17,19,20 24:2,8,12,14,18,20, 21,25 25:5,10,14 26:3,13,20, 22 27:2,13,24 28:20,24 29:2, 12,14,15,18 30:6,7,19 44:23

errors 29:9,10,11

essence 33:22 38:2

essentially 7:24 20:20 40:3

et al 3:5

evidence 40:3

examine 28:4

examples 13:16,23 14:10,12, 16,17,19 15:21,24,25 16:2,4,5 17:5 18:17,19 20:3

excerpts 38:23

exchange 32:20

exist 36:24

existing 35:15

expert 15:9 31:14,16 38:1 40:5 41:18

experts 34:22

explain 13:13

explaining 20:18

explains 10:10 20:18

explicit 6:8

explicitly 20:4 40:24

expressed 6:4

expressly 19:25

extended 19:16

extent 13:4 41:11

F

F3rd 5:24

face 29:14 41:11

facial 29:2

fact 10:10,15,22 12:21 15:15 16:5 25:3 29:14 37:1 39:7 40:2,20 41:12 46:2,9,21

HUAWEI TECHNOLOGIES CO. LTD. vs T-MOBILE USA, INC., ET AL
MARKMAN HEARING,   on 03/02/2016                     55Index: factors..identified

**factors** 10:24

**failed** 18:15

**fails** 7:10,15 8:2 13:19,23 14:1 15:23 20:21,25

**failure** 7:2 17:1 20:16

**fair** 29:5

**fairly** 15:18

**fake** 22:5

**federal** 5:22 6:2,7 18:2 33:8

**feel** 4:7,17 30:24 31:7

**feeling** 30:25

**field** 15:9

**figure** 9:25 13:8,9,20 15:3,12, 22 16:6 17:1,5,7 19:10,18 20:14,15,17,18,23 21:2 24:11 26:17

**figures** 19:24 40:24

**file** 17:16

**filed** 23:4,5,7,8 29:8

**filing** 10:11 29:9

**find** 39:5 46:5

**fine** 45:25

**fix** 24:6 26:25

**fixing** 32:6

**flavor** 5:12

**flavors** 5:17

**flow** 19:21 41:1

**focus** 4:10 7:9,20,22 22:8,12 34:7 39:17

**focused** 18:11 27:6 29:25 30:1,3,5,6 39:16

**focuses** 7:2

**focusing** 24:16

**folks** 15:9

**follow** 22:9

**follow-on** 33:7

**forward** 28:16 46:8

**found** 39:3

**framework** 9:20

**frankly** 15:5 29:13

**front** 45:4

**full** 8:20

**function** 7:7 32:15 33:12,23 35:4 36:9 37:3 39:8,14 40:22 44:19 45:15,16,17 47:25

**functional** 32:4,9 35:6,8 36:18 38:6 48:3,10

**functionality** 7:8 32:13 34:5 38:4,5 41:19 42:5,18

**functionally** 32:12,19 45:22

**functions** 37:5 39:23,25 43:2,16,22,23 44:1,5,11 47:7

**fundamental** 46:6

**G**

**gateway** 23:18 26:21

**gave** 8:13 34:24

**general** 14:21

**get all** 33:2

**GGSN** 26:8,13,20 27:11 36:24,25 37:6,21 40:7 43:25 44:6,17

**gist** 28:25 30:1

**give** 32:23 47:2

**giveth** 31:1

**good** 3:3,8,22 4:20,21 9:22 32:9 33:9,11 42:12

**grammatical** 29:12

**group** 4:16

**guess** 11:1 28:7 36:20,25

**gut** 37:11

**H**

**Halliburton** 31:24 32:6,7

**hand** 8:15 21:23

**happen** 27:8,21

**happened** 32:6

**happening** 27:9,22

**happy** 4:16 20:11

**harbor** 32:17,21 33:3,6 34:2 42:25

**hardware** 33:20 37:19 38:3 41:20 42:11,22 44:15,16 45:11 46:18 48:6

**Haynes** 3:23

**headers** 37:14

**hear** 28:9

**heard** 38:9 46:10

**hearing** 3:5 4:14

**helpful** 6:9 48:22

**hey** 26:25 43:19 45:14

**high** 32:3 40:13

**Hill-rom** 18:2

**history** 17:16,23,25 31:22,23

**home** 7:14

**Honor** 3:8,12,14,18,22 4:20 6:17,18,25 8:8,13,15,16 9:13, 17,18 10:8,25 11:22 12:3,14, 21 14:9,21 16:3,13 17:9,14,21 18:10 19:3 20:9,13 21:5,9,18, 21,25 22:2,10 24:15 27:5,18 28:5,12,13 29:6,21 30:21,23 34:7 36:21 37:24 38:8 39:3 41:15 43:10 45:12,24 46:25 48:17,20

**Honor's** 11:2

**hope** 4:14

**Huawei** 3:5,10 8:22 11:6,15 14:8 17:10 21:6,9 22:19 23:2 33:5

**Huawei's** 8:15,19 21:1 28:14 31:16

**hundred** 38:12

**I**

**I's** 14:5

**idea** 7:11,24 12:17

**ideas** 41:8

**identical** 4:25

**identified** 5:13

**identify** 42:19

**immediately** 40:7,8

**implement** 39:23 41:19 42:18 46:11

**implemented** 33:17,20

**implements** 32:13 33:25 35:3 38:4

**implies** 34:11 35:6

**imply** 11:14

**import** 28:20

**important** 8:7,11 11:3,9 12:14 20:12 23:14 24:1,8

**importing** 28:17

**IMS** 7:3,12

**include** 13:11 18:18 20:5

**included** 22:11 30:8

**incorporate** 6:22

**indefinite** 22:15 31:21 34:3

**independent** 24:16,23 26:11 28:14

**indication** 23:17,19,20 24:2, 13,14,19 25:5,10,14 26:3,13, 20,22 27:3,24 28:20 29:19 30:7 44:23

**indispensable** 40:22

**indulge** 31:18

**information** 5:13,18 12:7 14:2,13 20:25 21:1 44:10,11

**infringement** 46:5

**infringing** 41:23

**initial** 4:9 7:25

**innovation** 32:11,14

**inputs** 39:21

**instances** 21:11,12

**instruct** 22:7 44:24

**integration** 39:2

**intent** 4:5

**intentionally** 12:12

**interacted** 39:6

**interaction** 41:10

**interactions** 39:10

**interesting** 31:10 33:23

**interpretation** 23:13 25:1

**interpretations** 25:7

**interpreting** 30:19

**interrogating** 7:6

**Intervenors** 6:19 21:22 22:14 28:15

**Intervenors'** 21:16

**introduced** 31:25 36:4

**introductory** 39:16

**invalid** 17:12 22:21 23:9 25:4, 9 27:23 28:24,25 29:22 30:2, 4,20 32:2

**invalidity** 41:24

**invention** 12:5,8 13:1,2,4 15:18 29:1,22,25 30:1,3 40:15

**inventive** 9:4 17:13 43:8,12 44:19

**inventors** 12:5

**involve** 43:11

**involving** 43:9

**issue** 11:1,4 21:8 23:1 28:1,4, 15 37:22 40:10 46:19

**issued** 18:23

**issues** 8:8 42:15

**items** 20:5

### J

**Jamie** 3:24

**Joe** 3:16

**joined** 3:10

**Jones** 3:14,17

**Judge** 31:1 32:5

**jurisprudence** 31:9

**jury** 11:18

### K

**Kathryn** 3:15

**key** 16:3

**kind** 6:12 31:17 32:8 42:22

**kinds** 41:8

**knew** 16:18 36:1 47:22

### L

**language** 5:9 10:3,5 15:5,19 16:23 17:15,23 18:3 19:8 24:9 25:21 26:4 27:7 28:21

**Lanning** 40:4,6

**larger** 11:24

**law** 6:8 33:7

**lent** 39:4

**lesson** 31:23

**letter** 23:7 29:10

**level** 32:3 41:7 43:4

**lie** 40:9

**lies** 38:16

**life** 36:2

**limit** 12:12 16:4

**limitation** 8:1 28:17 32:2

**limitations** 48:3

**limited** 33:3

**lines** 47:12 48:8

**Linmei** 3:11

**long** 23:8 47:20

**longer** 12:18 18:11

**looked** 27:23

**lot** 9:22 14:4,5,6 34:22 41:4 43:4 45:5,19 46:10

### M

**made** 6:7 34:16 40:24 43:4 45:21 46:16,17

**magic** 43:20

**make**  5:4 21:15 23:3,19 25:18
   27:16 30:17

**makes**  14:18 26:21

**manner**  44:3

**map**  40:7

**mapped**  27:16

**Mark**  3:16

**Markey**  32:5

**match**  19:23

**matter**  10:9 15:8 47:21

**Mcdole**  3:24

**meaning**  5:4,12 6:3 11:2,8,9,
   12,19 18:25 29:1

**means**  16:12 35:3 36:9 38:16
   39:8,13

**meat**  39:17

**mechanism**  32:23,24 33:11
   34:4

**memories**  47:20

**memory**  37:8 45:8,9

**mentioned**  17:7

**message**  19:17 23:23,24
   24:4 25:12,13 26:24 27:13

**messages**  5:18

**met**  16:18

**method**  45:13

**methods**  7:9

**Michael**  3:18 21:21

**microprocessor**  45:2 48:7

**middle**  20:17 43:20

**Mike**  3:14

**millions**  46:13

**mind**  36:8

**mine**  30:17

**minute**  31:18

**minutes**  10:7

**missing**  29:10,11

**mix**  26:10 38:3

**mobile**  15:11

**modulation**  34:23

**months**  45:6

**move**  36:22

**moved**  41:22,23

**moving**  30:23

**Mueller**  3:16

**multiple**  47:18,19

---

**N**

**narrative**  19:19

**narrow**  6:7 30:16,17

**narrowly**  6:11

**nature**  29:11,12

**Navigator**  31:5

**negate**  17:13

**Nettleton**  33:16 37:25 39:20
   40:20 41:6

**Nettleton's**  39:15

**network**  23:16 25:25 26:17,
   18 37:12,14,19,20 39:25 40:3,
   9,17,18 42:3,4,9,20 44:15,24
   45:4,7 48:8

**Networks**  3:19 17:21

**newly**  8:3

**Newton**  3:18,21 21:21,25
   22:2,25 25:23 26:1,5,9,16,20
   27:18 28:5,7 30:11,13,21,23
   31:8 34:13,17,19 35:9,12,15,
   23 36:19 37:23 38:7,14,19
   39:15 41:15 43:10 44:5,21
   46:1,25 47:2,3,22 48:1,14

**Newton's**  46:6

**Nokia**  3:18,19

**note**  4:2 23:2

**noted**  19:5

**notification**  22:3 27:8,11,20

**notifying**  22:6

**notion**  6:7 18:13,15

**number**  38:19

**numerous**  19:11

---

**O**

**obstruct**  32:14

**occurs**  20:16

**office**  25:19

**OFFICER**  3:2 48:24

**opening**  8:16,19

**opportunity**  23:2,10

**opposed**  26:8

**opposite**  13:25

**options**  6:11

**order**  4:16 15:14

**ordinary**  5:3 33:19 43:6
   46:20

**originally**  4:25

**outfits**  39:22

**overcome**  36:15

---

**P**

**P's**  14:5

**P-CSCF**  5:14 20:1

**packet**  39:24 40:3

**packets**  37:13

**paint**  33:1

**Panoptis**  42:13

**paragraph**  8:20 19:20 41:17,
   18

**paragraphs**  39:16,17

**Parallel**  17:21

**part**  15:16,17 19:19 43:7 46:4

**parties**  4:3,8 8:25 9:8,14,19,
   23 13:18 15:23 48:16

**parties'**  14:2 17:2 18:24

**party**  4:6 13:17,19,22 14:1,13
   15:11

**party's**  20:25

**passed**  5:18

**patent** 4:23 5:5,7,16 6:20,22 7:4,13,19,20,21 8:9,10,23,24 9:2,3,4,9,18 10:8,11,12,16,19 11:9,13 12:4,9 13:10,16 15:24,25 16:5,6,14,15 17:5,11 18:11,25 19:1 21:7 22:3 25:18 28:14 29:14 32:10,11 33:4,17 36:23 39:7 40:11,16,17 43:8

**patentee** 29:4,8

**patents** 5:1,2 7:1,9,18 11:7,8 18:9,15,23 21:9

**path** 28:23

**PDP** 45:17

**people** 35:17,20 36:5,19 37:5 41:7

**percent** 38:12

**perform** 33:12 43:17,22 47:24

**performing** 39:25

**performs** 33:23 38:5

**person** 33:9,13,19,24 34:20

**perspective** 9:13 25:24 26:8, 13 31:3

**persuade** 10:7

**Philbin** 3:22,23,25 4:1

**Phillip** 3:22

**Phillips** 10:4

**phone** 7:12 34:21 43:19 47:15,16

**phrase** 11:24 19:24 22:10,11, 12,16 23:9 24:7,17,18 27:19

**pictures** 7:24

**place** 27:21

**plain** 11:2,7,9,12,19

**plainly** 22:15

**Plaintiff** 4:19 6:14

**Plaintiff's** 28:9

**plane** 22:12,20 23:23,24 24:5, 7,13,18,21 25:3,5,12,13,25 26:11,25 27:6 28:23 44:24

**plausible** 28:2,16

**podium** 21:19

**point** 6:15 8:6,7,11,14,16 9:23 11:3,9 12:14,23 16:13 18:10 37:8 39:21 41:5 45:2 47:24

**pointed** 33:15

**POSITA** 33:19 39:21 41:2

**position** 4:7 21:2

**positions** 18:24

**possibly** 32:13

**Powerpoint** 21:23

**practical** 10:9

**precisely** 21:13

**prefix** 39:4

**prefixes** 39:1

**preliminarily** 38:12

**preliminary** 4:4,5 21:10

**present** 14:24 15:18 22:22 31:3 48:16

**presentation** 22:9 31:4 41:16

**presented** 4:15

**preserve** 18:4

**preserves** 29:1

**presumption** 36:14 38:16

**pretty** 10:4 12:16 36:1

**prevent** 35:22 47:18

**primary** 17:10 19:12

**prior** 17:17 46:8

**pro** 32:20

**problematic** 43:6

**problems** 23:17

**proceed** 3:11 24:15 30:11

**process** 30:5

**processing** 11:23 12:16 18:12 37:17 38:21 42:6,10,22 45:3 47:6,8,10

**processor** 37:19 45:10

**proper** 22:17 24:25

**proposal** 25:15 28:2

**proposed** 4:25 9:11 11:6 21:12,13,14,15,16 22:19 28:19

**proposition** 38:15

**prosecution** 17:23,25

**prove** 46:4

**proves** 41:11

**provide** 36:16

**provided** 4:3

**providing** 4:5 7:7

**proxy** 7:6

**put** 15:17 22:10 28:16,17 33:4 41:17 43:14

**putting** 40:13 48:2

---

**Q**

**question** 11:2 22:16 24:13 27:21 29:6 34:10 35:1 36:9,25 44:1 45:1

**questions** 6:14 20:7 21:19 34:6

**quickly** 27:2

**quid** 32:20

**quo** 32:20

**quote** 6:1

**quoting** 41:17

---

**R**

**raise** 8:8

**raised** 19:10

**ran** 48:7

**re-configured** 44:25

**re-definition** 6:8

**read** 6:5,11 7:1 11:5,7,15 12:7,22 14:9,15 16:9 17:11, 14,22,23 31:5 32:7

**readily** 29:13 39:23

**reading** 12:20 17:12 28:2 45:9 47:18

HUAWEI TECHNOLOGIES CO. LTD. vs T-MOBILE USA, INC., ET AL
MARKMAN HEARING,  on 03/02/2016                    59Index: ready..sending

**ready** 3:11 21:4

**real** 10:9

**realize** 32:8

**realizes** 23:17

**realm** 38:6

**reason** 10:13 14:17 17:10,14, 20 18:21 25:12,13 27:3 31:11

**reasonable** 22:17,22 23:1,13 25:1,16,17,20 28:20 30:16,20

**reasoning** 32:8

**reasons** 32:10

**rebuttal** 29:17

**recall** 38:24

**receive** 23:24 25:13 27:7,10, 13,20 44:10,23

**received** 4:13 24:5 33:15

**receiver** 34:20,21,23 35:24 43:19 46:13,14 47:15

**receivers** 46:15,16 47:19

**receives** 23:18 37:13 48:4

**receiving** 33:18 34:4 35:2 36:7,10,11,24 37:1,12,18 39:10 40:1,11 42:3,19 43:7,15 44:7,18 45:15 47:3,8

**recessed** 48:23

**recitation** 38:4

**recited** 33:12 34:5

**recognizes** 40:20

**recognizing** 24:20

**reconfigured** 45:2

**record** 3:4,7 4:2,9 46:21

**recover** 30:1

**recovering** 7:2

**recovery** 7:10 30:5

**refer** 7:23 9:5,9 12:24 14:8,11 16:19,20 33:12

**reference** 13:3,9 15:6,16 19:18 28:18 29:18

**references** 19:11

**referred** 12:25 13:2,6,8 14:24

**referring** 8:12 28:22 30:20

**refers** 7:5 15:3 19:22

**reflected** 5:8 7:10

**reflects** 8:7

**regard** 22:2,3

**registers** 7:11,12

**registration** 19:21

**regularly** 31:5

**relates** 27:9

**relevant** 10:19 18:1

**remaining** 39:6

**remarks** 5:5 6:13

**removing** 32:22,25

**replace** 25:4

**reply** 31:16 33:15 34:9

**representative** 3:19

**representatives** 3:10

**represented** 9:14

**request** 22:7

**require** 6:8

**required** 5:10 11:23 12:1,15 14:2 18:12

**requiring** 6:11

**reserve** 4:12 16:1

**reside** 37:21

**respect** 4:23 5:7 19:9

**respond** 19:3 20:9 28:11 30:13

**response** 20:11,13 28:10 31:17 45:24

**responsive** 31:15

**restoration** 7:19 8:10,24 9:6, 8,15 10:13,16,21 11:12,18 16:15,19,24 18:8,14,23,24 19:6

**restorations** 9:5

**restore** 7:17 8:4 12:17,25 13:24 15:14 16:7 17:3,6 18:16 20:23

**restored** 11:24 12:16 18:13

**restoring** 9:7 15:4 18:14

**retrieve** 7:17

**review** 4:9

**rewrite** 18:3 25:1

**Richard** 3:9 21:6

**rightly** 18:11

**rigid** 6:5

**rise** 3:2 48:24

**RNC** 26:18

**Roe** 3:11

**Ruffin** 3:9 38:9

**rule** 6:2

**ruling** 48:22

---

**S**

**S's** 14:5

**safe** 32:17,21 33:3,6 34:2 42:25

**sampling** 40:13

**SAR** 19:17

**save** 7:13

**scenario** 43:18

**scope** 30:14,15

**scraper** 32:23 33:1

**screen** 15:17

**seated** 3:3

**section** 19:14

**SECURITY** 3:2 48:24

**seeking** 28:16

**selectro** 39:1

**Selwyn** 3:16

**send** 23:23 24:4 25:12 26:24 27:4 44:11

**sending** 33:18 34:4 35:2 36:24 37:4,6,14 39:10 40:1,14 42:4 43:7,16 44:7,18 45:16 47:4,9

HUAWEI TECHNOLOGIES CO. LTD. vs T-MOBILE USA, INC., ET AL
MARKMAN HEARING,  on 03/02/2016                                        60Index: sends..telling

**sends** 23:17 26:20

**sense** 14:18 27:16 42:23 47:4,14

**senses** 45:5

**server** 37:11

**service** 7:14,17 8:5 11:23 12:16,18,25 13:24 15:14 16:1, 7 17:6 18:15,16

**serving** 7:6

**session** 7:6

**set** 4:3 6:2 11:1 15:24 28:7 36:12 38:22

**SGSN** 25:25 26:8,11 40:8

**share** 7:1 10:2

**shorthand** 7:5 19:24

**show** 33:1

**showing** 6:10 40:24

**shown** 40:25

**shows** 36:17

**side** 37:9 42:5

**significance** 5:25 13:13 39:4

**significant** 5:23

**similar** 15:5 24:17 38:2

**simple** 12:16 28:24

**simply** 20:3 27:22 33:11 37:4

**sir** 22:1 38:10

**sit** 20:10

**situation** 13:20,25 14:22 15:11 16:7 20:23,24 27:1 29:22 31:10

**skill** 33:19 46:20

**skilled** 33:9,13,24 36:19 42:17

**slide** 20:15 22:9,10,25 23:2, 11 24:16 28:19 31:4 36:23 38:22 39:19 40:19 41:16 43:11,14

**slides** 8:14 21:23

**so-called** 30:23

**software** 33:21 37:19,20 38:3 41:20 42:10 44:14 45:10

46:18 48:6,7

**solely** 26:9,11

**Solution** 3:19

**somebody's** 36:8

**sort** 20:17 41:5

**spec** 24:10

**specific** 5:9,13 6:3,12 11:4 12:6 13:5 33:14 42:18,25

**specifically** 9:2 14:8 19:14 42:21

**specification** 7:2 10:3 12:24 16:23 17:16 19:7,20 20:1 23:12 34:16 35:7,21 36:13,17 39:5,12

**speed** 40:13

**spirit** 4:14

**standard** 41:1,5

**standards** 10:12 41:4

**start** 10:4 12:23 36:5

**started** 10:12 33:8 36:2 41:22

**starting** 8:6,7,11,14 11:3 19:13 41:25

**state** 3:7 28:22 30:6

**statement** 19:12

**step** 34:19 35:3 38:16

**Sterba** 3:9 21:5,6,20 28:11 29:5,20,25 30:9,10

**storage** 33:18 34:4 36:24 37:6,8 39:10 40:2 43:16 44:8 45:17,18 47:9,19

**store** 44:9

**stored** 17:18

**storing** 43:7 44:19 45:17

**straightforward** 7:11 23:3,4, 6

**stream** 34:25

**strike** 36:8

**strips** 37:13

**structural** 33:4 35:5 36:18 39:4,8 41:11,12 46:20 48:10

**structure** 32:13,21 33:10,11, 14,22,25 34:12,13 35:3,7,10, 13,14,15,17,18,22 36:8,20 37:2 38:3,5 42:17 43:1

**structures** 33:3,12,17 39:7 40:2 41:19 43:25 47:14

**struggling** 36:25 37:18

**subject** 23:1 25:19

**subscriber** 7:14

**subsequently** 7:15

**suffice** 14:6

**sufficiently** 34:13

**suit** 23:5,8

**summary** 13:2,4

**supervision** 41:2

**supported** 36:17

**supposedly** 44:22

**Supreme** 31:24

**surprising** 40:16

**system** 7:3,15 27:20 32:10

**systems** 7:12 41:8

---

**T**

**T-MOBILE** 3:5,14

**takes** 34:23

**taketh** 31:1

**taking** 4:6 40:12

**talk** 20:19 31:18 41:4

**talked** 18:12

**talking** 10:12,17 16:10 20:20 26:22 30:14 34:21 40:11,12, 16

**talks** 19:21 40:17

**teach** 35:23

**technical** 14:6

**technology** 14:4 15:10 22:13,20 23:21,22 24:3,8,14, 19,22 25:4,6,11,14 26:23 27:12,25 46:12

**telling** 41:6

HUAWEI TECHNOLOGIES CO. LTD. vs T-MOBILE USA, INC., ET AL
MARKMAN HEARING,   on 03/02/2016                              61Index: tentative..year

**tentative**  4:24 5:2,8,14 20:5
21:10 31:1,19 33:5

**term**  6:12 8:9 10:16,22,23
11:10,20 12:11,18 16:22
18:12 19:6 20:10,12 21:4
22:8,14 27:15 30:12 34:11
35:5,6 38:24 46:13

**term-by-term**  4:16

**terminology**  10:14

**terms**  4:7,16,17,22 6:3,22
7:18,19 8:25 9:6,9,15,16 10:1
14:6 21:8 22:3 28:7,8 30:24
31:9,20 34:3 36:3 38:9,17
39:4,6,20 40:17,18 43:5,11

**text**  20:18

**thing**  10:20 16:3 17:2 27:7,8
37:2,5,23 44:23,24

**things**  8:12 13:23 14:3,8
15:24 20:21 23:6 26:10,25
27:8,21 31:2 32:19 33:20
41:21 43:6 44:22

**thinking**  35:25

**thinks**  46:7

**Thompson**  3:8,9,13

**Thorner**  6:1,4,10

**thought**  12:5,8

**time**  5:11 20:21 45:3 47:1
48:16

**times**  46:10

**today**  46:12

**told**  33:16

**transmitter**  34:21 43:20
47:16

**transmitters**  47:19

**treatment**  39:14 41:12

**treats**  40:18

**true**  16:25

**Trustees**  5:23

**tubes**  46:16

**tunnel**  22:12,20 23:20,21,22
24:3,6,8,14,19,22 25:4,6,11,
14 26:23 27:1,3,11,12,23,25
29:23 30:2,4

**tunnel's**  25:9

**turn**  4:18 11:1 21:7

**turned**  23:7

**turning**  22:25 23:11

**turns**  42:5

**tutelage**  41:2

**type**  24:9

**typically**  40:25

**typographical**  29:11,15

---

### U

**U.S.**  31:24 32:5

**UE**  20:19

**Uh-huh**  25:23 26:19 29:24
34:15

**unaware**  41:2

**uncommonly**  4:12

**understand**  9:23 10:2 15:9,
10 23:12,14 24:8 28:1,3,4
31:8 36:5,21 37:22 46:20
48:12

**understood**  11:18 12:19
28:5 39:24

**undisputed**  38:17 40:4

**unit**  28:8 30:24 31:9 33:18
34:4 35:2 36:7,11 37:1,4,6,7,
8,12,14,17,18 38:9 40:1,2,11
42:3,4,6,10,14,19 43:15,16
44:7,8 45:15,16,18,20 47:3,4,
6,8,9,10

**units**  36:24 39:11,22,23 41:10
43:2,21 44:21 47:19

**University**  5:24 6:6

**unnecessary**  40:25

**unreasonable**  30:18

**urge**  9:17 11:6

**urged**  11:7

**URL**  5:14 11:14 12:6 13:3,5,
11,24 14:11 15:6,13,25 16:16
17:3,18 18:18 19:14 20:1,19

**user**  5:15 7:11,13,16 8:1 9:5
11:23 12:6,15 13:12,25 14:12

15:7,14 16:17 17:18 18:18
19:17,19,22,25 20:2 22:12,20
24:7,13,18,21 25:3,5 28:23

---

### V

**validity**  18:4

**vein**  5:21

**versus**  3:5 31:24

**view**  5:1 25:16 31:9 35:16

**Vreeland**  3:15 6:18 8:19,22
10:6,25 11:22 12:3 13:16
14:21 15:2,20 16:13,25 17:9
18:6,21 19:2 20:9,13 21:3
48:19,20

---

### W

**Wade**  3:11

**wait**  46:10

**Walk**  29:17

**Walker**  31:24

**wanted**  8:8,15 11:1

**waste**  45:3

**ways**  46:11,14

**weakness**  27:14

**well-known**  39:24 40:2 46:13
47:4

**whichever**  44:22

**Williamson**  38:1

**willie-nillie**  47:12

**word**  5:10 7:22 10:12 11:2,13
22:6 23:7 28:24,25 29:11 47:2

**words**  10:10

**work**  23:15

**world**  10:9

**write**  31:12

**writing**  45:7

---

### Y

**year**  5:23 6:6 23:5 29:8

**years** 38:21

**yield** 21:19

---
## Z
---

**Zalewski** 3:15