# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHAL DIVISION

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO. LTD.,** | |
| **Plaintiff,** | |
| **v.** | |
| **T-MOBILE US, INC. and T-MOBILE USA, INC.,** | **No. 2:16−cv−00052−JRG−RSP** |
| **Defendants,** | **JURY TRIAL DEMANDED** |
| **NOKIA SOLUTIONS AND NETWORKS US LLC, NOKIA SOLUTIONS AND NETWORKS OY, TELEFONAKTIEBOLAGET LM ERICSSON, and ERICSSON INC.,** | |
| **Intervenors.** | |

### T-MOBILE AND INTERVENORS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INFRINGEMENT OF U.S. PATENT NO. 8,867,339 UNDER THE DOCTRINE OF EQUIVALENTS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ......................................................................................................... 1

II.  STATEMENT OF THE ISSUE TO BE DECIDED........................................................ 2

III. STATEMENT OF MATERIAL UNDISPUTED FACTS ............................................... 2

    A.   Overview of the '339 Patent ................................................................................ 2

    B.   "Update PDP Context Requests" and "RAB Assignments Requests" ................ 3

    C.   Overview of the '339 Prosecution History ........................................................... 4

    D.   Huawei's Infringement Theory Under the Doctrine of Equivalents..................... 7

    E.   The Alleged Equivalents Were Standardized Years Before Huawei
       Amended its Claims ............................................................................................ 8

IV.  LEGAL STANDARD.................................................................................................... 9

V.   PROSECUTION HISTORY ESTOPPEL BARS HUAWEI'S ASSERTION OF THE
    DOCTRINE OF EQUIVALENTS ............................................................................... 10

    A.   Prosecution History Estoppel Presumptively Applies ....................................... 10

        1.   The Amendments Narrowed the Scope of the Claims............................. 11

        2.   The Amendments Related to Patentability ............................................. 11

    B.   Huawei Cannot Rebut the Presumption that Estoppel Applies ......................... 12

        1.   The Alleged Equivalents Were Not Unforeseeable ................................ 12

        2.   The Amendments Are Directly Related to the Alleged Equivalents ....... 14

        3.   It Is Reasonable To Expect Huawei to Have Described the Alleged
             Equivalents............................................................................................. 14

VI.  CONCLUSION............................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AI Automation, LLC v. Samsung Electronics Co. Ltd.*,
  2015 WL 12669879 (E.D. Tex. Dec. 7, 2015) ............................................................. 10, 11

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  457 F.3d 1293 (Fed. Cir. 2006) .................................................................. 10, 12, 15

*Business Objects, S.A. v. Microstrategy, Inc.*,
  393 F.3d 1366 (Fed. Cir. 2005) ....................................................................... 14

*EMD Millipore Corp. v. AllPure Techs., Inc.*,
  768 F.3d 1196 (Fed. Cir. 2014) ......................................................................... 9

*EMG Technology, LLC v. Vanguard Group, Inc.*,
  2014 WL 12597428 (E.D. Tex. Jun. 24, 2014) ..................................................... 13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo IX)*,
  344 F.3d 1359 (Fed. Cir. 2003) .............................................................. 10, 12, 14, 15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  493 F.3d 1368 (Fed. Cir. 2007) ....................................................................... 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  535 U.S. 722 (2002) ............................................................................... passim

*GeoTag, Inc. v. Frontier Commcns Corp.*, No. 2:10-CV-00265-JRG,
  2014 WL 282731 (E.D. Tex. Jan. 24, 2014) ......................................................... 10

*Iris Connex, LLC v. Acer America Corp.*,
  2016 WL 4596043 (E.D. Tex. Sept. 2, 2016) ................................................... 10, 14

*Pioneer Magnetics, Inc. v. Micro Linear Corp.*,
  330 F.3d 1352 (Fed. Cir. 2003) .............................................................. 9, 11, 13

*Rhodia Chimie v. PPG Indus. Inc.*,
  402 F.3d 1371 (Fed. Cir. 2005) ....................................................................... 14

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
  347 F.3d 1355 (Fed. Cir. 2003) ....................................................................... 13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ....................................................................................... 9

**TABLE OF EXHIBITS**

**Exhibit 1 –** U.S. Patent No. 8,867,339 ("the '339 patent")

**Exhibit 2 –** Excerpts from the File History of the '339 patent

**Exhibit 3 –** 3GPP TS 25.413 V.3.0.0 (2000-01) (produced at T-Mobile_01055925)

**Exhibit 4 –** 3GPP TS 29.060 V.3.0.0 (1999-05) (produced at T-Mobile_01056074)

**Exhibit 5 –** Excerpts from the Initial Expert Report and Declaration of Ray Nettleton, Ph.D. (June 5, 2017)

**Exhibit 6 –** 3GPP TS 36.413 V.1.0.0 (2007-09) (produced at T-Mobile_01056682)

**Exhibit 7 –** 3GPP TS 29.274 V.1.0.0 (2008-05) (produced at T-Mobile_00181897)

**Exhibit 8 –** 3GPP TS 23.401 V.1.0.0 (2007-05) (produced at T-Mobile_00177737)

**Exhibit 9 –** Excerpts from the deposition transcript of Dr. Ray Nettleton (July 15, 2017)

**Exhibit 10 –** Excerpts from the Expert Report of Thomas D. Vander Veen, Ph.D. (June 5, 2017)

## I.      INTRODUCTION

T-Mobile moves for partial summary judgment of non-infringement with respect to Huawei's claim that T-Mobile's 4G LTE network infringes the '339 patent under the doctrine of equivalents.  The claim limitations at issue were added during prosecution as narrowing amendments to overcome the PTO's prior art obviousness rejection.  As a result, prosecution history estoppel, which precludes a patentee from relying on the doctrine of equivalents to recapture claim scope surrendered during prosecution, forecloses Huawei's infringement theory. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 739 (2002).

All independent claims of the '339 patent recite limitations requiring the sending or receiving of specific messages—"update PDP context requests" or "RAB assignment requests" —that are described in 3G cellular telecommunications standards.  Huawei contends that other, different messages, used in 4G LTE telecommunications standards, are equivalent.  However, because the relevant claim limitations specifying the 3G "update PDP context requests" and "RAB assignment requests" were added through narrowing amendments to overcome the PTO's obviousness rejection, a presumption of prosecution history estoppel applies.

Huawei can rebut this presumption only if it can show that "at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Id.* at 741.  Huawei cannot make such a showing here because, as Huawei's own technical expert admitted during his deposition, the LTE messages that Huawei seeks to capture via equivalence were published in 4G LTE standards *years* before Huawei amended its claims during prosecution, and were well known to persons of skill in the art.  Therefore, Huawei is barred from attempting to recapture those alleged equivalents now.

## II.      STATEMENT OF THE ISSUE TO BE DECIDED

Whether prosecution history estoppel bars Huawei from asserting infringement of the

'339 patent under the doctrine of equivalents.

## III.     STATEMENT OF MATERIAL UNDISPUTED FACTS

### A.      Overview of the '339 Patent

Huawei filed its complaint on January 15, 2016, alleging that T-Mobile infringes four

patents relating to cellular communications technology, including U.S. Patent No. 8,867,339

("the '339 patent").  *See* Complaint ¶ 65.  Huawei currently asserts infringement of claims 1, 3-5,

7-9, 11-14, and 16 of the '339 patent.  *See* Dkt. 237 (Election of Claims).  Of these, claim 1, 3, 9,

11, and 14 are independent claims.

The '339 patent relates to error recovery in a prior art cellular architecture known as

"One Tunnel" or "Direct Tunnel."  *See* '339 Pat. at 1:27-37.  According to the '339 specification,

the 3GPP standards organization developed the One Tunnel architecture to allow a direct data

link, or tunnel, between two network components—the RNC and the GGSN—as shown below:



FIG. 1

*Id.* at Fig. 1 (emphasis added); *see also* Dkt. 196 (*Markman* Opinion) at 4-5.

The '339 patent purports to improve upon this existing One Tunnel architecture by

proposing a recovery procedure to use when there is a tunnel error or failure caused by an access

network device (e.g., an RNC).  *See, e.g.*, '339 Pat. at Abstract.  In the claimed recovery

procedure, a core network user plane anchor (e.g., a GGSN) notifies or instructs a core network

control plane (e.g., an SGSN) to recover a data tunnel if a One Tunnel architecture is being used. *See, e.g.*, *id*. at 4:49-52.  The core network control plane (*e.g.*, the SGSN) then initiates the process of recovering the One Tunnel.  *See, e.g.*, *id*. at 4:53-65.  In independent claims 1, 9, and 14, the core network control plane initiates the recovery process by sending an "update PDP context request" to the core network user plane anchor.  *See id*. at 11:57-59, 12:62-64, 14:11-13. In claims 3 and 11, it does so by sending a "RAB assignment request" to the network access device.  *See id*. at 12:8-10, 13:10-11.

      **B.**     **"Update PDP Context Requests" and "RAB Assignments Requests"**

The "update PDP context requests" and "RAB assignment requests" referenced in the claims are not generic terms applicable to all cellular networks.  Rather, they are used in 3G networks.  For example, the 3GPP standards describe the messages and protocols used to perform RAB assignments and update PDP contexts in the excerpts below:



Ex. 3 (3GPP TS 25.413 V.3.0.0) at Section 8.2.2.

### 7.5.3     Update PDP Context Request

An Update PDP Context Request message shall be sent from a SGSN to a GGSN as part of the GPRS Inter SGSN Routeing Update procedure or the PDP Context Modification procedure or to redistribute contexts due to load sharing. It shall be used to change the QoS and the path. The message shall be sent by the new SGSN at the Inter SGSN Routeing Update procedure.

Ex. 4 (3GPP TS 29.060 V.3.0.0) at Section 7.5.3.

### C.      Overview of the '339 Prosecution History

Huawei alleges infringement of all of the independent claims in the '339 patent (claims 1, 3, 9, 11, and 14). Each of these independent claims includes limitations that expressly require the sending or receiving of "update PDP context requests" and/or performing "RAB assignment requests." *See* '339 Pat. at claims 1, 3, 9, 11, and 14. However, when Huawei filed the '339 patent application on January 24, 2012, *none* of the independent claims made any mention of "update PDP context request" messages and most were also silent with respect to any use of "RAB assignment" procedures. *See* Ex. 2 ('339 File History) at HW_TMO_00012817-823. For example, original claim 1 recited neither "update PDP context requests" nor "RAB assignment requests":

> 1. A method for processing an invalidation of a downlink data tunnel between networks, comprising:
> receiving, by a core network user plane anchor, an error indication of a data tunnel from an access network device;
> notifying, by the core network user plane anchor, a core network control plane to recover a downlink data tunnel if a user plane corresponding to the error indication uses a One Tunnel technology.

*See id*. at HW_TMO_00012817.

 In an Office Action dated September 13, 2013, the PTO rejected all of the original independent claims as obvious in view of a prior art 3GPP standards document in combination with a published patent application. *See id*. at HW_TMO_00013557-560. While the examiner concluded that the independent claims were invalid as drafted, the examiner also noted that certain *dependent* claims "would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." *Id*. at HW_TMO_00013560.[1] Each of these dependent claims identified by the examiner contains limitations explicitly reciting

---

[1]  The examiner identified original dependent claims 2-8, 11, 15, and 18 as allowable if rewritten in independent form. *See id.*

aspects of the RAB assignments and/or PDP context update procedures.  *See id*. at HW_TMO_00012817-823.

On December 11, 2013, Huawei submitted its response to the Office Action.  To overcome the examiner's obviousness rejection, Huawei amended all of the original independent claims, and added a new independent claim, to incorporate the allowable subject matter from the original dependent claims that the examiner had identified.  *See id*. at HW_TMO_00013574-580. As shown below, Huawei added the underlined limitations to the independent claims that ultimately issued as claims 1, 9, 11, and 14, thus narrowing the claims to require specific steps relating to the procedures for updating PDP contexts and RAB assignments (emphases added):

> Claim 1. A method for processing an invalidation of a downlink data tunnel between networks, comprising:
> receiving, by a core network user plane anchor, an error indication of a data tunnel from an access network device;
> notifying, by the core network user plane anchor, a core network control plane to recover a downlink data tunnel if a user plane corresponding to the error indication uses a One Tunnel technology;
> ***receiving*** by the core network user plane anchor, an ***update packet data protocol (PDP) context request*** from the core network control plane; and
> ***updating***, by the core network user plane anchor, ***a corresponding PDP context according to the update PDP context request***.

> Claim 9. A communication device, comprising:
> a receiving unit and a sending unit, wherein
> the receiving unit is configured to receive an error indication of a data tunnel from an access network device, and
> the sending unit is configured to instruct a core network control plane to recover a downlink data tunnel if a user plane corresponding to the error indication uses a One Tunnel technology, and
> wherein the receiving unit is further configured to ***receive an update packet data protocol (PDP) context request*** from the core network control plane, and wherein the device further comprises a storage unit configured to ***update a corresponding PDP context according to the update PDP context request***.

> Claim 11. A communication device, comprising:
> a receiving unit and a sending unit, wherein

the receiving unit is configured to receive a notification from a core network user plane anchor to recover a downlink data tunnel if a user plane using a One Tunnel technology is error; <u>and</u>

the sending unit is configured to send a radio access bearer (RAB) assignment request to an access network device, the RAB assignment request carrying a user plane Internet protocol (IP) address and tunnel end identity (TEID) information that are allocated by the core network user plane anchor for receiving uplink data, <u>and</u>

<u>wherein the sending unit is further configured to **send an update packet data protocol PDP context request to the core network user plane anchor to update corresponding PDP context**, and wherein the update PDP context request includes a user plane IP address and TEID information that are allocated by the access network device for receiving downlink data.</u>

14. A communication system, comprising: a core network user plane anchor and a core network control plane, wherein

the core network user plane anchor is configured to receive an error indication of data tunnel from an access network device, and notify a core network control plane to recover a downlink data tunnel if a user plane corresponding to the error indication uses a One Tunnel technology, and

the core network control plane is configured to recover the downlink data tunnel after receiving a notification sent by the core network user plane anchor, <u>and</u>

<u>wherein the core network control plane is further configured to **send an update packet data protocol (PDP) context request** to the core network user plane, and</u>

<u>the core network user plane anchor is further configured to **update a corresponding PDP context according to the update PDP context request** sent by the core network control plane.[2]</u>

*Id*. at HW_TMO_00013575-578 (emphases added).

Huawei also added new independent claim 3 by rewriting original dependent claim 3 in

independent form, similarly restricting the claim to specific steps relating to RAB assignment:

[New] Claim 3.  A method for processing an invalidation of a downlink data tunnel between networks, comprising:

receiving, by a core network user plane anchor, an error indication of a data tunnel from an access network device;

notifying by the core network user plane anchor, a core network control plane to recover a downlink data tunnel if a user plane corresponding to the error indication uses a One Tunnel technology;

---

[2]  Issued claims 1, 9, 11 and 14 correspond to amended claims 1, 10, 13, and 17, respectively. *See* Ex. 2 ('339 File History) at HW_TMO_00013576-578.

> ***sending***, by the core network control plane, ***a radio access bearer (RAB) assignment request*** to the access network device, ***wherein the RAB assignment request carries a user plane Internet protocol (IP) address and tunnel end identity (TEID) information that are allocated by the core network user plane anchor for receiving uplink data***; and
>
> ***receiving***, by the core network control plane, ***a RAB assignment response*** from the access network device.

*Id*. at HW_TMO_00013575 (emphases added).

These amendments successfully overcame the examiner's prior art obviousness rejection, and, following the filing of a terminal disclaimer, the PTO issued a Notice of Allowance on June 12, 2014.  *Id*. at HW_TMO_00013616, -633.

### D.    Huawei's Infringement Theory Under the Doctrine of Equivalents

For each of the independent claims of the '339 patent, Huawei accuses T-Mobile's 3G network of literal infringement.  *See* Ex. 5 (Nettleton Open. Rep.) ¶¶ 624-862.  Huawei also accuses T-Mobile's 4G LTE network of infringement *both* literally and under the doctrine of equivalents.  *Id*.  Significantly, the only limitations for which Huawei offers a doctrine of equivalents theory are those relating to update PDP context requests and RAB assignment requests (i.e., the underlined limitations above)—the very limitations Huawei added to overcome PTO's obviousness rejection.  *See id*. ¶¶ 675, 694, 714, 726, 776, 791, 797, 817.

Huawei relies on the doctrine of equivalents for these limitations because, unlike the 3GPP standards governing 3G networks, and unlike the '339 patent claims, the standards governing LTE networks do *not* utilize, or even mention, "update PDP context requests" or "RAB assignment requests."  Those technical concepts were not carried over into the LTE standards.  Instead, Huawei alleges that the LTE standard's "Update Bearer Request" is equivalent to the claimed 3G "update PDP context request" and that the LTE standard's "Initial Context Setup Request" is equivalent to the claimed 3G "RAB assignment request."  *See* Ex. 5 (Nettleton Open. Rep.) ¶¶ 674-675, 711-714.

7

### E.    The Alleged Equivalents Were Standardized Years Before Huawei Amended its Claims

As Huawei's own expert has conceded, the alleged equivalents—the Initial Context Setup Request and the Update Bearer Request—were incorporated into the LTE standards years before Huawei submitted its amended claims to the Patent Office in December 2013.

As shown in the excerpt below, the Initial Context Setup Request was incorporated into the LTE standards as early as September 2007, over six years before Huawei amended its claims:



Ex. 6 (3GPP TS 36.413 V.1.0.0) at Section 8.3.1.2.

Likewise, the Update Bearer Request was defined in the LTE standards as early as May 2008, over five years before Huawei amended the '339 patent claims during prosecution:

> ## 7.2.5    Update Bearer Request
>
> 7.2.5.1      Requesting Default Bearer modification across S11 interface within the EUTRAN Initial Attach procedure
>
> *Editor's note: It is FFS if the content of this subclause stays confined to default bearer modification across S11 interface, or if it will be generalized for all bearer modification messages.*
>
> An Update Bearer Request message shall be sent by MME to a SGW as a part of an attach procedure.

Ex. 7 (3GPP TS 29.274 V.1.0.0) at Section 7.2.5.[3]

It is no surprise, then, that Huawei's own expert, Dr. Nettleton, expressly agreed at his

---

[3]  Furthermore, the "UE Triggered Service Request Procedure," which Dr. Nettleton contends performs the Update Bearer Request and the Initial Context Setup Request, was defined in Section 5.3.4 of 3GPP TS 23.401 V.1.0.0 as early as May 2007.  *See* Ex. 8 (3GPP TS 23.401 V.1.0.0) at TMOBILE_00177761; Ex. 5 (Nettleton Open. Rep) ¶¶ 667-669, 712-715.

deposition that both alleged equivalents—the Update Bearer Request and Initial Context Setup Request—had already been identified as messages that would be used in LTE networks before Huawei even filed the '339 patent application, and years before Huawei made its limiting amendment during prosecution.  *See* Ex. 9 (7/15/2017 Nettleton Dep. Tr.) at 288:4-10. ("Q.  So prior to the time that Huawei filed its U.S. patent application, the 3GPP standard organization had already identified initial context setup request messages and update bearer request messages as messages that would be used in 4G networks, correct?  A.  Excuse me.  Yes.").

## IV.    LEGAL STANDARD

The doctrine of prosecution history estoppel bars the application of the doctrine of equivalents to recapture subject matter that was surrendered during prosecution.  *Festo*, 535 U.S. at 727.  When a patentee has filed an amendment seeking to narrow the scope of a claim, and the reason for that amendment was a "substantial reason related to patentability," a presumption arises that prosecution history estoppel applies.  *Id.* at 739 (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30–33 (1997)).  "The burden is on the patent holder to establish that the reason for the amendment is not one related to patentability."  *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003) (citing *Warner-Jenkinson*, 520 U.S. at 33).

A patentee can rebut the presumption that estoppel applies only "by establishing one of three exceptions: (1) the equivalent was unforeseeable at the time of the application; (2) the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question; or (3) there is some other reason suggesting that the patentee could not reasonably be expected to have described the equivalent."  *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014) (citing *Festo*, 535 U.S. at 740–41).  "The burden of rebutting

the *Festo* presumption lies with the patentee." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1312 (Fed. Cir. 2006).

The Federal Circuit has also made clear that the applicability of prosecution history estoppel is a question of law to be determined by the court:  "Questions relating to the application and scope of prosecution history estoppel thus fall within the exclusive province of the court.  Accordingly, the determinations concerning whether the presumption of surrender has arisen and whether it has been rebutted are questions of law for the court, not a jury, to decide." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (Festo IX)*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003) (en banc); *see also Iris Connex, LLC v. Acer America Corp.*, 2016 WL 4596043, at *20 (E.D. Tex. Sept. 2, 2016) ("The question of whether and to what extent prosecution history estoppel bars argument under the doctrine of equivalents is a question of law to be determined exclusively by the court.").

As such, courts in this district have repeatedly granted summary judgment of non-infringement under the doctrine of equivalents when prosecution history estoppel applies.  *See, e.g.*, *Iris Connex*, 2016 WL 4596043, at *20; *AI Automation, LLC v. Samsung Electronics Co. Ltd.*, 2015 WL 12669879, at *1 (E.D. Tex. Dec. 7, 2015); *GeoTag, Inc. v. Frontier Commcns Corp.*, No. 2:10-CV-00265-JRG, 2014 WL 282731, at *1 (E.D. Tex. Jan. 24, 2014).

## V.   PROSECUTION HISTORY ESTOPPEL BARS HUAWEI'S ASSERTION OF THE DOCTRINE OF EQUIVALENTS

### A.   Prosecution History Estoppel Presumptively Applies

Under Supreme Court precedent, patentees are presumptively barred from relying on the doctrine of equivalents if (1) the scope of the claims was narrowed through amendment, and (2) the amendment was made for a substantial reason related to patentability.  *Festo*, 535 U.S. at 739-41.  Those requirements are plainly met here in light of the amendments Huawei made to all

independent claims of the '339 patent in response to the PTO's obviousness rejection.

### 1.    The Amendments Narrowed the Scope of the Claims

The independent claims of the '339 patent, as granted, are significantly narrower than the original claims Huawei submitted in the '339 patent application.  As explained above in Section III.C, all original independent claims were amended (and new independent claim 3 was drafted) to add limitations expressly requiring the use of "update PDP context requests" or "RAB assignment requests."  By making these amendments, Huawei narrowed each of these claims to recite the use of specific messages and protocols that are described in the 3GPP standards and that would not otherwise have been required by the claims.

### 2.    The Amendments Related to Patentability

These amendments were made for purposes of patentability because they were needed to overcome the examiner's obviousness rejection.  As discussed, the examiner rejected all original independent claims as obvious in view of the prior art.  Ex. 2 ('339 File History) at HW_TM_00013557.  The examiner also explained, however, that several dependent claims would be allowable if written in independent form.  *Id*. at HW_TM_00013560.  Huawei then made the amendments at issue in order to incorporate the allowable subject matter from those dependent claims into the independent claims.  *Id*. at HW_TM_00013575-578.  These amendments were thus made to avoid the prior art and overcome the obviousness rejection—a textbook example of when prosecution history estoppel applies.  *Pioneer*, 330 F.3d at 1357 ("Our own examination of the prosecution history convinces us that the amendment was made to avoid the prior art, the classic basis for the application of prosecution history estoppel."); *AI Automation*, 2015 WL 12669879, at *8 (finding amendments made for purposes of patentability when needed to overcome examiner's prior art rejection).

### B.    Huawei Cannot Rebut the Presumption that Estoppel Applies

Because Huawei made narrowing amendments related to patentability, the Court must

presume that Huawei is precluded from using the doctrine of equivalents to prove infringement

of these limitations that were added through amendment.  *Festo*, 535 U.S. at 739.  It is Huawei's

burden to rebut this presumption—a burden Huawei cannot meet because none of the three

judicially approved exceptions apply.  *Amgen*, 457 F.3d at 1312.

### 1.    The Alleged Equivalents Were Not Unforeseeable

The "Update Bearer Request" and the "Initial Context Setup Request" used in LTE

networks, which Huawei now attempts to claim through the doctrine of equivalents, were

entirely foreseeable at the time of Huawei's amendment.  These messages were known in the art

at least *six years* prior to Huawei's amendment, and thus cannot be "later-developed technology"

that was unforeseeable to Huawei when drafting its claims.  *Festo IX*, 344 F.3d at 1369.

At his deposition, Huawei's expert *expressly admitted* that these 4G LTE messages were

known to persons of skill in the art *more than six years* before Huawei's amendment.  Ex. 9

(7/15/2017 Nettleton Dep. Tr.) at 288:20-289:4 ("[] Q. You would agree that persons of skill in

the art knew by May of 2007 that the LTE network would use initial context setup request

messages, correct?  A. Yes.  Q. And persons of skill in the art knew by May 2007 that the LTE

standard would use update bearer request and response messages, correct?  A. That's correct.").

The Federal Circuit has "<u>consistently held</u> that an equivalent is foreseeable when the

equivalent is known in the pertinent prior art at the time of amendment."  *Festo Corp. v.*

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1378 (Fed. Cir. 2007) (collecting cases)

(emphasis added); *see also Festo IX*, 344 F.3d at 1369 ("[I]f the alleged equivalent were known

in the prior art in the field of the invention, <u>it certainly should have been foreseeable</u> at the time

of the amendment.") (emphasis added); *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 347 F.3d

1355, 1359 (Fed. Cir. 2003) ("When the prior art embraces the alleged equivalent, and a narrowing amendment was made to avoid that equivalent, that subject matter cannot be found to have been unforeseeable at the time of the amendment."); *Pioneer*, 330 F.3d at 1357 (holding that patentee could not overcome the *Festo* presumption because the equivalent technology was "known in the art and would have been foreseeable at the time of the amendment").

Not only were these equivalents known in the art, they had been *standardized* in the LTE standard years prior to Huawei's amendment—a fact that Huawei's expert, Dr. Nettleton again expressly admits.  *See* Ex. 9 (7/15/2017 Nettleton Dep. Tr.) at 288:4-10.  As discussed above in Section III.E, the "Update Bearer Request" and "Initial Context Setup Request" messages were standardized and published as early as 2007.  In fact, precedent in this district holds that alleged equivalents are not unforeseeable when they have been standardized prior to the amendments at issue—the precise situation here.  *See EMG Technology, LLC v. Vanguard Group, Inc.*, 2014 WL 12597428, at *4 (E.D. Tex. June 24, 2014) (holding that XHTML equivalents were foreseeable when described in standards several years before the claims were amended).

If Huawei had wanted to claim the 4G LTE Update Bearer Request and Initial Context Setup Request messages in the '339 patent, it easily could have done so by drafting additional claims specifically claiming these messages or by using broader terminology than the claim terms it actually employed.  And Huawei had every motivation to do so.  Referring to the ongoing LTE standardization work at the 3GPP group, the '339 specification itself acknowledges that "[i]n the subsequent evolving 3GPP system…[t]he specific signaling names may be different" from those used in the '339 patent embodiments.  '339 Pat. at 10:55-11:22; *see also id*. at 4:34-42.  Huawei thus recognized that different messages would be used by LTE components to perform error recovery procedures, yet nonetheless declined to claim those messages.

### 2.     The Amendments Are Directly Related to the Alleged Equivalents

The "tangential relation" criterion for rebutting the *Festo* presumption "asks whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." *Festo IX*, 344 F.3d at 1369.  A review of the '339 patent prosecution history shows that the amendments adding the RAB assignment and PDP context limitations were the central reasons that the '339 patent claims were allowed.  In order to overcome the examiner's obviousness rejection, Huawei added the RAB assignment and PDP context limitations—yet it is these precise limitations that Huawei contends do not need to be present in T-Mobile's LTE network under the doctrine of equivalents.  Thus, the prosecution history clearly shows that the amendments were directly, not tangentially, related to the alleged equivalents.

The Federal Circuit has made clear that in exactly this situation, when a patentee relies on particular claim limitations to avoid the prior art, the equivalents of those limitations are not tangential.  *See, e.g.*, *Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1374 (Fed. Cir. 2005) (narrowing amendment is not tangential where patentee argued that prior art did not associate certain search engine "clauses," and then alleged infringement because accused products "associate something equivalent to" those clauses) (emphasis added); *Rhodia Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005) (holding that when patentee "amended its claim to incorporate numerous limitations identifying the specific characteristics that distinguished its invention from the prior art . . . the reason for the narrowing amendment cannot be said to be tangential"); *see also Iris Connex*, 2016 WL 4596043, at *21 ("tangential relation grounds does not apply because the amendment was made to overcome prior art").

### 3.     It Is Reasonable To Expect Huawei to Have Described the Alleged Equivalents

Finally, Huawei cannot show that there is "some other reason suggesting that the patentee

could not reasonably be expected to have described the insubstantial substitute in question." *Festo*, 535 U.S. at 741. This third rebuttal criterion is a "narrow one; it is available in order not to totally foreclose a patentee from relying on reasons, other than unforeseeability and tangentialness, to show that it did not surrender the alleged equivalent." *Festo IX*, 344 F.3d at 1370. It may be satisfied when "there was some reason, such as the shortcomings of language, why the patentee was prevented from describing the alleged equivalent when it narrowed the claim." *Id.* Here, it is beyond dispute that the appropriate language existed to describe the "Update Bearer Request" and the "Initial Context Setup Request" messages that Huawei seeks to sweep in under the doctrine of equivalents because, as discussed above, those messages were already known and published in the LTE standards, and known to persons of skill in the art, at the time Huawei filed its amendments. *See supra* Section III.E.

And Huawei is no newcomer to the LTE standards. In fact, Huawei's damages expert in this litigation relies on Huawei's portfolio of patents that Huawei declared essential to the LTE standards as support for his damages opinions. *See* Ex. 10 (Vander Veen Open. Rep.) ¶ 38. Given Huawei's deep involvement with the LTE standards process, there is no reason why Huawei could not have been expected to draft claims specifically directed to LTE implementations. *Amgen*, 457 F.3d at 1316 (holding that district court erred in finding that patentee had rebutted *Festo* presumption where "patentee knew of [the alleged equivalent] . . . but chose to limit the claims" to exclude that equivalent) (internal citation omitted). In short, nothing prevented Huawei from amending its claims to include the alleged LTE equivalents that it is now accusing of infringement under the doctrine of equivalents.

## VI.    CONCLUSION

For the foregoing reasons, T-Mobile respectfully requests that its motion for partial summary judgment of no infringement under the doctrine of equivalents be granted.

Dated: July 21, 2017                    By:   /s/ *Y. Ernest Hsin*

Mark D. Selwyn
(California Bar No. 244180)
Kathryn D. Zalewski (California Bar No.
263119)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
950 Page Mill Road
Palo Alto, California 94304
(650) 858-6000

Joseph J. Mueller
(Massachusetts Bar No. 647567)
Cynthia Vreeland
(Texas Bar No. 20625150
Massachusetts Bar No. 635143)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
(617) 526-6000

Josh A. Krevitt (New York Bar No. 2568228)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue, 47th Floor
New York, New York 10166
Tel: (212) 351-4000
Fax:  (212) 351-4035

Mark N. Reiter (Texas Bar No. 16759900)
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Tel: (214) 698-3100
Fax: (214) 571-2900

Y. Ernest Hsin (California Bar No. 201668)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105-0921
Tel: (415) 393-8224
Fax: (415) 374-8436

16

Stuart M. Rosenberg (California Bar No. 239926)
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: (650) 849-5389
Fax: (650) 849-5089

Michael E. Jones
Texas Bar No. 10929400
mikejones@potterminton.com
E. Glenn Thames, Jr.
Texas Bar No. 00785097
glennthames@potterminton.com
**POTTER MINTON, PC**
110 North College Ave., Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

*Counsel for Defendants T-Mobile US, Inc. and T-Mobile USA, Inc.*

/s/ John D. Haynes
John D. Haynes (GA Bar No. 340599)
Patrick J. Flinn (GA Bar No. 264540)
Michael C. Deane (GA Bar No. 498195)
**ALSTON & BIRD LLP**
1201 W. Peachtree St.
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: John.Haynes@alston.com
Email: Patrick.Flinn@alston.com
Email: Michael.Deane@alston.com

Michael J. Newton (TX Bar No. 24003844)
**ALSTON & BIRD LLP**
2800 N. Harwood St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: Mike.Newton@alston.com
Email: Derek.Neilson@alston.com

M. Scott Stevens (NC Bar No. 37828)
Ross R. Barton (NC Bar No. 37179)
**ALSTON & BIRD LLP**
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Email: Scott.Stevens@alston.com
Email: Ross.Barton@alston.com

Deron R. Dacus (Texas State Bar No. 790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite
430 Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543

*Counsel for Intervenors Nokia Solutions
and Networks US LLC and Nokia Solutions
and Networks Oy*


/s/ Phillip B. Philbin
Phillip B. Philbin
LEAD ATTORNEY
State Bar No. 15909020
Jamie H. McDole
State Bar No. 24082049
Charles M. Jones II
State Bar No. 24054941
Michael D. Karson
State Bar No. 24090198
Matthew P. Chiarizio
State Bar No. 24087294
Tiffany M. Cooke
State Bar No. 24087340
**HAYNES AND BOONE, LLP**
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Tel.: (214) 651-5000
Fax: (214) 651-5940
Email: phillip.philbin@haynesboone.com

jamie.mcdole@haynesboone.com
charlie.jones@haynesboone.com
michael.karson@haynesboone.com
matthew.chiarizio@haynesboone.com
tiffany.cooke@haynesboone.com

Jason T. Lao
California State Bar No. 288161
**HAYNES AND BOONE, LLP**
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Tel.: (949) 202-3051
Fax: (949) 202-3151

*Counsel for Intervenors*
*Telefonaktiebolaget LM Ericsson and*
*Ericsson Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has

been served on July 21 2017, by electronic mail upon all counsel of record who are deemed to

have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

Dated: July 21, 2017

*/s/   Y. Ernest Hsing*
Y. Ernest Hsin

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that Exhibits 5, 9 and 10 to the foregoing document are authorized to be

filed under seal pursuant to the Protective Order entered in this case.

Dated: July 21, 2017

*/s/   Y. Ernest Hsin*
Y. Ernest Hsin