# EXHIBIT A

Trials@uspto.gov                                              Paper 10
571-272-7822                                       Entered: July 26, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

NOKIA SOLUTIONS AND NETWORKS US LLC; and
NOKIA SOLUTIONS AND NETWORKS OY,
Petitioner,

v.

HUAWEI TECHNOLOGIES CO. LTD.,
Patent Owner.
_____

Case IPR2017-00588
Patent 8,867,339 B2
_____

Before TREVOR M. JEFFERSON, JENNIFER MEYER CHAGNON, and
MICHELLE N. WORMMEESTER, *Administrative Patent Judges*.

JEFFERSON, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*35 U.S.C. § 314(a)* and *37 C.F.R. § 42.108*

IPR2017-00588
Patent 8,867,339 B2

# I.   INTRODUCTION

## A.   Background

Petitioners, Nokia Solutions and Networks US LLC and Nokia Solutions and Networks Oy ("NSN" or "Petitioner") filed a Petition (Paper 2, "Pet.") requesting an *inter partes* review of claims 1, 3–5, 7–9, 11–14, and 16 of U.S. Patent No. 8,867,339 B2 (Ex. 1001, "the '339 patent") pursuant to 35 U.S.C. §§ 311–319.  NSN relies on the Declarations of Mark R. Lanning (Ex. 1003) and Balaz Bertenyi (Ex. 1004) in support of its Petition.  Patent Owner, Huawei Technologies Co. Ltd. ("Huawei" or "Patent Owner") filed a Preliminary Response (Paper 9, "Prelim. Resp.") to the Petition.

We have jurisdiction under 37 C.F.R. § 42.4(a) and 35 U.S.C. § 314, which provides that an *inter partes* review may not be instituted unless the information presented in the Petition "shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  After considering the Petition, Preliminary Response, and associated evidence, we conclude that Petitioner has demonstrated a reasonable likelihood that it would prevail in showing the unpatentability of claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent.

## B.   Related Proceedings

NSN indicates that the '339 patent is involved in *Huawei Technologies Co. v. T-Mobile US, Inc.*, Case No. 2:16-cv-0052 (E.D. Tex.), in which NSN, after a motion to intervene, joined on June 14, 2016.

2

IPR2017-00588
Patent 8,867,339 B2

### C. The '339 Patent

The '339 patent describes a method for processing an invalidation of a downlink data tunnel between networks.  Ex. 1001, Abstract.

> The method includes the following steps:  (1) a core network user plane anchor receives an error indication of data tunnel sent from an access network device, (2) after deciding that the user plane corresponding to the error indication uses a One Tunnel technology, the core network user plane anchor notifies a relevant core network control plane to request recovering the down link data tunnel, (3) the core network control plane recovers the downlink data tunnel and notifies the core network user plane anchor to update information of the user plane.

*Id.*

Figure 1 below shows a One Tunnel architecture.  Ex. 1001, 3:39.



FIG. 1

Figure 1 is a schematic diagram of a One Tunnel architecture, showing user plane traffic directly transmitted between a radio network control (RNC) and a general packet radio service (GPRS) support node (GGSN) using the One Tunnel technology shown by the thick solid line in Figure 1.  *Id.* at 4:16–21. In one scheme, a small part of the user plane traffic is transmitted between the RNC and the GGSN via the serving GPRS support node (SGSN) via the thin solid line, and signaling or control plane data is shown via the dashed line.  *Id.* at 4:16–26.  This One Tunnel scheme of the '339 patent shows the

3

IPR2017-00588
Patent 8,867,339 B2

SGSN retaining the user plane function.  *Id*.  In a second One Tunnel scheme, the SGSN does not retain the user plane functions, and instead, the tunnel between the RNC and the GGSN is used to transmit data.  *Id*. at 4:26–34.  In this scheme, the general tunnel protocol (GTP) user plane between the RNC and SGSN and that between SGSN and GGSN (shown with GTPU in Figure 1) does not exist, and the GTPU data uses the tunnel between the RNC and GGSN exclusively.  *Id*.

The '339 patent claims a method for recovery of a downlink from the core network to the user equipment in a One Tunnel connection when the RNC sends an error indication to the GGSN, such that the GGSN sends a notification to the SGSN, and the SGSN recovers a downlink data tunnel. Figure 6 of the '339 patent below shows the error notification and recovery steps.



FIG. 6

Figure 6 depicts a flow chart of processing an invalidation of a user plane downlink data tunnel, showing error indication 602 between the RNC and GGSN.  *Id*. at 8:61–9:46.  The steps 602 to 605b show the RNC and GGSN and SGSN not releasing the corresponding packet data protocol (PDP) after

4

IPR2017-00588
Patent 8,867,339 B2

a failure of a downlink data tunnel and instead reestablishing the downlink

data tunnel via the SGSN.  *Id*. at 3:4–31, 8:61–9:46.

### D. Illustrative Claims

NSN challenges claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent.

Claims 1, 3, 9, 11, and 14 are independent.  Claim 1, reproduced below, is

illustrative of the claims at issue:

> 1.      A method for processing an invalidation of a downlink
> data tunnel between networks, comprising:
>
>    receiving, by a core network user plane anchor, an error
> indication of a data tunnel from an access network device;
>
>    notifying, by the core network user plane anchor, a core
> network control plane to recover a downlink data tunnel if a user
> plane corresponding to the error indication uses a One Tunnel
> technology;
>
>    receiving by[1] the core network user plane anchor, an
> update packet data protocol (PDP) context request from the core
> network control plane; and
>
>    updating, by the core network user plane anchor, a
> corresponding PDP context according to the update PDP context
> request.

### E. The Alleged Grounds of Unpatentability

The information presented in the Petition sets forth the grounds of

unpatentability of claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent as

follows (*see* Pet. 2–74):

---

[1] This language of claim 1 was corrected via a Certificate of Correction
issued May 26, 2015.

IPR2017-00588
Patent 8,867,339 B2

| References | Basis | Claims Challenged |
|---|---|---|
| TR 23.809[2] and the Ericsson Submission[3] | § 103(a) | 1, 3–5, 7–9, 11–14, and 16 |
| TR 23.873[4] and the Ericsson Submission | § 103(a) | 1, 3–5, 7–9, 11–14, and 16 |

## II.    ANALYSIS

### A.  Claim Interpretation

We interpret claims of an unexpired patent using the broadest reasonable construction in light of the specification of the patent in which they appear.  *See* 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs. LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016) (upholding the use of the broadest reasonable interpretation standard).  In applying a broadest reasonable construction, claim terms generally are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire disclosure.  *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  Any special definition for a claim term must be set forth in the specification with reasonable clarity, deliberateness, and precision.  *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

---

[2] 3rd Generation Partnership Project ("3GPP"), *Technical Specification Group Services and System Aspects; One Tunnel Functional description (Release 7)* TR 23.809 V0.3.0 (2006-07) (July 10, 2006) (Ex. 1005, "TR 23.809").

[3] Ericsson*, Impacts to Functions and Characteristics, Agenda Item 7.3, One Tunnel Solution*, S2-062308, 3GPP TSG SA WG2 Architecture – S2#53, 26-30 June 2006, (Ex. 1006, "the Ericsson Submission").

[4] 3GPP, *Technical Specification Group Services and System Aspects; Feasibility Study for Transport and Control Separation in the PS CN Domain (Release 4)* TR 23.873 V4.0.0 (2001-03) (April 11, 2001) (Ex. 1007, "TR 23.873").

IPR2017-00588
Patent 8,867,339 B2

### 1. *"receive a notification from a core network user plane anchor to recover a downlink data tunnel if a user plane using a One Tunnel technology is error" (Claim 11)*

NSN states that Patent Owner has argued in related district court litigation that this term means "receive a notification from a core network user plane anchor to recover a downlink data tunnel if a user plan using One Tunnel technology is invalid." Pet. 22–23 (citing Ex. 1016, Ex. C, 11). At this stage of the proceeding, Patent Owner does not contest NSN's proposed construction or provide an express construction of this claim phrase.

For purposes of this Decision, we determine that the "receive a notification" limitation means "receive a notification from a core network user plane anchor to recover a downlink data tunnel if a user plan using One Tunnel technology is invalid."

### 2. *"receiving unit," "sending unit," and "storage unit" (claim 9) and "receiving unit" and "sending unit" in (claim 11)*

The "receiving unit," "sending unit," and "storage unit" in claim 9 refer to units within a GGSN, and the "receiving unit" and "sending unit" in claim 11 refer to units within an SGSN. In related litigation, NSN has argued that these limitations are means-plus-function limitations that lack sufficient corresponding structure. *See* Pet. 23 (citing Ex. 1016, Exhibit D). For purposes of this *inter partes* review petition, NSN asserts that these phrases "mean 'hardware or software for receiving data' ('receiving unit'), 'hardware of software for sending data' ('sending unit'), and 'hardware of software for storing data' (storage unit)." Pet. 24 (citing Ex. 1003 ¶¶ 106–111).

IPR2017-00588
Patent 8,867,339 B2

Patent Owner does not address the construction of the "unit" limitations of claims 9 and 11 and related dependent claims. At this stage of the proceeding, we have not reached a final decision with regard to whether such limitations are means-plus-function limitations under section 112, sixth paragraph, which requires identification of sufficient structure, material, or acts in the specification. *See In re Donaldson Co.*, 16 F.3d 1189, 1193 (Fed. Cir. 1994) (en banc). We, however, are able to analyze Petitioner's asserted prior art grounds without making such a determination. For purposes of this Decision on Institution, we construe these terms to mean hardware or software for performing the steps recited in the claims.

We direct the parties in Section IV below, in their subsequent briefing in this proceeding, to address specifically whether or not the "unit" limitations of claims 9 and 11 invoke 35 U.S.C. § 112, paragraph 6. If so, the parties are directed to identify the corresponding structure from the Specification. If not, the parties are directed to explain their reasoning and address the construction of the terms under the broadest reasonable interpretation.

### 3.  *"notify" and "notification" (claims 1, 3, 11, and 14)*

NSN contends that the notification limitations be given their plain and ordinary meaning. Pet. 24–25. Patent Owner does not provide an express construction. For purposes of this Decision on Institution, we agree with NSN that the terms are given their plain and ordinary meaning.

### B.  *Printed Publication Prior Art*

Huawei contends that the Ericsson Submission is not prior art because Petitioner does not show that it was actually disseminated to members of the

8

IPR2017-00588
Patent 8,867,339 B2

public or indexed in a manner to provide sufficient public accessibility. Prelim. Resp. 8.  Huawei argues that the Ericsson Submission differs from the Third Generation Partnership Project ("3GPP") documents cited in this and other cases relying on such documents.  *Id.*; *see also LG Elecs. v. Core Wireless Licensing S.A.R.L.*, Case IPR2015-01988, slip op. at 12–14 (PTAB Apr. 1, 2016) (Paper 7) (instituting *inter partes* review based on 3GPP working group documents).

We look to the underlying facts to make a legal determination as to whether a reference is a printed publication.  *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1364 (Fed. Cir. 2014).  The determination of whether a given reference qualifies as a prior art "printed publication" involves a case-by-case inquiry into the facts and circumstances surrounding its disclosure to members of the public.  *In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004).  The key inquiry is whether the reference was made "sufficiently accessible to the public interested in the art" before the critical date.  *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989); *In re Wyer*, 655 F.2d 221, 226 (CCPA 1981).

In the present case, we disagree with Huawei's contention that, because NSN has not shown the submission was indexed or disseminated, the Ericsson Submission has not been shown to be disseminated sufficiently to the interested public.  Prelim. Resp. 8–17.  "A given reference is 'publicly accessible' upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it . . . ."  *Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006) (citation omitted).  We are not

9

IPR2017-00588
Patent 8,867,339 B2

persuaded by Huawei's arguments related to indexing of the Ericsson Submission. NSN provides a declarant, Mr. Bertenyi, who testifies to the practices and procedures of the 3GPP TSG-SA Working Group that support the document being published to the working group members. Pet. 38; Ex. 1004 ¶ 29; *see also id.* ¶ 17 ("Before, during, and after meetings, all Tdocs [(the Ericsson submission is a Tdoc)] are distributed to all of the members of the TSG or WG to which they pertain, and all Tdocs are made publicly available on 3GPP's servers."). At this stage, NSN has provided sufficient evidence and argument that the Ericsson Submission actually was disseminated, and made available to ordinarily skilled artisans in the context of the 3GPP working groups. Ex. 1004 ¶ 29. Mr. Bertenyi's testimony, based on his personal knowledge of 3GPP practices, provides sufficient support, at this stage, to establish the public accessibility of the Ericsson Submission for purposes of this Decision on Institution. *See* Ex. 1004 ¶ 29 (stating conclusion based on personal knowledge); *see also Klopfenstein*, 380 F.3d at 1348 (noting that we are not limited "to finding something to be a 'printed publication' *only* when there is distribution and/or indexing").

*C. Obviousness based on TR 23.809 and the Ericsson Submission*

NSN contends that the combination of TR 23.809 and the Ericsson Submission teaches or suggests the limitations of claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent. Pet. 31–52 (citing Ex. 1003 ¶¶ 132–171).

*1. TR 23.809 (Ex. 1005)*

TR 23.809 is a Technical Report by 3GPP describing the One Tunnel approach that "enables direct user plane technology between RAN and GGSN." Ex. 1005 § 5.1. TR 23.809 describes various One Tunnel

IPR2017-00588
Patent 8,867,339 B2

approaches, including a SGSN controlled bearer optimization approach, which involves error notification from the RNC to the GGSN. *Id*. at Fig. 6.2.1-1.

### 2.  *The Ericsson Submission (Ex. 1006)*

The Ericsson Submission is a 3GPP working group submission from Ericsson that addresses proposed changes to a version of the TR 23.809 report.  Ex. 1006.  NSN alleges that the Ericsson Submission was available to the 3GPP group at least as early as June 20, 2006.  Ex. 1004 ¶ 29.  The submission proposes alternate language and process for the "Error Indication" in TR 23.809 for the SGSN controlled bearer optimization approach.  Ex. 1006 § 6.10.1.  The Ericsson Submission discloses that after "an Error Indication is received by the GGSN on the direct tunnel from an RNC, an OTS specific Error Indication shall be sent to SGSN on the signaling connection (GTP-C tunnel) for the concerned PDP Context." *Id.* The SGSN is instructed to follow conventional recovery procedures by locally releasing the Radio Access Bearer (RAB), preserving the PDP context, and initiating the RAB to re-establish the RAB. *Id.*

### 3.  *Analysis*

NSN provides a rationale to combine TR 23.809 and the Ericsson Submission at the time of the '339 patent, arguing that the Ericsson Submission was submitted to the 3GPP working group responsible for TR 23.809 and includes proposed revisions to the One Tunnel approaches in a 3GPP network.  Ex. 1003 ¶ 132.  The Ericsson Submission proposed a solution to the error recovery problem disclosed in TR 23.809.  Ex. 1005 § 6.10.3.  NSN contends that an ordinarily skilled artisan would have an expectation of success in combining the Ericsson Submission to the One

IPR2017-00588
Patent 8,867,339 B2

Tunnel scheme in TR 23.809 to improve the error recovery process.  Pet. 32
(citing Ex 1003 ¶ 133).  In sum, NSN argues that a person of skill in the art
would have been motivated to combine TR 23.809 with the proposals
submitted to the working group, such as the Ericsson Submission, which
would yield predictable results to a person of ordinary skill in the art.  *Id.*

On the present record, we are not persuaded by Patent Owner's
arguments that NSN's argument and evidence addresses only
"combinability" of the references.  Prelim. Resp. 24–29.  NSN provides
argument and evidence regarding the modifications proposed by the
Ericsson Submission to the One Tunnel schemes presented in TR 23.809.
Pet. 31–32; Ex. 1003 ¶¶ 132, 133.  At this stage, we credit NSN's evidence
that shows the Ericsson Submission to TR 23.809 was meant to revise the
TR 23.809 tunnel scheme using known elements and procedures.  Pet. 31–
32; Ex. 1003 ¶¶ 132, 133.  Therefore, contrary to Patent Owner's arguments,
we find that Petitioner presents more than one articulated reason with a
rational underpinning to justify the legal conclusion of obviousness.  *See
KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

With respect to the claims, NSN provides a limitation-by-limitation
analysis, showing, for example, that TR 23.809 discloses a method for
processing an invalidation of a downlink data tunnel between networks as
required in the claim 1 preamble.  Pet. 32–33 (citing Ex. 1003 ¶ 140;
Ex. 1005 §§ 6.10, 6.10.1).  NSN shows that the error indication to recover an
invalid tunnel between RNC and GGSN is disclosed in TR 23.809.
Ex. 1005 §§ 6.10, 6.10.1.

NSN further shows that the GGSN receives an error indication from
the RNC as required in claim 1 and related claims as disclosed in both

12

IPR2017-00588
Patent 8,867,339 B2

TR 23.809 and the Ericsson Submission.  Pet. 33–34 (citing Ex. 1003

¶¶ 141, 142; Ex. 1005 §§ 6.10, 6.10.1; Ex. 1006 § 6.10.1).

NSN shows that TR 23.809 in combination with the Ericsson

Submission teaches the "notifying, by the core network user plane anchor, a

core network control plane to recover a downlink tunnel if a user plane . . .

uses a One Tunnel technology" as recited in claim 1 and related claims.

Pet. 34–37.  NSN contends that applying the Ericsson Submission to the

SGSN controlled bearer optimization One Tunnel approach in TR 23.809

would have been obvious to a person of ordinary skill in the art at the time

of patenting and would produce the required notification to recover.

Ex. 1003 ¶¶ 145–146; Pet. 35–36.

Further, NSN shows that a person of ordinary skill in the art applying

the Ericsson Submission error recovery procedures to the TR 23.809 SGSN

update PDP context request for tunneling functions, would have resulted in

sending the update PDP context requests described in the Ericsson

Submission.  Pet. 38–39.  In addition, NSN shows that a person of ordinary

skill applying the Ericsson Submission to TR 23.809 would have yielded the

GGSN sending the SGSN update PDP responses for RAB release and

reassignment as shown in Figures 6.3.1-1 and 6.2.1-1.  *Id*. at 41.  Thus, NSN

has provided sufficient evidence and argument at this stage that shows

"receiving . . . an update packet data protocol (PDP) context request from

the core network control plane" and "updating . . . a corresponding PDP

context according to the update PDP context request" as recited in claim 1.

Pet. 38–42.

IPR2017-00588
Patent 8,867,339 B2

In sum, NSN provides evidence and argument that the cited prior art teaches or suggests the limitations for the challenged claims, grouping similar claim limitations together.  Pet. 32–53.

Patent Owner contends that NSN's proposed combinations fail to provide a GGSN that preserves the PDP context as required in all the challenged claims, because TR 23.809 describes the GGSN as marking the PDP context as invalid and the Ericsson Submission does not cure this deficiency.  Prelim. Resp. 20–24.  On this record, we are not persuaded by Patent Owner's contentions, which discuss TR 23.809 and the Ericsson Submission separately and do not address what the references in combination teach a person of ordinary skill in the art.  *Id.*  Although TR 23.809 discusses marking the PDP as invalid and the Ericsson Submission shows the SGSN is involved in updating the PDP (Prelim. Resp. 22–23), NSN relies on the combination of the processes in these references, describing how the Ericsson Submission modifies the operation of TR 23.809 using the GGSN to update PDP context responses via the SGSN (Pet. 41–42 (citing Ex. 1005, Figs 6.2.1-1, 6.32.1-1)).  On this record, NSN has provided sufficient evidence and argument to show a reasonable likelihood of demonstrating that TR 23.809 and the Ericsson Submission together teach a GGSN preserving the PDP context.

On this record, NSN has adequately shown, at this stage of the proceeding, that the combination of TR 23.809 and the Ericsson Submission teaches each of the limitations of the challenged claims sufficient to carry its burden.  Based on the record, NSN has provided sufficient evidence and argument showing that there is a reasonable likelihood that it would prevail

14

IPR2017-00588
Patent 8,867,339 B2

in demonstrating the unpatentability of claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent as obvious over TR 23.809 and the Ericsson Submission.

### D. Obviousness based on TR 23.873 and the Ericsson Submission

NSN contends that the combination of TR 23.873 and the Ericsson Submission teaches or suggests the limitations of claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent.  Pet. 53–75 (citing Ex. 1003 ¶¶ 176–210).

### 1. TR 23.873 (Ex. 1007)

TR 23.873 is a 3GPP feasibility study on "how to introduce a clear separation of transport and control functions in the PS CN domain." Ex. 1007 § 1.  TR 23.873 describes a "One Tunnel approach [that] separates transport and control functionality of the SGSN."  *Id.* § 7.1.  Although related to TR 23.809, TR 23.873 is an earlier specification that describes certain functions of the SGSN are divided between two different entities— an SGSN controller (cSGSN) performing all control functions of an SGSN and an enhanced GGSN (xGGSN), which performs SGSN and GGSN transport functionality.  *Id.*

### 2. Analysis

NSN provides a limitation-by-limitation analysis showing where the combination of TR 23.873 and the Ericsson Submission teaches the limitations of the challenged claims.  Pet. 55–75.  NSN provides articulated reasons with rational underpinnings to justify the legal conclusion of obviousness.  *See KSR Int'l*, 550 U.S. at 418; Pet. 53–55 (citing Ex. 1003 ¶¶ 176–177).  NSN contends that a person of ordinary skill in the art would have applied the Ericsson Submission as it teaches the removal of the SGSN from the user plane in a One Tunnel scheme creates issues with error

15

IPR2017-00588
Patent 8,867,339 B2

recovery. Ex. 1003 ¶¶ 176–177. NSN argues that it would have been obvious for a person of ordinary skill in the art to use the error recovery proposed in the Ericsson Submission with One Tunnel connections such as those disclosed in TR 23.873. *Id*.; Pet. 54.

We are not persuaded by Patent Owner's argument that the purpose or operation of the One Tunnel system of TR 23.873 would be thwarted by the modification of that system by the Ericsson Submission. Prelim. Resp. 34–37. On this record, we do not find Patent Owner's contention that the proposed combination produces increased demands on the cSGSN indicates that the combination would contradict or destroy the stated purpose of the One Tunnel architecture. *Id*. at 35–37. Petitioner has provided sufficient evidence and argument that using the disclosure of the Ericsson Submission to modify the tunneling approach in TR 23.873 is a substitution of a known error recovery method intended for use with the 3GPP working group development of a One Tunnel approach. Pet. 53–54.

In addition, we disagree with Patent Owner that NSN has not shown that a person of skill in the art would have been motivated to combine TR 23.873 with the Ericsson Submission. Prelim. Resp. 37–43. NSN has provided testimony and argument that the Ericsson Submission was purposefully written and submitted to revise the error recovery methods of the One Tunnel scheme of TR 23.873. Pet. 54 (citing Ex. 1003 ¶ 177).

Patent Owner also argues that the combination of TR 23.873 and the Ericsson Submission does not disclose the "updating" limitations of the challenged claims. Prelim. Resp. 32–34. In sum, Patent Owner argues that TR 23.873 is silent on error handling and the Ericsson Submission lacks sufficient detail to show that the GGSN performs the updating limitations as

IPR2017-00588
Patent 8,867,339 B2

required in the challenged claims. *Id.* On this record, we disagree with Patent Owner. Patent Owner argues the references separately and does not address the combined teaching of the references as understood by an ordinarily skilled artisan. We find that NSN provides sufficient argument and evidence at this stage of the proceeding to establish that applying the Ericsson Submission to the One Tunnel approach in TR 23.873 would incorporate error recovery procedures and the required updating limitation. Pet. 58–60.

Based on the record before us, NSN provides sufficient evidence and argument to show that the One Tunnel connection disclosed in TR 23.873, in combination with the error handling in the Ericsson Submission, teaches the limitations of the challenged claims. Pet. 55–73. NSN provides citations to the prior art and declarant illustrating where the limitations of the challenged claims are disclosed in TR 23.873 and the Ericsson Submission. *Id.*

Based on the foregoing, we find that NSN demonstrates a reasonable likelihood of prevailing in its challenge of claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent based on the combination of TR 23.873 and the Ericsson Submission.

## III.    CONCLUSION

For the foregoing reasons, we are persuaded that Petitioner has shown a reasonable likelihood of prevailing in demonstrating that claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent are unpatentable.

At this stage of the proceeding, we have not made a final determination as to any factual or legal determination with respect to patentability of these challenged claims.

17

IPR2017-00588
Patent 8,867,339 B2

## IV.   ORDER

Accordingly, it is:

ORDERED that pursuant to 35 U.S.C. § 314, an *inter partes* review is hereby instituted as to claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent on the following grounds of unpatentability raised in the Petition:

Claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent as obvious over TR 23.809 and the Ericsson Submission;

Claims 1, 3–5, 7–9, 11–14, and 16 of the '339 patent as obvious over TR 23.873 and the Ericsson Submission;

FURTHER ORDERED that *inter partes* review is commenced on the entry date of this Order, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial;

FURTHER ORDERED that the parties shall address in accordance with Section II.A.2, in the Patent Owner Response and Petitioner's Reply thereto, whether the "unit" limitations of claims 9 and 11 are means-plus-function limitations pursuant to 35 U.S.C. § 112, paragraph 6; and

FURTHER ORDERED that the trial is limited to the grounds of unpatentability listed above, and no other grounds of unpatentability are authorized for *inter partes* review.

IPR2017-00588
Patent 8,867,339 B2

For PETITIONER:

Benjamin Pleune
ben.pleune@alston.com

Scott Stevens
scott.stevens@alston.com

John Haynes
john.haynes@alston.com

Robert Caison
robert.caison@alston.com

J. Ravindra Fernando
ravi.fernando@alston.com

Christopher Douglas
christopher.douglas@alston.com

Derek Neilson
derek.neilson@alston.com

Ross Barton
ross.barton@alston.com

Samuel Merritt
sam.merritt@alston.com

IPR2017-00588
Patent 8,867,339 B2

For PATENT OWNER:

David Hoffman
hoffman@fr.com

W. Karl Renner
axf-ptab@fr.com

Roberto Devoto
devoto@fr.com

Jeremy Monaldo
jjm@fr.com

Craig Deutsch
deutsch@fr.com

Richard A. Sterba
sterba@fr.com

David Conrad
conrad@fr.com

Ricardo Bonilla
rbonilla@fr.com