# EXHIBIT B

Trials@uspto.gov                                              Paper No. 9
571-272-7822                                     Entered:  July 28, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

NOKIA SOLUTIONS AND NETWORKS US LLC, and
NOKIA SOLUTIONS AND NETWORKS OY,
Petitioner,

v.

HUAWEI TECHNOLOGIES CO. LTD.,
Patent Owner.
_____

Case IPR2017-00695
Patent 9,235,462 B2
_____

Before JENNIFER MEYER CHAGNON,
MICHELLE N. WORMMEESTER, and CHRISTA P. ZADO,
*Administrative Patent Judges*.

CHAGNON, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
37 C.F.R. § 42.108

IPR2017-00695
Patent 9,235,462 B2

## I.  INTRODUCTION

Nokia Solutions and Networks US LLC, and Nokia Solutions and Networks Oy (collectively, "Petitioner")[1] filed a Petition for *inter partes* review of claims 14, 15, and 17–24 ("the challenged claims") of U.S. Patent No. 9,235,462 B2 (Ex. 1001, "the '462 patent").  Paper 3[2] ("Pet.").  Petitioner relies on the Declarations of Mark R. Lanning (Ex. 1003) and Balazs Bertenyi (Ex. 1004) to support its positions.  Huawei Technologies Co. Ltd. ("Patent Owner") filed a Preliminary Response.  Paper 8 ("Prelim. Resp.").

We have authority to determine whether to institute *inter partes* review.  *See* 35 U.S.C. § 314(b); 37 C.F.R. § 42.4(a).  Upon consideration of the Petition and the Preliminary Response, and for the reasons explained below, we determine that the information presented shows a reasonable likelihood that Petitioner would prevail with respect to all of the challenged claims.  *See* 35 U.S.C. § 314(a).  Accordingly, we institute trial as to claims 14, 15, and 17–24 of the '462 patent.

### A.  *Related Proceedings*

The parties indicate that the '462 patent is the subject of the following ongoing district court proceeding:  *Huawei Techs. Co. v. T-Mobile US, Inc.*, Case No. 2:16-cv-00052 (E.D. Tex.).  Pet. 1; Paper 7, 2.

---

[1] Petitioner identifies T-Mobile USA, Inc. and T-Mobile US, Inc. as additional real parties-in-interest.  Pet. 1.

[2] We note that the Petition has been filed twice, as Paper 1 and Paper 3.  The version filed as Paper 1 appears to be identical to the version filed as Paper 3, absent counsel's signature, which appears on Paper 3.  For clarity of the record, we expunge Paper 1.

IPR2017-00695
Patent 9,235,462 B2

### B. The '462 Patent

The '462 patent is titled "Tunnel Management Method, Tunnel Management Apparatus, and Communications System," and was filed as U.S. application No. 14/228,825 on March 28, 2014. Ex. 1001, at [21], [22], [54]. The '462 patent claims priority, via a chain of continuation applications, to application PCT/CN2009/072007, filed on May 26, 2009. *Id.* at [63]. The '462 patent also claims priority to Chinese application No. CN 2008 1 0132421, filed July 16, 2008. *Id.* at [30].

The '462 patent relates to "the field of communications network technologies, and in particular, to a tunnel management method, a tunnel management apparatus, and a communications system in a communications network." *Id.* at 1:18–21. Specifically, the '462 patent describes a method and system in which

> the response message received by the initiating node includes node information and[, therefore,] the initiating node can find the node that causes failure of a tunnel management request according to the node information, [and] even if the tunnel management node further sends the tunnel management request to a remote node, the initiating node is able to distinguish whether the tunnel management request failure is caused by the tunnel management node or the remote node according to the node information.

*Id.* at 2:48–56. As described in the '462 patent, the "tunnel management node receives the tunnel management request from the initiating node and performs appropriate processing, and sends a response that includes a cause value indicating success or failure of the tunnel management request to the initiating node. The response message returned after processing failure also includes node information," that can be used to "find[] the node that causes the tunnel management request failure." *Id.* at 4:12–20.

IPR2017-00695
Patent 9,235,462 B2

*C.  Illustrative Claim*

Of the challenged claims, claim 14 is independent.  Claims 15 and 17–24 depend, directly or indirectly, from claim 14.  Independent claim 14 is reproduced below, and is illustrative of the challenged claims.

> 14.  A communication system, comprising:
>
> a first node; and
>
> a tunnel management node,
>
> wherein:
>
> the first node is configured to send a tunnel management request to the tunnel management node; and
>
> the tunnel management node is configured to send a response message responsive to the tunnel management request to the first node,
>
> wherein the response message includes a fault indication indicating which node of the tunnel management node and a second node caused a fault.

Ex. 1001, 17:46–18:9.

*D.  The Applied References*

Petitioner relies on the following references in the asserted grounds. Pet. 3.

3GPP, *Technical Specification Group Core Network and Terminals; 3GPP Evolved Packet System; Evolved GPRS Tunneling Protocol of EPS (GTPv2); Stage 3 (Release 8) (3GPP TS 29.274 V0.3.0)*, (May 2008) (Ex. 1008, "TS 29.274");

3GPP, *Technical Specification Group Services and System Aspects; General Packet Radio Service (GPRS) enhancements for Evolved Universal*

IPR2017-00695
Patent 9,235,462 B2

*Terrestrial Radio Access Network (E-UTRAN) access (Release 8) (3GPP TS 23.401 V8.1.0)*, (March 2008) (Ex. 1007, "TS 23.401");

U.S. Patent No. 6,785,243 B2, issued August 31, 2004, to Åberg (Ex. 1009, "Åberg"); and

U.S. Patent No. 8,531,976 B2, issued September 10, 2013 to Vasseur et al. (Ex. 1010, "Vasseur").

### E. The Asserted Grounds

Petitioner challenges claims 14, 15, and 17–24 as having been obvious under 35 U.S.C. § 103(a) in view of the following two combinations of references (Pet. 3, 34–64):

TS 29.274, TS 23.401, and Åberg; and

TS 29.274, TS 23.401, and Vasseur.

## II.   ANALYSIS

### A. Claim Construction

In an *inter partes* review, claim terms in an unexpired patent are given their broadest reasonable construction in light of the specification of the patent in which they appear. *See* 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs. LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016) (upholding the use of the broadest reasonable interpretation standard). Under the broadest reasonable construction standard, claim terms generally are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire disclosure. *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). The claims, however, "'should always be read in light of the specification and teachings in the

IPR2017-00695
Patent 9,235,462 B2

underlying patent,'" and "[e]ven under the broadest reasonable interpretation, the Board's construction 'cannot be divorced from the specification and the record evidence.'" *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015) (citations omitted).  Further, any special definition for a claim term must be set forth in the specification with reasonable clarity, deliberateness, and precision.  *See In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).  In the absence of such a definition, however, limitations are not to be read from the specification into the claims.  *In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993).

Petitioner asserts that "[e]ach term is . . . entitled to its plain and ordinary meaning to a [person of ordinary skill in the art]."  Pet. 28.  Patent Owner does not propose construction for any claim terms.  *See generally* Prelim. Resp.  Upon review of the parties' contentions and supporting evidence, we determine no issue in this Decision requires express construction of any claim terms.  *See, e.g.*, *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011) ("[C]laim terms need only be construed 'to the extent necessary to resolve the controversy.'") (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).  Accordingly, for purposes of this Decision, we do not provide any express claim construction.

## B.  Principles of Law

A claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406

IPR2017-00695
Patent 9,235,462 B2

(2007).  The question of obviousness is resolved on the basis of underlying factual determinations including:  (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness.[3]  *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

In that regard, an obviousness analysis "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ."  *KSR*, 550 U.S. at 418; *accord In re Translogic Tech., Inc.*, 504 F.3d 1249, 1259 (Fed. Cir. 2007).  A prima facie case of obviousness is established when the prior art, itself, would appear to have suggested the claimed subject matter to a person of ordinary skill in the art.  *See In re Rinehart*, 531 F.2d 1048, 1051 (CCPA 1976).

We analyze the asserted grounds of unpatentability in accordance with these principles.

### C.  Level of Ordinary Skill in the Art

Petitioner asserts that a person of ordinary skill in the art "would have had a Bachelor's degree in Electrical Engineering, Computer Science, or Computer Engineering with 2 to 3 years of experience in the cellular telecommunications industry, including experience with operating or implementing [Third Generation Partnership Project (3GPP)] networks.  Additional education might substitute for some of the experience, and substantial experience might substitute for some of the educational

_____

[3] At this stage of the proceeding, the parties have not directed our attention to any objective evidence of non-obviousness.

7

IPR2017-00695
Patent 9,235,462 B2

background." Pet. 34 (citing Ex. 1003 ¶ 18). Patent Owner does not address the level of ordinary skill in the art in its Preliminary Response. For purposes of this Decision, we adopt Petitioner's proposal regarding the level of ordinary skill in the art. The level of ordinary skill in the art further is reflected by the prior art of record. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001); *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995); *In re Oelrich*, 579 F.2d 86, 91 (CCPA 1978).

### D. Asserted Obviousness in View of TS 29.274, TS 23.401, and Åberg

Petitioner asserts that claims 14, 15, and 17–24 are unpatentable under 35 U.S.C. § 103(a) as obvious in view of TS 29.274, TS 23.401, and Åberg. Pet. 34–56. Patent Owner presents arguments against institution on this ground. *See* Prelim. Resp. 7–21. We have reviewed the parties' contentions and supporting evidence. Given the evidence on this record, and for the reasons explained below, we determine that the information presented shows a reasonable likelihood that Petitioner would prevail on this asserted ground.

### 1. Summary of TS 29.274 (Ex. 1008)

TS 29.274 is a Technical Specification produced by a working group of 3GPP. Ex. 1008, Forward. TS 29.274 "specifies the stage 3 of the GPRS Tunnelling Protocol, Version 2 for Evolved Packet System interfaces." *Id.* § 1. TS 29.274 describes details regarding tunnel management messages in the communication system. *See id.* § 7.2 *et seq.*

### 2. Summary of TS 23.401 (Ex. 1007)

TS 23.401 is a Technical Specification produced by a working group of 3GPP. Ex. 1007, Forward. TS 23.401 addresses enhancements to the

IPR2017-00695
Patent 9,235,462 B2

existing General Packet Radio Service (GPRS) network to support access to the E-UTRAN network, and "covers both roaming and non-roaming scenarios and . . . all aspects, including mobility between E-UTRAN and pre-E-UTRAN 3GPP radio access technologies, policy control and charging, and authentication." *Id.* § 1.

Figure 4.2.1-1 of TS 23.401 is reproduced below.



**Figure 4.2.1-1: Non-roaming architecture for 3GPP accesses**

Figure 4.2.1-1, reproduced above, illustrates a mobility management entity (MME), a serving gateway (S-GW), and a PDN gateway (P-GW) in communication with each other in a communications system. *Id.* §§ 4.4.1, 4.5; *see id.* §§ 4.4.2, 4.4.3, 4.4.4.

### 3. *Summary of Åberg (Ex. 1009)*

Åberg describes a "method of reporting errors in a mobile telecommunications network." Ex. 1009, at [57].  The method includes: "generating an error message at an error originating entity" (i.e., a node), "sending the error message to an error destination," and "incrementing a distance counter contained in or accompanying the error message at each intermediate entity through which the error message passes." *Id.*  According

9

IPR2017-00695
Patent 9,235,462 B2

to Åberg, the "error destination entity is able to identify the error originating entity on the basis of the value of the distance counter contained in or accompanying the received error message." *Id.*

### 4. *Analysis*

Petitioner relies on TS 29.274 and TS 23.401 as teaching the elements of the claimed "communication system"—the "first node" and the "tunnel management node" (*see* Pet. 36–39)—as well as the recited "tunnel management request" and "response message responsive to the tunnel management request" (*see id.* at 39–43).  We have reviewed Petitioner's arguments and evidence with respect to these features of a communication system and are persuaded that TS 29.274 and TS 23.401 teach or suggest each of these limitations.  *See* Pet. 36–43 (citing Ex. 1003 ¶¶ 76, 144, 146–147, 149–150, 155, 158–176, 179–188; Ex. 1008 §§ 1, 2, 7.2 *et seq.*; Ex. 1007 §§ 1, 4.2.1, 4.4.2, 4.4.3, 4.4.4, 4.5, 5.3.2.1, 5.4.1, 5.10.2; Ex. 1001, 1:39–53, 5:45–46, 7:29–30, 9:41–43, 10:49–50, 12:3–4).

According to Petitioner, TS 29.274 provides an express suggestion to refer to TS 23.401 in implementing the system of TS 29.274, as it is cited as a background reference in TS 29.274 and the "references are explicitly intended to be read and considered together."  Pet. 34–35 (citing Ex. 1003 ¶¶ 135–136).  Further, Mr. Lanning testifies that "[t]he combination of these prior art references would require nothing more than the knowledge or common sense of a [person of ordinary skill in the art] using known methods to yield predictable results in this field of technology."  Ex. 1003 ¶ 137; Pet. 35.  We find Petitioner has presented sufficient evidence at this stage of the proceeding that one of skill in the art would have looked to these references in the manner asserted by Petitioner.

IPR2017-00695
Patent 9,235,462 B2

To meet the final limitation recited in claim 14—"wherein the response message includes a fault indication indicating which node of the tunnel management node and a second node caused a fault"—Petitioner points additionally to Åberg. Pet. 43–49. Petitioner argues that TS 29.274 discloses a "Cause Information Element (IE)" or "Cause IE" included in the tunnel management response message. *Id.* at 44 (citing Ex. 1008 § 9.1). According to TS 29.274, "[t]he Cause value shall be included in the response message. In a response message, the Cause value indicates the acceptance or rejection of the corresponding request message. The Cause value shall indicate the explicit reason for the rejection." Ex. 1008 § 9.4. Petitioner argues that "[b]ecause TS 29.274 [] was a working draft, the specific Cause values had not yet been filled in. But section 9.4 explicitly states that '[t]he Cause value shall indicate the explicit reason for the rejection.'" Pet. 45 (citing Ex. 1003 ¶ 194). Petitioner further contends, relying on testimony from Mr. Lanning, that

> The Cause IE [of TS 29.274] conveyed information about <u>why</u> an error occurred, and a [person of ordinary skill in the art] would appreciate that the Cause IE should also convey information about <u>where</u> an error occurred—in other words, fault isolation information. What had not yet been decided in TS 29.274 V0.3.0, however, was the specific manner of conveying such information.

Pet. 36 (quoting Ex. 1003 ¶ 140); *see also* Ex. 1003 ¶¶ 81–88 (discussing the "well-known concept of fault isolation and fault management" in more detail).

Petitioner points to Åberg as teaching "the use of specific fault isolation information that could easily be transferred to the [various nodes] in the . . . network." Pet. 36 (quoting Ex. 1003 ¶ 141). According to

11

IPR2017-00695
Patent 9,235,462 B2

Mr. Lanning, "'[s]uch fault isolation information could easily be added to TS 29.274[]'s existing tunnel management response messages.'" *Id.* (quoting Ex. 1003 ¶ 141). According to Petitioner, "Åberg teaches a method of fault reporting while establishing a tunnel . . . that [includes] an 'error distance' indication integrated into a message containing a 'Cause value.'" *Id.* at 46–47 (citing Ex. 1009, 2:9–25, Fig. 3).

In Åberg, this "error distance" "identifies the distance (from the receiving entity) to the entity reporting the abnormal event." Ex. 1009, 4:17–20. In one embodiment of Åberg, the "error distance" is determined by a distance counter that is incremented as the error message passes through the nodes/entities. *Id.* at 4:20–29. According to Åberg, the "error destination entity is able to identify the error originating entity on the basis of the value of the distance counter contained in or accompanying the received error message." *Id.* at 2:35–38. Åberg also identifies an alternative to the distance counter in which "a code may be incorporated which identifies the source of the error." *Id.* at 5:11–13.

Patent Owner argues that Åberg fails to disclose the claimed "response message" because, "at best, the distance counter [of Åberg] indicates a group of nodes in which the error-causing node resides." Prelim. Resp. 7; *see id.* at 8–13. Patent Owner also argues that Petitioner has not provided sufficient evidence that one of skill in the art would have been motivated to combine the references in the manner asserted by Petitioner. *See id.* at 16–21. Patent Owner, however, has not, at this stage of the proceeding, produced persuasive evidence to rebut Mr. Lanning's testimony, which we credit based on the record now before us, that independent claim 14 would have been obvious to a person of ordinary skill in the art,

IPR2017-00695
Patent 9,235,462 B2

and that one of skill in the art would have combined the references in the asserted manner. *See also Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997) ("[A]rguments of counsel cannot take the place of evidence lacking in the record."). Accordingly, we are persuaded that Petitioner has shown a reasonable likelihood of demonstrating that the asserted combination renders obvious independent claim 14.

Petitioner also provides arguments and evidence as to how each of dependent claims 15 and 17–24 is taught or suggested by the cited combination of TS 29.274, TS 23.401, and Åberg, and again relies upon Mr. Lanning's testimony. *See* Pet. 49–56. At this stage of the proceeding, Patent Owner has not yet substantively addressed claims 15 and 17–24, apart from its arguments with respect to the independent claim, which we have addressed above. We are persuaded, on the record now before us, that Petitioner has shown sufficiently for purposes of this Decision that the combination of TS 29.274, TS 23.401, and Åberg teaches or suggests all of the limitations of claims 15 and 17–24, and has articulated sufficient reasoning why it would have been obvious to combine these references in the proposed manner. We, thus, are persuaded that Petitioner has demonstrated a reasonable likelihood of succeeding in showing that the combination of TS 29.274, TS 23.401, and Åberg renders obvious claims 15 and 17–24.

### E.  Asserted Obviousness in View of TS 29.274, TS 23.401, and Vasseur

Petitioner asserts that claims 14, 15, and 17–24 are unpatentable under 35 U.S.C. § 103(a) as obvious in view of TS 29.274, TS 23.401, and

IPR2017-00695
Patent 9,235,462 B2

Vasseur.[4]  Pet. 56–64.  Patent Owner presents arguments against institution on this ground.  *See* Prelim. Resp. 22–35.  We have reviewed the parties' contentions and supporting evidence.  Given the evidence on this record, and for the reasons explained below, we determine that the information presented does not show a reasonable likelihood that Petitioner would prevail on this asserted ground.

### 1. *Summary of Vasseur (Ex. 1010)*

Vasseur describes a method of locating a tunnel failure in a computer network.  Ex. 1010, at [54].  Figure 6 of Vasseur is reproduced below.



FIG. 6

---

[4] Patent Owner argues that Petitioner's "purported statutory basis for finding Vasseur to be prior art both fail."  Prelim. Resp. 25.  According to Patent Owner, Vasseur is not prior art under either 35 U.S.C. § 102(a) or 102(b). *Id.* at 25–26.  Vasseur, however, is prior art under 35 U.S.C. § 102(e), even considering the earliest possible priority date for the '462 patent. Accordingly, we exercise our discretion and substantively consider this asserted ground in this Decision.

IPR2017-00695
Patent 9,235,462 B2

Figure 6, reproduced above, illustrates "an example computer network having connectivity verification protocol sessions." *Id.* at 1:62–63. "In Vasseur's fault detection technique, each of nodes A, B, C, and D are responsible for monitoring the status of the next hop node *and* the next-next-hop ('NNHOP') node." Pet. 60–61 (emphasis in original); *see* Ex. 1010, 9:54–10:6, Fig. 6. When a node detects a failure in either the next hop node or the NNHOP node, it relays fault isolation information back to the control node. Ex. 1010, 10:17–49. "Once the failure location is determined (e.g., node D), the head-end node A may remove node D (and its local links) from its [Traffic Engineering database (TED)] 248, and may recompute a new tunnel path excluding the path segment corresponding to the particular failed tunnel connectivity verification session (i.e., the failure location)." *Id.* at 11:22–27.

2. *Analysis*

Petitioner again relies on TS 29.274 and TS 23.401 as teaching the elements of the claimed "communication system"—the "first node" and the "tunnel management node," as well as the recited "tunnel management request" and "response message responsive to the tunnel management request." *See* Pet. 58 (referring back to previous discussion of these claim elements in the ground including Åberg). Petitioner also relies on the same evidence regarding reasons to combine TS 29.274 and TS 23.401. *See id.* at 56 (referring back to previous discussion).

To meet the final limitation recited in claim 14—"wherein the response message includes a fault indication indicating which node of the tunnel management node and a second node caused a fault"—Petitioner

15

IPR2017-00695
Patent 9,235,462 B2

points additionally to Vasseur.  Pet. 58–62.  Petitioner contends, relying on

testimony from Mr. Lanning, that

> The Cause IE [of TS 29.274] conveyed information about <u>why</u> an error occurred, and a [person of ordinary skill in the art] would appreciate that the Cause IE should also convey information about <u>where</u> an error occurred—in other words, fault isolation information.  What had not yet been decided in TS 29.274 V0.3.0, however, was the specific manner of conveying such information.

> Likewise, Vasseur taught that it is important to locate faulty nodes in order to "prune" them from a tunnel.

*Id.* at 57 (quoting Ex. 1003 ¶¶ 241–242).  Petitioner points to Vasseur as

teaching that a control node, responsible for selecting the pathway for a

tunnel, "must have specific information about where [a tunnel] failure

occurred."  *Id.* at 59–60 (citing Ex. 1010, 3:11–19, 5:4–22, 6:40–43, 8:1–28,

Fig. 1).  This information allows the control node to avoid only the node that

caused the failure, rather than avoiding the entire tunnel.  *Id.* at 60 (citing

Ex. 1010, 8:1–28).  The fault isolation and management techniques of

Vasseur are described above.

> Petitioner asserts that:

> Though directed at generic "nodes," Vasseur taught the use of specific fault isolation information that could easily be transferred to almost any networked node.  Thus, the fault isolation and management techniques of Vasseur were easily transferred to the MME, S-GW, and P-GW in the 4G LTE packet-switched core network.  Such fault isolation information could easily be added to TS 29.274 V0.3.0's existing tunnel management response messages.

Pet. 57 (quoting Ex. 1003 ¶ 243).  Petitioner admits, however, that

> One difference between Claim 14 and Vasseur is that the former requires the tunnel management (*i.e.*, sending) node to indicate "which node of [a] tunnel management node and a

16

IPR2017-00695
Patent 9,235,462 B2

> second node caused a fault." In other words, the sending (*e.g.*,
> node C) node can indicate that it caused a fault. But in Vasseur
> the sending node can only indicate which of two other nodes
> (*e.g.*, node D or node E) caused a fault.

*Id.* at 62. Petitioner asserts, relying on testimony from Mr. Lanning,

"it would be trivial to modify Vasseur to allow the sending node to indicate

that it caused a fault." *Id.* (quoting Ex. 1003 ¶ 311).

Patent Owner argues that Vasseur fails to disclose the claimed

"response message" and Petitioner does not "set forth a reason why a person

of ordinary skill in the art would want to make [this proposed] change

[to Vasseur.]" Prelim. Resp. 22–24. We agree with Patent Owner.

Petitioner has not provided any argument or evidence regarding why one of

skill in the art would modify Vasseur in this manner, nor that such a

modification would be "trivial." *See* 37 C.F.R. §42.65(a) ("Expert testimony

that does not disclose the underlying facts or data on which the opinion is

based is entitled to little or no weight.").

Accordingly, we are not persuaded that Petitioner has shown a

reasonable likelihood of demonstrating that the asserted combination renders

claim 14 obvious. As claims 15 and 17–24 depend from claim 14, and

Petitioner has not provided separate arguments that would overcome the

shortcomings with respect to claim 14, we also determine that Petitioner has

not demonstrated a reasonable likelihood of prevailing in showing that these

dependent claims would have been obvious over the same references.

III.   CONCLUSION

As discussed above, we institute an *inter partes* review of claims 14,

15, and 17–24 of the '462 patent. At this preliminary stage in the

IPR2017-00695
Patent 9,235,462 B2

proceeding, we have not made a final determination with respect to the patentability of any challenged claim or the construction of any claim term.

IV.  ORDER

Accordingly, it is

ORDERED that pursuant to 35 U.S.C. § 314(a), an *inter partes* review is hereby instituted as to claims 14, 15, and 17–24 of U.S. Patent No. 9,235,462 B2 on the following ground:

Whether claims 14, 15, and 17–24 would have been obvious under 35 U.S.C. § 103(a) in view of TS 29.274, TS 23.401, and Åberg;

FURTHER ORDERED that no other ground of unpatentability is authorized for this *inter partes* review;

FURTHER ORDERED that Paper 1 is expunged from the record; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; the trial will commence on the entry date of this decision.

IPR2017-00695
Patent 9,235,462 B2

PETITIONER:

S. Benjamin Pleune
Ross R. Barton
Samuel C. Merritt
John D. Haynes
Scott Stevens
Robert J. Caison
J. Ravindra Fernando
Christopher Douglas
Derek S. Neilson
Michael Deane
ALSTON & BIRD
ben.pleune@alston.com
ross.barton@alston.com
sam.merritt@alston.com
john.haynes@alston.com
scott.stevens@alston.com
robert.caison@alston.com
ravi.fernando@alston.com
christopher.douglas@alston.com
derek.neilson@alston.com
Michael.deane@alston.com


PATENT OWNER:

Robert Devoto
W. Karl Renner
Jeremy Monaldo
Andrew Patrick
Ayan Roy-Chowdhury
Richard A. Sterba
Brian G. Strand
FISH & RICHARDSON P.C.
devoto@fr.com
AXF-PTAB@fr.com
jjm@fr.com
patrick@fr.com
roy-chowdhury@fr.com

IPR2017-00695
Patent 9,235,462 B2

sterba@fr.com
strand@fr.com