**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO. LTD.,**<br><br>　Plaintiff,<br><br>　v.<br><br>**T-MOBILE US, INC. and<br>T-MOBILE USA, INC.,**<br><br>　Defendants,<br><br>**NOKIA SOLUTIONS AND NETWORKS US LLC, NOKIA SOLUTIONS AND NETWORKS OY, TELEFONAKTIEBOLAGET LM ERICSSON, and ERICSSON INC.,**<br><br>　Intervenors. | Civil Action No. 2:16-cv-00052-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**HUAWEI'S OPPOSITION TO T-MOBILE'S
MOTION FOR SUMMARY JUDGMENT OF
<u>INELIGIBILITY OF U.S. PATENT NOS. 8,069,365 AND 8,719,617</u>**

...

- i -

## TABLE OF CONTENTS

I. RESPONSE TO STATEMENT OF ISSUES .................................................................. 1

II. RESPONSE TO STATEMENT OF UNDISPUTED FACTS ....................................... 2

III. LEGAL STANDARDS .................................................................................................. 5
    A. Summary Judgment Standard ............................................................................. 5
    B. Law of Patent Eligibility ..................................................................................... 5

IV. ARGUMENT ................................................................................................................. 7
    A. The Asserted Claims are directed to a specific improvement in the operation of IMS networks, not an abstract idea. ............................................... 7
    B. The '365 and '617 Patents' limitations reflect a non-generic, non-conventional ordered combination of elements. .................................................10

V. CONCLUSION .............................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) .................................................................................................5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) .................................................................................................... *passim*

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .....................................................................................................................5

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) .........................................................................................6, 7, 11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ...............................................................................................6, 8

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980) .....................................................................................................................5

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) .........................................................................................6, 7, 8

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) .................................................................................................6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) .................................................................................................................6, 12

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) .........................................................................................6, 9, 12

*Preferential Networks, Inc. v. AT&T Mobility, LLC*,
    No. 2:16-cv-1374, Dkt. No. 44 (E.D. Tex. July 15, 2017) ...........................................6, 9, 10

*Trading Techs. Int'l, Inc., v. CGQ, Inc.*,
    675 Fed. Appx. 1001 (Fed. Cir. 2017) ..................................................................................6, 9

*Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*,
    227 F. Supp. 3d 582 (E.D. Va. 2017) ......................................................................................12

**Statutes**

35 U.S.C. § 101 ................................................................................................................ *passim*

**Other Authorities**

FED. R. CIV. P. 56(a) ................................................................................................................5

The Asserted Claims of the '365 and '617 Patents are directed to a particular invention for how IMS networks recover when an IMS network node fails. The Asserted Claims are directed to improvements in existing IMS network procedures and are addressed to and resolve a specifically-identified problem in the prior art. In particular, prior art recovery procedures in IMS networks involved the use of registration timer cycles, which meant that in the event of a failure or reset of an S-CSCF node, the user would experience service interruption until the timer cycle completed and a new registration could be attempted. The Asserted Claims are directed to a solution for this particular problem by having the S-CSCF, upon receiving a user registration, back up the data necessary for restoring a session. Then, if the S-CSCF fails, the IMS network has the information and capability to re-assign a new S-CSCF, pass the necessary data to that S-CSCF, and maintain the user's session without interruption.

Thus, the invention of the Asserted Claims is a specific improvement to the operation of computer technology, not a law of nature, natural phenomenon, or abstract idea. Accordingly, the Asserted Claims are patent eligible under 35 U.S.C. § 101 because they claim specific technological modifications to solve a problem and improve the functioning of a known system (i.e., IMS networks). Reviewing the claims as an ordered combination reveals an unconventional arrangement of network elements and signaling that amounts to significantly more than any abstract idea. Therefore, the Court should deny T-Mobile's motion.

## I. RESPONSE TO STATEMENT OF ISSUES

The Asserted Claims of the '365 and '617 Patents are directed to a particular improvement in how IMS networks recover in the event of a failure in a particular network node. Are the Asserted Claims directed to an abstract idea and therefore ineligible for patenting under 35 U.S.C. § 101 when they are directed to specific improvements in the operation of IMS networks?

## II.      RESPONSE TO STATEMENT OF UNDISPUTED FACTS

T-Mobile's statement of undisputed facts accurately states facts that are not in dispute. (*See* Mot. at 1-4.) Its technology background section, however, is incomplete and littered with misleading references to "known" technology. (*See* Mot. at 4-7.)

The '365 Patent "relates to a mobile communication technology, and more particularly to a method, system, and device for recovering an invalid downlink data tunnel for a user plane between an access network and a core network." '365 Patent at 1:18-21. The '617 Patent covers similar technology and "relates to a network disaster tolerance technique, and more particularly, to a method and a device for realizing an Internet protocol (IP) multimedia subsystem (IMS) disaster tolerance." '617 Patent at 1:20-23. In particular, these patents are directed to aspects of the Call Session Control Function ("CSCF") and the Home Subscriber Server (HSS) nodes. (*See* Mot. Ex. C at ¶ 62 [hereinafter, "Nettleton Rep."].)

The CSCF is a collection of certain functionalities that can be implemented via hardware or software executing on one or more hardware devices. (*Id.* at ¶ 63.) It is responsible for the signaling that controls the communication of IMS user equipment ("UE") with IMS-enhanced services across different network accesses and domains. (*Id.*) The CSCF controls the call session establishment and teardown, as well as user authentication, network security, and quality of service. (*Id.*) To ease its integration with the Internet, the CSCF uses the commonly-implemented Session Initiation Protocol (SIP) for signaling and controlling multimedia communication sessions such as video and voice calls. (*Id.*) The HSS, as described above, stores subscriber information and communicates with other nodes to support network access and billing. (*Id.*)

There are three types of CSCF nodes. (*Id.* at ¶ 64.) The Proxy CSCF (P-CSCF) is the first point of contact between a UE and the IMS network. '365 Patent at 1:36-40. All SIP requests and responses to and from the UE pass through the P-CSCF, which validates the correctness of the

SIP messages, ensures the security of the SIP messages, and authenticates and asserts the identity of the UE to the IMS. (Nettleton Rep. at ¶ 64.) The Serving CSCF (S-CSCF) is a central function of the signaling in the IMS core network. (*Id.*) It acts a registrar for UEs and is responsible for processing the location registration of a UE, user authentication, and call routing and processing. (*Id.*) Each UE must be successfully registered with an S-CSCF to properly connect to and communicate across the network. (*Id.*)

During an initial registration, the Interrogating CSCF (I-CSCF) registers the UE on the network by requesting from the HSS information about the subscriber, assigning the UE to the appropriate S-CSCF, and forwarding the SIP registration request from the P-CSCF to the S-CSCF. '365 Patent at 1:44-2:14. After a successful initial registration, the S-CSCF has downloaded the subscription data of the user from the HSS and recorded the duration of a registration timer cycle, the address of the P-CSCF from which the registration request originated, and a contact address of the user terminal. *Id.* at 2:15-40. The registration timer cycle is the amount of time the UE will wait to refresh its registration or respond to a change in its registration status. (Nettleton Rep. at ¶ 65.) That is, while a UE is connected to a network, it will constantly refresh its registration at certain time intervals to ensure that it is operating based on the most up-to-date information regarding the network. (*Id.*)

The '365 and '617 Patents relate to improving a UE's connectivity across the IMS network in the event of a failure or restart of the UE's assigned S-CSCF. (*Id.* at ¶ 66.) In the prior art, the system would rely upon the completion of the registration timer cycle to trigger re-registration. (*Id.*) During this re-registration process, the I-CSCF would not receive a response from the failed S-CSCF. (*Id.*) The I-CSCF would then trigger a renewed initial registration process by sending a "Request Timeout" to the UE. (*Id.*) During this renewed initial registration, the I-CSCF would assign a new S-CSCF, as described above. *See* '365 Patent at 3:4-41, Fig. 3.

Because the prior art recovery procedure relied upon a timer, there would be a period prior to expiration in which the S-CSCF would be unavailable and the UE would experience a service interruption. (Nettleton Rep. at ¶ 67.) For example, if a call were placed to the UE prior to expiration of the timer cycle, the failed S-CSCF would not respond, or would not have the service information it acquired during the initial registration to forward the request to the UE. (*Id.*; *see also id.* at ¶ 90.) This service interruption could be lessened by shortening the registration timer cycle, but too frequent re-registrations increase the processing burden on the network, occupy precious air interface resources, and decrease the battery life of a UE terminal. *See* '365 Patent at 3:42-62.

The inventions claimed in the '365 and '617 Patents are directed to avoiding this service interruption entirely. (Nettleton Rep. at ¶ 68.) In these inventions, the S-CSCF assigned during the initial registration creates a backup copy of the data it needs to handle the user's traffic and stores the backup copy in the HSS. (*Id.*) This information includes at least the address of the P-CSCF and the contact address of the user terminal. '365 Patent at 7:24-40. The S-CSCF obtained this information from the initial registration request, *id.* at 2:35-40, and it would be needed by the S-CSCF to route a call to the UE it services via the P-CSCF. *Id.* at 2:60-3:3. When the UE is called for the first time after the S-CSCF fails or is restarted, the I-CSCF does not need wait for re-registration (*i.e.*, it does not need to wait for the registration timer cycle to complete). (Nettleton Rep. at ¶ 68.) Instead, if the I-CSCF determines there was a failure, it assigns a new S-CSCF. '365 Patent at 13:23-46. Then, upon receiving the call session set up request, the newly-assigned or restarted S-CSCF can read the backup copy of this data from the HSS and complete the call using the previously backed up data. *Id.* at 13:46-65; 14:3-19; Fig. 7(a) and 7(b). The S-CSCF can then forward the call according to the P-CSCF address and the contact address it acquired from the HSS. *Id.* at 13:59-60; Fig. 7(a). Thus, the user call is completed without

experiencing the interruption in service that would previously occur while the I-CSCF waited for the registration cycle to complete and re-registration to occur. (Nettleton Rep. at ¶ 68.)

## III.  LEGAL STANDARDS

### A.  Summary Judgment Standard

Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.*

### B.  Law of Patent Eligibility

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12.

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). To do so, the Court should look at the "focus of the claimed advance over the prior art" and decide whether the claim's "character as a whole" is directed to excluded subject matter. *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016); *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (considering the claims "in

their entirety to ascertain whether their character as a whole is directed to excluded subject matter"). The Court, however, must avoid oversimplifying key inventive concepts of the claim or downplaying an invention's benefits by looking at the claim generally and ignoring its specific requirements. *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). Claims that "are drawn to a specific improvement in the way computers operate" are not directed to an abstract idea. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

The Court continues to the second step in the analysis only if "the Court finds an ineligible concept after considering the claims' 'character as a whole.'" *Preferential Networks, Inc. v. AT&T Mobility, LLC*, No. 2:16-cv-1374, Dkt. No. 44, at *5 (E.D. Tex. July 15, 2017) (Payne, M.J.) (quoting *Alice*, 134 S. Ct. at 2355). Then, if the claims are directed to an abstract idea, the Court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355. (internal quotations and citations omitted). "The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). For example, a claim directed to an ineligible concept may become patent-eligible when it includes unconventional steps that confine the claims to a particular application of the principle, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 84 (2012); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), or where specific technological modifications solve a problem or improve the functioning of a known system, *see Trading Techs. Int'l, Inc., v. CGQ, Inc.*, 675 Fed. Appx. 1001, 1004-05 (Fed. Cir. 2017). Therefore, "an inventive concept can be found in the non-conventional and non-generic arrangement of known,

conventional pieces." *Bascom*, 827 F.3d at 1350. Accordingly, that claim limitations include conventional computer components is not dispositive of the § 101 issue.

IV. **ARGUMENT**

The '365 and '617 Patents are patent eligible under § 101. They are directed to a specific improvement to a particular problem necessarily rooted in computer technology and arising in the realm of IMS networks, not an abstract idea. The Court need go no further to deny T-Mobile's motion. Even at step two of the *Alice* analysis, however, the Asserted Claims contain limitations that significantly limit the scope of the invention to a particular, unconventional arrangement of network nodes and signaling to achieve the specific result that the inventors conceived. Their preemptive effect is proportional to the inventors' contribution over the prior art. Accordingly, the Court should deny T-Mobile's motion.

A. **The Asserted Claims are directed to a specific improvement in the operation of IMS networks, not an abstract idea.**

The Asserted Claims of the '365 and '617 Patents are not directed to an abstract idea. Rather, they are directed to a specific improvement in the operation of IMS networks in the event of a failure in a node—i.e., requiring a node in the network to save particular information in response to particular signals so that if that node later fails, the information is then used to recover and maintain the user's session. The Federal Circuit made clear that claims "drawn to a specific improvement in the way computers operate" are not directed to an abstract idea. *Enfish*, 822 F.3d at 1336. For example, in *Trading Tech*, the Federal Circuit upheld the eligibility of claims directed to methods and systems for electronic trading of stocks, bonds, futures, options, and similar products because they were not directed to the abstract idea of "simply . . . displaying information on a graphical user interface," as the defendants contended, but rather to "a specific, structured graphical user interface paired with a prescribed functionality directly related to the

graphical user interface's structure that is addressed to and resolves a specifically identified problem in the prior state of the art." 675 Fex. Appx. at 1004. The court focused in particular on the lower court's finding that the claims were directed to patent-eligible improvements in existing graphical user interface devices, had no pre-electronic trading analog, and recited functionality that was addressed to and resolved a specifically identified problem in the prior state of the art. *See id.*

The same is true of the '365 and '617 Patents. They are patent-eligible because they are directed to improvements in existing IMS network procedures and are addressed to and resolve a specifically-identified problem in the prior art. In particular, prior art recovery procedures in IMS networks involved the use of registration timer cycles, which meant that in the event of a failure or reset of an S-CSCF node, the user would experience service interruption until the timer cycle completed and a new registration could be attempted. *See* '365 Patent at 3:42-62. The Asserted Claims are directed to a solution for this particular problem by having the S-CSCF, upon receiving a user registration, back up the data necessary for restoring a session. *See id.* at Claim 1. Then, if the S-CSCF fails, the IMS network has the information and capability to re-assign a new S-CSCF, pass the necessary data to that S-CSCF, and maintain the user's session without interruption. *See id.* There is no pre-electronic analog for this particular recovery mechanism. The Asserted Claims are directed to a particular solution for a particular problem that exists only in the realm of computer networks—and specifically IMS subsystems in 3GPP networks—so that solution is not an abstract idea. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) (holding claims eligible under § 101 where "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"). Instead, it is an improvement on the functionality of a

particular system, which the Federal Circuit has held is patent eligible. *See Trading Techs.*, 675 Fed. Appx. at 1004-05.

T-Mobile oversimplifies the claimed invention when it argues that the claims are directed to "backing up and recovering data." The Supreme Court has recognized that "at some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 566 U.S. at 71). Indeed, T-Mobile's position is undermined by the prior art solution—if all the claims involved was "backing up and recovering data," it would make no sense for the prior art to rely on registration timers and the corresponding downtime for the system after an IMS node failure. Thus, the Federal Circuit has cautioned that the Court "'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO*, 837 F.3d at 1313 (quoting *In re TLI Commc'ns, LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

T-Mobile ignores the limitations of the claims and the Court's constructions of those limitations, which require particular steps (*e.g.*, receiving a user registration, assigning a new S-CSCF, forwarding a service request, and restoring user service processing) to be performed on and with particular data (*e.g.*, "a SIP URL of a P-CSCF assigned for a user device and a contact address of the user device"). (*See* Dkt. No. 196 at 19-22 (analyzing the construction of "necessary data" in the claims of the '365 Patent).)

T-Mobile analogizes the claims to photocopying and storing a secret family recipe (Mot. at 10), but the claims are more like those that Magistrate Judge Payne recommend be found patent-eligible in *Preferential Networks, Inc. v. AT&T Mobility, LLC*, No. 2:16-cv-1374, Dkt. No. 44 (E.D. Tex. July 15, 2017) (Payne, M.J.). In *Preferential Networks*, Judge Payne addressed claims directed to "transmitting related data, such as parts of [a] file, at different effective rates,

with the second effective rate always being slower than the first." *Id.* at *8. Judge Payne concluded that "the claims' 'character as a whole' is directed to the manner by which data is transmitted between two computer systems—which is not a law of nature, a natural phenomena, or an abstract idea." *Id.* Similarly, the '365 and '617 Patents are directed to a particular manner by which data is stored, processed, and then used in an IMS network. Judge Payne continued in *Preferential Networks* that "*Alice*'s Step 1 requires the Court to focus on the claimed advance over the prior art," and the defendants had "not produced evidence on that point"—neither has T-Mobile here. *Id.* Even T-Mobile's description of the claimed invention as failing to "provide any concrete details that limit the claimed invention to a specific solution to the problem" is inaccurate, as T-Mobile focuses on the general recitation of a "storage entity" in the claims while ignoring all of the other limitations that restrict the claimed invention to the particular solution the inventors conceived to address the specific problem arising in IMS networks. (*See* Mot. at 11.)

Accordingly, the '365 and '617 Patents are not directed to an abstract idea. They do not claim a law of nature or natural phenomenon, nor do they claim some long-standing business practice or other human activity and state "apply it" with a computer. Rather, they are directed to a particular improvement in IMS networks that solves a particular problem arising in that realm. The Court therefore need not continue to step two of the analysis, as it should deny T-Mobile's motion at step one.

### B. The '365 and '617 Patents' limitations reflect a non-generic, non-conventional ordered combination of elements.

If the Court continues to step two of the *Alice* analysis, it should find that the Asserted Claims contain limitations that amount to significantly more than any abstract idea. T-Mobile contends that all of the claimed "limitations were, at the time of patenting, entirely 'well-

understood, routine, conventional activity.'" (Mot. at 12.) In doing so, T-Mobile makes the same mistake that the Federal Circuit cautioned against in *Bascom*. 827 F.3d at 1349. There, the Federal Circuit agreed with the district court that Bascom's claims were directed to the abstract idea of "filtering content on the Internet." *Id.* at 1348. The court also agreed that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself." *Id.* at 1349. The court disagreed, however, "with the district court's analysis of the ordered combination of limitations," noting that "[t]he inventive concept inquiry requires more than recognizing that each acclaim element, by itself, was known in the art." *Id.* at 1350-51. The court therefore needed more information to determine whether the particular arrangement of components claimed by Bascom was unconventional at the time of the invention. *See id.*

Here, T-Mobile makes the same mistake as the *Bascom* defendants. It isolates the claim limitation elements and concludes that each element was known or conventional. (*See* Mot. at 12-14.) That is the incorrect analysis. Instead, the proper inquiry is whether the arrangement of components and signaling claimed in the '365 and '617 Patents was unconventional at the time of the invention, and the correct answer to that inquiry is "yes." Prior to the invention of the Asserted Claims, failures of S-CSCFs in IMS networks were handled by allowing the registration timer cycle to expire and attempting a new registration. *See* '339 Patent at 3:42-62. The available alternative was to shorten the length of the timer cycle, but too frequent re-registrations increased the processing burden on the network, occupied precious air interface resources, and decreased the battery life of a UE terminal. *See id.* Nobody thought of the particular recovery method claimed by the '365 and '617 Patents until the inventors conceived of it. It was thus unconventional to implement this particular method and disrupt the signaling that already existed at that time in IMS networks.

The unconventionality of the '365 and '617 Patents is further highlighted by an analysis of the limited preemptive effect of the Asserted Claims. "[T]he preemption concern . . . undergirds . . . § 101 jurisprudence." *Alice*, 134 S. Ct. at 2358; *see also Virginia Innovation Scis., Inc. v. amazon.com, Inc.*, 227 F. Supp. 3d 582 (E.D. Va. 2017) ("Preemption is the touchstone of the § 101 inquiry . . . ."). The overarching goal in analyzing the preemptive effect of patent claims is to determine whether the claimed invention "risk[s] disproportionately tying up the use of the underlying ideas." *Id.* at 2354 (quoting *Mayo*, 132 S. Ct. at 1294). That determination rests on balancing the degree to which "future innovation is foreclosed relative to the contribution of the inventor." *Mayo*, 123 S. Ct. at 1303. Here, T-Mobile does not address preemption because there is no undue concern over the preemptive effect of the Asserted Claims. They are directed to a particular recovery mechanism addressing particular failure scenarios of S-CSCF nodes in IMS networks—that is, they do not raise any preemption concern because they meaningfully limit the preemptive scope of the invention to cover only specific means and methods of accomplishing a result that improves upon the specific problem, rather than being directed to the result itself. *See McRO*, 837 F.3d at 1315.

Accordingly, the '365 and '617 Patents survive step two of the *Alice* analysis. Even if they were directed to an abstract idea (they are not), they contain limitations that amount to significantly more than any abstract idea. They do not risk disproportionately preempting the entire field of "backing up and recovering data," as T-Mobile would contend. Therefore, the Court should deny T-Mobile's motion.

V. **CONCLUSION**

T-Mobile's motion oversimplifies the claimed invention and reduces it to "backing up and recovering information. It ignores the limitations of the claims, which are directed to a particular solution to a problem necessarily rooted in and arising from computer technology. T-

Mobile also applies the incorrect test in step two of the *Alice* test, considering the limitations in isolation instead of as an ordered combination. It has not established that the claims are either directed to an abstract idea or devoid of any inventive concept. Therefore, Huawei respectfully requests that the Court deny Defendants' motion.

Dated: August 7, 2017

Respectfully submitted,

By: */s/ David B. Conrad*
Ruffin Cordell
Texas Bar No. 04820550
cordell@fr.com
Richard A. Sterba
DC Bar No. 461417
sterba@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Carl E. Bruce
Texas Bar No. 24036278
bruce@fr.com
David B. Conrad
Texas Bar No. 24049042
conrad@fr.com
Jane Du
Texas Bar No. 24076355
du@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

David Barkan
California Bar No. 160825
barkan@fr.com
**FISH & RICHARDSON P.C**.
500 Arguello Street, Suite 500

Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Kevin Su
Massachusetts Bar No. 663726
su@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

**COUNSEL FOR PLAINTIFF
HUAWEI TECHNOLOGIES CO. LTD.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 7, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                              */s/  David B. Conrad*
                                              David B. Conrad